UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X
                                                                     :
**STORM LLC,**                                                       :
                                                                     :
                                    Plaintiff,                       :
                                                                     :
                       -against-                                     :
                                                                     :
**TELENOR MOBILE COMMUNICATIONS AS,**                                :
                                                                     :
                       Defendant.                                    :
                                                                     :
------------------------------------------------------------------- X   06-CV13157 (GEL) (DF)
**TELENOR MOBILE COMMUNICATIONS AS,**                                :
                                                                     :
                                 Counterclaimant,                    :
                                                                     :
                       - against-                                    :
                                                                     :
**STORM LLC,**                                                       :
                                                                     :
                              Counterclaim-Defendant,                :
                                                                     :
                       - and-                                        :
                                                                     :
**ALTIMO HOLDINGS & INVESTMENTS LIMITED and** :
**ALPREN LIMITED,**                                                  :
                                                                     :
                                Relief Defendants.                   :
------------------------------------------------------------------- X

**MEMORANDUM IN SUPPORT OF TELENOR MOBILE'S  MOTION
TO COMPEL ARBITRATION AND FOR AN ANTI-SUIT INJUNCTION**

Defendant Telenor Mobile Communications AS ("Telenor Mobile") respectfully submits this memorandum in support of its motion to compel arbitration and for an injunction halting the collusive litigation ostensibly against Plaintiff Storm LLC ("Storm") brought by Storm's corporate parent, Relief Defendant Alpren Limited ("Alpren"), at the instigation and direction of Relief Defendant Altimo Holdings & Investments Limited ("Altimo").

## INTRODUCTION

This matter was recently before the Court on Storm's motion for a preliminary injunction to halt an ongoing arbitration proceeding in New York based on a collusive litigation brought in the Ukrainian courts by Alpren against Storm, which purportedly invalidated the Shareholders Agreement under which the arbitration is proceeding. On November 22, 2006, Storm's motion was denied by the Court. Rather than replicate those papers, Telenor Mobile incorporates by reference the documents filed in opposition to Storm's motion.

The parties are obligated under the Shareholders Agreement they executed in 2004 (the "Shareholders Agreement" or the "Agreement") not to bring any "action, lawsuit or other proceeding. . . . in connection with any matter arising out of or in connection with" the Agreement. *See* Declaration of Robert L. Sills dated 12/05/2006 ("Sills Decl.") Exh. A § 12.01(b). In violation of § 12.01(b) of the Shareholders Agreement, Storm's immediate corporate parent, Alpren, brought an action against Storm on April 14, 2006, seeking to invalidate the Shareholders Agreement. The "judgment" in that action was the basis for Storm's previously rejected motion to dismiss before the arbitration panel (the "Panel") and its application to this Court for a preliminary injunction.

Undeterred, Defendants have now concocted a second collusive action in the Ukrainian courts in their ongoing efforts to avoid a hearing in the arbitration to which Storm agreed. This time, again without notice to Telenor Mobile, Alpren sued Vadim Klymenko, the General Director of Storm, seeking an injunction against Storm's participation in the hearing on the merits in the arbitration, which is now scheduled to commence on December 8. According to an email sent by Storm's counsel to the Panel just before 5:00 p.m. on Monday, December 4, he had "just learned" that the Ukrainian court had entered an order on December 1 enjoining Mr. Klymenko from participating in the arbitration, and that the Court had purported to enjoin Telenor Mobile from proceeding in the arbitration, despite the fact that Telenor Mobile is not a party to the Ukrainian proceeding. Sills Decl. Exhs. B-D. That email states as follows:

> I am writing to inform you of another recent development in the Ukrainian courts that we just learned about today. Alpren Limited ("Alpren") has commenced an action in the Golosiyiv District Court of the city of Kyiv Goshko O.M. (the "District Court") regarding the invalidity of actions taken by Vadim Klymenko on behalf of Storm.
>
> On Friday, December 1, 2006, the District Court issued the attached ruling, which we have provided in the original Ukrainian and in an unofficial translation. (We will provide a certified translation very shortly.) In the December 1 ruling, the District Court granted an injunction sought by Alpren that prohibits Mr. Klymenko, Storm and Telenor Mobile (including their representatives) from participating any further in the arbitration that is currently pending before you. It is our understanding that, in keeping with the terms of the ruling, the relevant papers are being (or have been) served on Telenor Mobile, which will have a right of appeal to the Kyiv Appellate Court. The ruling, however, states that an appeal shall not affect the execution of the injunction obtained by Alpren on December 1. We note that the papers call for immediate compliance and that a failure to abide by the ruling is punishable under Ukrainian criminal law.

> Under the circumstances, we cannot see how Storm may
> lawfully appear at the hearing set for December 7 and 8,
> 2006 and we respectfully request that the Tribunal confirm
> that the hearing is adjourned until further notice.
> We also request a ruling on Storm's pending motion to
> reconsider, since that would lead to a dismissal of the
> arbitration and would mean that neither Storm nor Telenor
> Mobile could be in jeopardy of violating the December 1
> ruling.

Sills Decl. Exh. B.

Both Storm and Alpren are holding companies with no operations, and both are

wholly-owned and controlled by Altimo. Indeed, Mr. Klymenko, the ostensible

defendant in Alpren's latest Ukrainian litigation, is also a vice president of Altimo, and

is, according to his affidavit submitted in the arbitration in support of Storm's motion to

dismiss, Altimo's "[g]eneral representative in Ukraine," with responsibility for "litigation

and arbitration, representation and implementation of shareholders interests." Sills Decl.

Exh E, p. 6. Accordingly, it appears that Mr. Klymenko has authorized and directed a

lawsuit against himself. It is that collusive lawsuit that Telenor Mobile seeks to enjoin.


## ARGUMENT

### I. TELENOR MOBILE'S MOTION TO COMPEL ARBITRATION SHOULD BE GRANTED

Federal policy strongly favors the enforcement of arbitration agreements.

9 U.S.C. § 2; *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs.,
Inc.*, 369 F.3d 645, 654 (2d Cir. 2004). This is especially true in the context of

international disputes. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,

473 U.S. 614, 638-40 (1985). Section 206 of The Convention on the Recognition and

Enforcement of Foreign Arbitral Awards (the "New York Convention") unequivocally

directs the court to order arbitration where appropriate. A court having jurisdiction under

this chapter may direct that arbitration be held in accordance with the agreement at any

place therein provided for, whether that place is within or without the United States.

9 U.S.C. § 206; *see also SATCOM Int'l Group PLC v. ORBCOMM Int'l Partners, L.P.*,

49 F. Supp. 2d 331, 342 (S.D.N.Y. 1999).

An action to compel arbitration is appropriate "when the respondent

unequivocally refuses to arbitrate, either by failing to comply with an arbitration demand

or by otherwise unambiguously manifesting an intention not to arbitrate the subject

matter of the dispute." *PaineWebber Inc. v. Faragalli*, 61 F.3d 1063, 1066 (3d Cir.

1995). Repeated efforts to enjoin an arbitration constitute a refusal to arbitrate within the

meaning of the Federal Arbitration Act. *See Evans and Sutherland Computer Corp. v.*

*Thomson Training and Simulation Ltd.*, No. 94 Civ. 6795, 1994 WL 593808 at *3

(S.D.N.Y. Oct. 28, 1994).

### A.    Storm has Unambiguously Manifested an Intention Not to Arbitrate Telenor Mobile's Claims Under the Shareholders Agreement

Since Telenor Mobile filed its notice of claim in the arbitration in February 2006,

Storm has attempted at every turn to block the progress of the arbitration. As part of its

campaign to prevent the arbitration from moving forward, Storm and its corporate

parents, Alpren and Altimo, have brought multiple actions in the Ukraine. The most

recent lawsuit in that campaign has sought to enjoin Telenor Mobile – which was not

even a named party in the litigation – from any action in the United States or in the

Ukraine.

As this Court is well aware, Storm recently brought a motion seeking a temporary

restraining order and preliminary injunction in an attempt to stymie the arbitration. This

Court denied that attempt, holding:

> The effort by the plaintiffs here to attack the arbitration
> tribunal and its jurisdiction . . . [and] the effort to disrupt
> the arbitration proceeding on the basis of collusive

> litigation in the Ukraine is basically a shabby tactic on the
> part of the plaintiffs and should not be condoned.

*See* Sills Decl. Exh. F at 37:16-25-35:1-3. Through its relentless efforts to stall this arbitration, Storm has demonstrated that it has no intention to arbitrate this dispute and this Court should compel Storm to honor its Agreement.[1]

**B.    The Arbitration Clause of the Shareholders Agreement is Binding on Storm**

The decision of the arbitrators denying Storm's motion to dismiss is sound, and provides an ample basis for this Court to compel arbitration.  To the extent that the issue of the validity of the arbitration agreement is before the Court, a two-part analysis is followed to determine whether an arbitration should be compelled:  (a) first, the Court analyzes whether an agreement to arbitrate that is binding on both parties exists, and (b) second, the Court looks to whether the dispute to be arbitrated falls within the scope of the arbitration agreement. *Ibeto Petrochemical Industries Ltd. v. M/T "Beffen"*, 412 F. Supp. 2d 285, 291 (S.D.N.Y. 2005); *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 49 (2d Cir. 2004) (*quoting David L. Threkeld & Co. v. Metallgesellschaft Ltd.*, 923 F.2d 245, 249 (2d Cir. 1991)).  Under this analysis, arbitration will be compelled unless "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Ibeto Petrochemical Industries Ltd.*, 412 F. Supp. 2d at 288.

Section 12.01 of the Shareholders Agreement states:

> Any and all disputes and controversies arising under,

---

[1] In a telephone conference with the arbitrators held late on December 5, Mr. Van Tol, Storm's counsel, argued strenuously for an adjournment of the arbitration, asserting that he was concerned that his client could be found to have engaged in a criminal violation of Ukrainian law if it participated in the scheduled hearing; indeed, he went so far as to assert that merely preparing for the hearing might expose Storm's attorneys in New York to criminal sanctions. Putting to one side the unlikelihood that Storm's parent would seek to hold Storm in contempt, any difficulties in which Storm finds itself are purely self-inflicted, and provide no basis for relief. *See Motorola Credit Corp. v. Uzan*, 388 F.3d at 39.

> relating to or in connection with this Agreement shall be
> settle by arbitration by a panel of three (3) arbitrators under
> the United Nations Commission on International Trade
> Law (UNCITRAL) Arbitration Rules then in force . . . .The
> arbitrators shall have the power to grant any remedy or
> relief that they deem just and equitable . . . Each Party
> retains the right to seek interim, provisional or conservatory
> measures from judicial authorities and any such request
> shall not be deemed incompatible with the agreement to
> arbitrate or a waiver of the right to arbitrate.

Sills Decl. Exh. A at § 12.01(a).  The Shareholders Agreement further states:

> If any provision in this Agreement or any other document
> executed in connection herewith is or shall become invalid,
> illegal or unenforceable in any jurisdiction, the invalidity,
> illegality or unenforceability of such provision in such
> jurisdiction shall not affect or impair the validity, legality
> or enforceability of (a) any other provision of this
> Agreement . . .

*Id.* at § 13.07.  Storm further warranted that "the Agreement is binding upon, inures to the

benefit of and is enforceable by the Parties and their respective successors and assigns."

*Id.* at § 13.05.

   Where a petitioner presents evidence that an agreement to arbitrate was duly

authorized and respondent is unable to offer evidence to show otherwise, an arbitration

clause is considered valid and binding and arbitration will be compelled.  *See SG Avipro*

*Finance Ltd. v. Cameroon Airlines*, No. 05 Civ. 655, 2005 WL 1353955, *1-2 (S.D.N.Y.

June 8, 2005).  The record shows beyond a doubt that Storm was duly authorized to

execute the Shareholders Agreement, executed the Shareholders Agreement, and went to

great lengths to confirm to Telenor Mobile that Storm's execution of the Shareholders

Agreement was in fact duly authorized.

   As part of the documentation provided at the signing of the Shareholders

Agreement, Storm executed and delivered to Telenor Mobile, "Certificates of

Incumbency and Authority of Storm" (the "Certificates"), showing that Storm's General

Director possessed full authority to execute the Shareholders Agreement on behalf of
Storm, and that all necessary corporate formalities had been observed by Storm in
executing the Shareholders Agreement. Sills Decl. Exhs. G, H. One of the Certificates
was signed by Andrei Kosogov, a member of Alfa Group's Supervisory Board and the
Chairman of Relief Defendant Altimo[2], and states as follows:

> I, Andrei Kosogov on behalf of Storm LLC, a limited
> liability company organized under the laws of Ukraine
> ("Storm"), do hereby certify on behalf of Storm that
> Valeriy Vladimirovich Nilov:
>
> (i) is the duly elected, qualified and acting General Director
> of Storm; and
>
> (ii) is duly authorized to sign, on behalf of Storm,
> individually . . . the Shareholders Agreement dated January
> 30, 2004 between and among Telenor, Storm and Kyivstar.

Sills Decl. Exh.G.[3]

Ukrainian law has nothing to do with the dispute between the parties, because the
Shareholders Agreement clearly provides that New York law governs the contract. *See*
Sills Decl. Exh. A at § 13.06. Such choice of law clauses are expressly made enforceable
in New York by statute. N.Y.G.O.L. § 5-1401.

Under New York law, Mr. Nilov, had, at the very least, apparent authority to sign
the Shareholders Agreement and bind Storm to it. The decision in *Indosuez International
Finance B.V. v. National Reserve Bank*, 98 N.Y.2d 238, 746 N.Y.S.2d 631 (2002), is
instructive. There, the New York Court of Appeals rejected the defendant's claims that
Russian law, rather than New York law, determined the liability of a Russian bank that
had defaulted on a series of non-deliverable forward contracts with the Geneva branch of

---

[2] *See* the website of the Alfa Group Consortium, *About the Group,* available at
http://www.alfagroup.org/142/18799/About.aspx. (last visited Dec. 4, 2006).

a Netherlands corporation. *Id.* Although the relevant contracts specified either New York or English law as their governing law, the Russian bank claimed that Russian law governed the question of whether a person acting in Russia had authority to bind the bank, and that because the confirmations were not executed by the bank's chief accountant general, the contracts were null and void under Russian law. The Court of Appeals rejected that argument, holding that by virtue of the "nature of the transactions and the parties' own choices, New York has the paramount interest in the enforceability of the transactions." *Indosuez International Finance B.V.*, 98 N.Y.2d at 245, 746 N.Y.S.2d at 635. Applying New York substantive law to the transaction, the Court of Appeals found that the plaintiff was entitled to rely upon the apparent and implied authority of the deputy chairman of the Russian bank who had executed the relevant contracts.[4] *Indosuez International Finance B.V.*, 98 N.Y.2d at 246, 746 N.Y.S.2d at 636.

As with the plaintiffs in *Indosuez* and the petitioners in *SG Avipro Finance*, Plaintiff Storm has failed to present evidence demonstrating that Mr. Nilov lacked the apparent and implied authority of his office to enter into the Shareholders Agreement. Indeed, rather than offering evidence in rebuttal, Storm demonstrated through its own affidavits that implied authority was present. In an August 2006 affidavit of Alexey Khudyakov, submitted to the Panel in connection with the August 14 hearing, Mr. Khudyakov, the current Vice President of Altimo, and former Vice President of Alfa Bank, stated that he had only "recently been informed" that Mr. Nilov did not have authority to enter into the Shareholders Agreement. Sills Decl. Exh. I at ¶ 12. Given that

---

[3] Despite the fact that he is an employee of the Alfa Group, Mr. Nilov has neither testified nor provided an affidavit in the three hearings held before the arbitral tribunal.

[4] The Court alternatively found that the defendant bank ratified the contracts at issue because it failed to raise the issue of authority in the course of performance. *Id.*

Storm's own witnesses claim that they believed that Mr. Nilov had authority to enter into the Shareholders Agreements, it is difficult to see how Storm can argue that Telenor Mobile's reliance on the apparent authority of Mr. Nilov was not legitimate.

**C.    The Disputes Between the Parties Clearly Fall Within the Scope of the Arbitration Agreement**

The Shareholders Agreement clearly states that "[a]ny and all disputes and controversies arising under, relating to or in connection with this Agreement" shall be subject to arbitration. Sills Decl. Exh. A §12.01. Such statements are to be read broadly, recognizing, once again, the desire for arbitration to solve such disputes. In *Paramedics Electromedicina Comercial, Ltda.*, the Second Circuit found that the arbitration agreement in that case was of the "broad type" where it covered "any controversy, claim or dispute" stemming from the agreements between the parties. *Paramedics Electromedicina Comercial, Ltda.*, 369 F.3d at 654. If the allegations underlying a party's arbitration claims "touch matters" covered by the parties' arbitration agreement, then "those claims must be arbitrated." *Smith/Enron Cogeneration Ltd. P'Ship v. Smith Cogeneration Int'l Inc.*, 198 F.3d 88, 99 (2d Cir. 1999).

The disputes at issue here are:  (a) whether Storm is in violation of the non-compete clause of the Shareholders Agreement; (b) whether Storm should be compelled to attend meetings of the Kyivstar Board; and (c) whether Storm should be compelled to attend meetings of Kyivstar shareholders.  Each of those claims arises directly under the Shareholders Agreement, and each is arbitrable under the arbitration clause in the Shareholders Agreement.

## II.    TELENOR MOBILE'S MOTION TO ENJOIN STORM'S UKRAINIAN LITIGATION SHOULD BE GRANTED

It is well settled that a federal court may enjoin a party from pursuing litigation in a foreign forum, and that an anti-suit injunction is particularly warranted where a party initiates foreign proceedings in an attempt to avoid arbitration. *Paramedics Electromedicina Comercial, Ltda.*, 369 F.3d at 652. *See Suchodolski Associates, Inc. v. Cardell Financial Corp.*, 2006 U.S. Dist. Lexis 83169 (S.D.N.Y. Nov. 16, 2006); *SG Avipro Finance Ltd. Cameroon Airlines*, 2005 U.S. Dist. Lexis 11117 (S.D.N.Y. June 7, 2005)(enjoining lawsuit in which validity of contract containing arbitration clause was challenged under foreign law); *see Ibeto Petrochemical Industries Ltd.*, 412 F. Supp. 2d at 289. In upholding the grant of an anti-suit injunction in *Paramedics*, the Court of Appeals held as follows:

> It is beyond question that a federal court may enjoin a party before it from pursing litigation in a foreign forum. . . . But principles of comity counsel that injunctions restraining foreign litigation be "used sparingly" and "granted only with care and great restraint." . . .
>
> An anti-suit injunction against parallel litigation may be imposed only if: (a) the parties are the same in both matters, and (B) resolution of the case before the enjoining court is dispositive of the action to be enjoined. . . . Once past this threshold, courts are directed to consider a number of additional factors, including whether the foreign action threatens the jurisdiction or the strong public policies of the enjoining forum. . . .

369 F.3d at 652 (citation omitted); *see also International Equity Investments. Inc. v. Opportunity Equity Partners Ltd.*, 441 F. Supp.2d 552, 562-63 (S.D.N.Y. 2006).[5]

---

[5] The requirement that the parties be the same is satisfied if, as here, the parties in the foreign action are in privity with those in the domestic case. *See Paramedics*, 369 F.3d at 652-653; *International Equity*, 441 F. Supp. 2d at 562.

All of these factors are satisfied here. First, the current Ukrainian litigation, like its predecessor, is a collusive suit brought to frustrate an ongoing arbitration now pending in New York, and the current Ukrainian litigation against Mr. Klymenko is Storm's third attempt to avoid arbitration based on collusive Ukrainian litigation. The arbitrators rejected Storm's motion to dismiss on October 22, 2006. Sills Decl. Exh. J. Storm waited over three weeks, and moved for an injunction against arbitration in state court on November 13, 2006.[6] That application was denied by this Court, after removal on November 22, 2006. Storm then arranged for its General Director to be sued by its corporate parent on December 1, 2006 in Ukraine; that same day, the Ukrainian court granted Alpren's latest application, and purported to enjoin Telenor Mobile from proceeding with the arbitration.[7] Sills Decl. Exhs. B-D. Storm then waited until the close of business on December 4 to notify Telenor Mobile of its claim that the arbitration then scheduled for December 7 had been enjoined.[8] There could be no clearer evidence of Storm's overall strategy of delay and evasion.

Suits brought in violation of international arbitration agreements frustrate important federal policies favoring enforcement of arbitration and forum selection clauses. *Paramedics*, 369 F. 3d at 654-5; *Farrell Lines Inc. v. Columbus Cello-Poly Corp.*, 32 F. Supp.2d 118, 130 (S.D.N.Y. 1997). The violation of strong public policies of the enjoining forum takes on "significance in deciding whether or not to grant an injunction." *See Smith/Enron Cogeneration Ltd. P'Ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 92 (2d Cir. 1999).

Second, the current chapter in Storm's effort to use the Ukrainian courts to avoid

---

[6] Storm's action was removed to this Court on November 14, 2006.

[7] None of the underlying papers have been presented to Telenor Mobile.

[8] The arbitration panel, on its own motion, adjourned the hearing one day because of an unexpected personal commitment of two of the arbitrators.

arbitration is clearly part of a vexatious scheme. *See Paramedics Electromedicina*, 369
F.3d 645; *Farrell Lines Incorporated*, 32 F. Supp. 2d 118; *Ibeto Petrochemical*, 412 F.
Supp. 2d at 287. On December 4, 2006, Storm notified Telenor Mobile and the Panel
that Alpren had commenced a new litigation on December 1 "regarding the invalidity of
actions taken by Vadim Klymenko on behalf of Storm" with respect to the Shareholders
Agreement, this time in a different District Court in Kyiv.[9] Sills Decl. Exh. B. Like the
earlier litigation brought by Alpren against Storm, Telenor Mobile was not a named party
to, nor ever even notified of, the litigation Alpren ostensibly prosecuted against Storm's
General Director in the Golosiyiv District Court, although Storm asserts that Telenor
Mobile now has the right to appeal in Ukraine.

Third, additional equitable considerations warrant the imposition of an anti-suit
injunction. In particular, Storm's brazen attempts to disrupt and ultimately seize control
of Kyivstar, of which its repeated, collusive resort to the Ukrainian courts and its endless
efforts to avoid arbitration are a part, strongly argue for the grant of equitable relief.

Finally, parallel adjudication in both Ukraine and in the New York arbitration
would lead to inconsistent results, confusion, and additional delay of a final
determination on the ultimate merits of a relatively uncomplicated shareholder dispute.
Storm agreed in a signed and sealed writing to arbitration in New York, to have disputes
decided under New York law, and consented to a New York judicial forum, for disputes
arising out of that arbitration. Indeed, Storm affirmatively invoked this Court's
jurisdiction in its efforts to halt the arbitration. Now that its efforts have been rebuffed,
Storm's continued forum shopping will lead to inconsistency, confusion and delay.

---

[9] It appears that the injunction against arbitration was granted the day it was brought. It also appears to
have been granted *ex parte*, without even a "defense" of the type offered by Storm in the previous *Alpren*
litigation.

### III.   THE REQUESTED INJUNCTION SHOULD BE GRANTED, AND A TEMPORARY RESTRAINING ORDER SHOULD BE ENTERED

The requested injunction is necessary if the arbitration to which Storm agreed is to proceed. If Telenor Mobile is deprived of its bargained-for right to arbitrate disputes with Storm, it will be irreparably harmed. However, Storm's complete disregard for procedural norms, and its repeated resort to collusive litigation in Ukraine, make it imperative that Defendants be prevented from seeking further to interfere with the arbitration.

Because Storm has elected to conduct its war on the arbitration clause by arranging to have Alpren, its corporate parent, sue it in Ukraine, at the instigation of the common owner, Altimo, Alpren and Altimo should be joined as Relief Defendants. Indeed, even were they not parties, they would be bound by an injunction against Storm, because they are acting in concert with it. The rule was set forth in *Regal Knitwear Co. v. NLRB*, in which Justice Jackson held as follows:

> The Federal Rules of Civil Procedure provide that: Every order granting an injunction and every restraining order . . . is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." This is derived from the common-law doctrine that a decree of injunction not only binds the parties defendant but also those identified with them in interest, in "privity" with them, represented by them or subject to their control. In essence it is that defendant may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding.
>
> The term "successors and assigns" in an enforcement order of course may not enlarge its scope beyond that defined by the Federal Rules of Civil Procedure. Successors and assigns may, however, be instrumentalities through which defendant seeks to evade an order or may come within the description of persons in active concert or participation with them in the violation of an

injunction. If they are, by that fact they are brought within scope of contempt proceedings by the rules of civil procedure.

*Id.* at 14-15. *See People of the State of New York v. Operation Rescue Nat'l*, 80 F.3d 64, 70 (2d Cir. 1996).

Because Storm's litigation campaign is being waged in concert with two of its privies, Alpren and Altimo, there is personal jurisdiction over them to the same extent as over Storm, because each is the agent for the other. *See In re Sumitomo Copper Litigation*, 120 F. Supp. 328, 335-343 (S.D.N.Y. 2000) (Pollack, J.) (the "agency theory of personal jurisdiction applies to the entire long-arm statute"); *Simon v. Philip Morris, Inc.*, 2000 U. S. Dist. Lexis 265 at *67-*82 (E.D.N.Y. January 4, 2000) (finding personal jurisdiction over foreign corporate parent). Accordingly, they are properly joined as relief defendants. *See, e.g., F.T.C. v. Cleverlink Trading Ltd.*, 2006 WL 1735276 (N.D. Ill. June 19, 2006); *CFTC v. IBS, Inc.*, 113 F. Supp. 2d 830, 849-855 (W.D.N.C. 2000); *Bush Development Corp. v. Harbour Place Associates*, 632 F. Supp. 1359 (E.D.Va. 1986). An injunction against Storm, Altimo and Alpren is within this Court's power, and will allow the arbitration, at long last to move forward.

**CONCLUSION**

For the above reasons, Telenor Mobile's Motion to Compel Arbitration and

Request for an Anti-Suit Injunction should be granted in its entirety.

Dated:  New York, New York
        December 5, 2006

                        Respectfully submitted,
                        ORRICK, HERRINGTON & SUTCLIFFE LLP


                        By: _____
                        Robert L. Sills (RS 8890)
                        Jay  K. Musoff  (JM 8716)
                        666 Fifth Avenue
                        New York, New York 10103
                        Telephone: (212) 506-5000
                        Facsimile:  (212) 506-5151

                                -and-

                        Peter O'Driscoll (PSO 1005)
                        ORRICK, HERRINGTON & SUTCLIFFE LLP
                        25 Old Broad Street
                        London EC2N 1HQ
                        DX:  557 London/ City
                        United Kingdom
                        Telephone:  +44 20 7562 5000