UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X
STORM LLC,                                                          :
                                                                    :
                Plaintiff,                                    :
                                                                    :
         -against-                                             :
                                                                    :
TELENOR MOBILE COMMUNICATIONS AS,                                   :
                                                                    :
                Defendant.                                    :
                                                                    :
------------------------------------------------------------------- X   06-CV13157 (GEL) (DF)
TELENOR MOBILE COMMUNICATIONS AS,                                   :
                                                                    :
                Counterclaimant,                              :
                                                                    :
         - against-                                            :
                                                                    :
STORM LLC,                                                          :
                                                                    :
                Counterclaim-Defendant,                       :
                                                                    :
         - and-                                                :
                                                                    :
ALTIMO HOLDINGS & INVESTMENTS LIMITED and                           :
ALPREN LIMITED,                                                     :
                                                                    :
                Relief Defendants.                            :
------------------------------------------------------------------- X

**MEMORANDUM IN OPPOSITION TO MOTION OF RELIEF DEFENDANTS
ALTIMO HOLDINGS & INVESTMENTS LIMITED AND ALPREN LIMITED
TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Defendant Telenor Mobile Communications AS ("Telenor Mobile") respectfully submits this memorandum in opposition to the motion to dismiss filed by Relief Defendants Alpren Limited ("Alpren") and Alpren's parent, Altimo Holdings & Investments Limited ("Altimo").

## THE MOVING DEFENDANTS

<u>Alpren</u>. Alpren, the ostensible plaintiff in both of the Ukrainian litigations at issue here, is a Cyprus shell company with its "office" at Abacus Limited ("Abacus"), a well-known offshore services company located in Nicosia, Cyprus. Alpren's only directors are Stella Herodotou and Charalambos Michaelides, both Cypriot nationals and employees of Abacus. *See* Declaration of Christodoulos G. Pelaghias ("Pelaghias Decl."), ¶ 4. The secretary of Alpren, its only officer, is Abacus Secretarial Ltd., a subsidiary of Abacus. (Pelaghias Decl. ¶ 5). According to its website, Abacus "provides company administration and other services." Declaration of Robert L. Sills ("Sills Decl."), Exh. B.

> Alpren's Articles of Association limit its business as follows:
>
> Notwithstanding anything contained in the Memorandum of Association of the Company the sole subject of activity of the Company shall be the holding of participants interests in Storm LLC a limited liability company registered in Ukraine as company number 23163325 ("Storm"), the exercise of any and all rights and obligations associated with or related to such shareholding and the entry into documents in connection with borrowing from Credit Suisse, London Branch and the lenders from time to time under the Loan Agreement. The Company shall not engage into or carry out any other business activity of any nature whatsoever.

(Pelaghias Decl. ¶ 6).

Although Storm, Alpren and Altimo all claim that Alpren is an independent actor that decided, on its own, to sue its subsidiary Storm, that cannot

2

possibly be the case. (*See, e.g.,* December 12 Tr. at 22). Putting to one side the absurdity of the notion that Ms. Herodotou and Mr. Michaelides conferred and decided to commence two lawsuits in Ukraine against a subsidiary of Abacus' client, Altimo, Abacus goes to great lengths to persuade its clients that it would do no such thing. The Abacus website promises the following:

> We apply an extremely strict system of internal controls covering all partners and ensure absolute protection and security of all assets entrusted to us by our clients. <u>All actions regarding a client's business or assets are taken only in accordance with the authorization procedures agreed in advance between Abacus and the client</u>. No single person within the firm has power to take any unauthorized action and all work is supervised directly by the Abacus partners at all times.

(Sills Decl., Exh. B, "Our Work") (emphasis added). While the "authorization procedures" agreed to between Altimo and Abacus are not publicly available, it is inconceivable that they do anything other than bind Alpren to act only on and in accordance with Altimo's instructions.

Alpren's office address in Ukraine is the same as the address of the law firm of Ilyashev & Partners. *See* Declaration of Oleksiy Didkovskiy ("Didkovskiy Decl."), ¶ 3. According to an affidavit filed by that firm's senior officer, Mikhail Ilyashev, in the underlying arbitration, Mr. Ilyashev and his partner Roman Marchenko represented Alpren in its first lawsuit against Storm, and, according to a recent press account, he is the lawyer for Alpren in the current litigation, as well. *See* Declaration of Mikhail Ilyashev (filed in underlying arbitration proceeding). However, Mr. Marchenko, represented Storm in at least one of its litigations purporting to affect Telenor Mobile's rights, in the city of Kharkiv, Ukraine. (Didkovskiy Decl., ¶ 3).

<u>Altimo</u>. It is not disputed Altimo owns 100% of Alpren. (Pelaghias Decl.,

¶ 8-15). Altimo is a part of the Alfa Group Consortium, and holds its telecommunications interests, including its interest in Kyivstar. (Sills Decl. Exhs. B and C).

      Altimo's representative in Ukraine is one Vadim Klymenko. *See* Declaration of Robert L. Sills dated December 11, 2006 ("December 11 Sills Decl."), Exh. A. His business cards, both in Russian and English, identify him as Altimo's vice president and representative in Ukraine, as does his affidavit filed in the arbitration. (Didkovskiy Decl., Exhs. F); (December 11 Sills Decl., Exh A).

      Mr. Klymenko is also the current general director of Storm, and, according to official Ukrainian records, its "highest authority".[1] (Didkovskiy Decl. ¶ 6, Exh. G). He is also the sole defendant in the second Alpren action. Given that Alpren is a shell with no officers, directors or employees other than the Abacus employees, it can only have been Abacus' client, Altimo, that directed both litigations. Mr. Klymenko is, according to the résumé attached as Exhibit A to his affidavit, responsible for Altimo's litigations in Ukraine. (December 11 Sills Decl., Exh A). It is, accordingly, even clearer than before that the litigations brought by Alpren against its subsidiary Storm and Storm's general director, Mr. Klymenko, are entirely collusive and taken in furtherance of a conspiracy among Altimo, Alpren and Storm to disrupt and interfere with the ongoing arbitration.[2]

---

[1] Storm, like its parents Alpren and Hardlake, conducts no operations. Rather, it exists to hold Altimo's 45.3% interest in Kyivstar. Its registered address in Kyiv is 1 Narodnodo Opolchennya Street, Solomyansky District, the Kyiv, office of Vladimir Jmak, one of its lawyers.

[2] A recent press account quoting Alpren's lawyer, Mikhail Ilyashev, states that Mr. Klymenko was secretly participating in the arbitration in New York, and that once Alpren learned of Mr. Klymenko's activities, it sued him. (See Sills Decl. ¶ E).

4

# ARGUMENT

## I. TELENOR MOBILE HAS DEMONSTRATED THAT THIS COURT HAS PERSONAL JURISDICTION OVER ALPREN

Defendants argues that a "bland assertion of conspiracy" alone will not support jurisdiction over a parent corporation based on the actions of its subsidiary, and that specific facts connecting a foreign defendant to activity in New York is necessary to support personal jurisdiction. *See* Opposition Memorandum of Defendants Altimo and Alpren ("Opp. Mem.") at 2. While that abstract statement of principle is correct, it has no applicability here, because, even without discovery, there is a substantial circumstantial record that Storm and Alpren, at the direction of Altimo, have conspired and acted in concert to derail the arbitration proceedings taking place in New York through their participation in collusive litigation in Ukraine (collectively the "Alpren Litigation"), all in aid of Altimo's goal of acquiring greater control in Kyivstar.

It is well established that the actions of a "co-conspirator may be attributed to a defendant for the purposes of obtaining personal jurisdiction." *See* Weinstein-Korn-Miller, *New York Civil Practice* ¶ 302.06 (2006); *Simon v. Philip Morris,* 2000 U.S. Dist. LEXIS 265, *67 (E.D.N.Y. Jan. 4, 2000) (finding jurisdiction over holding company). To establish jurisdiction on this basis, a plaintiff must "(a) make a prima facie factual showing of conspiracy and (b) allege specific facts that warranting the inference that" defendants were members of a conspiracy. *In re Sumitomo Copper Litig.*, 120 F. Supp. 2d 328, 339 (S.D.N.Y. 2000); *Chrysler Capital Corp. v. Century Power Corp.,* 778 F. Supp. 1260, 1266 (S.D.N.Y. 1991). Those elements are easily satisfied here.[3]

---

[3] Defendants mistakenly cite to *In re Sumitomo's* standard for "agency jurisdiction", but not its discussion of "conspiracy jurisdiction." Although conspiracy jurisdiction is a species of an agency relationship, contrary to Defendants' suggestion, the New York law of conspiracy does not require the presence of a "primary actor". *See* Weinstein-Korn-Miller ¶ 302.06[3] (2006).

A. **The Evidence Shows That Storm and Alpren, at the Instigation of Altimo, Have Conspired and Acted in Concert to Disrupt the Arbitration Proceedings in New York**

A showing of conspiracy requires (a) a corrupt agreement between two or more persons; (b) an overt act in furtherance of that agreement; (c) the parties' intentional participation in the furtherance of a plan or purpose; and (d) the resulting damage or injury. *See Chrysler Corp.*, 778 F. Supp. at 1267.

(a) *The Corrupt Agreement*

Evidence that members of a conspiracy entered into a formal agreement is neither common, nor necessary, in establishing proof of the conspiracy. *See* Devitt and Blackmar, Federal Jury Practice and Instructions § 27.04 (3rd. Ed., 1977). Evidence need not show that the members of an alleged conspiracy entered into "any express or formal agreement, or that they directly, by words spoken or in writing, stated between themselves what their object or purpose was to be . . . [O]rdinarily only the results of a conspiracy, rather than the agreement, are observable." *Id.*

Here, this Court's ruling denying Storm's motion to enjoin the arbitration, makes it clear that Altimo, Alpren and Storm entered into a corrupt agreement, that overt actions by Altimo and its wholly owned subsidiaries, Alpren and Storm, were taken to effect that plan, and they engaged in intentional joint participation to further that plan. This Court specifically noted – even before the second Alpren case was filed – that there was "substantial evidence" that the Ukrainian orders were the product of collusion, and recognized the resulting damage of the Alpren litigation, finding that the litigation in Ukraine was "basically a shabby tactic on the part of the plaintiffs" to disrupt the New York arbitration proceedings on the basis of collusive litigation in the Ukraine. (November 22 Tr. at 32, 38).

This is not a case where, as Defendants suggest, the plaintiff alleges that

jurisdiction exists over the parent solely because jurisdiction exists over the subsidiary. (*See, e.g.,* Opp. Mem. at 3). Rather, the evidence here amply demonstrates that: (a) Storm and Alpren (and its sister company, Hardlake) are holding companies with no independent operations, and both are wholly-owned and controlled by Altimo, (Pelaghias Decl. ¶¶ 8-15); (b) that the only corporate purpose of Storm is to hold Altimo's shares in Kyivstar for Alpren and Hardlake (Sills Decl. ¶ 5, Exh. D); (c) that the only corporate purpose of Alpren (and Hardlake) is to hold shares in Storm for Altimo (Pelaghias Decl. ¶¶ 6, 12); and (d) that, in an effort to disrupt the New York arbitration, Altimo instructed one of its direct wholly owned subsidiaries, Alpren, to bring proceedings against one of its indirect wholly owned subsidiaries, Storm, and Storm's General Director, in order to disrupt the New York arbitration proceeding to which Storm had consented in the Shareholders Agreement. *See, e.g.,* Evidentiary Brief, Exh. EE (Altimo Press Release). Contrary to Defendants' suggestion at oral argument, lawsuits between wholly owned subsidiaries and parent companies have been rejected for well over a century as impermissibly collusive. *See, e.g, South Spring Hill Gold Mining Co. v. Armador Medean Gold Mining Co.*, 145 U.S. 300, 301 12 S. Ct. 921, 921 (1892); *cf. Motorola Credit Corp. v. Uzan*, 388 F. 3d 39 (2d Cir. 2004) (collusive lawsuit between party and its distributors).[4]

*(b) Overt Acts in Furtherance and Intentional Participation in Common Plan*

---

[4] *Spring Hill Gold Mining* and the many cases that have followed it are particularly applicable here, where not only the same corporate owner appears on both sides of a matter, but in some cases the same director. Storm's past and current general directors, Pavel Kulikov and Vadim Klymenko, simultaneously held positions in Altimo and Storm. (December 11 Sills Decl., Exhs. A and O). Valeriy Nilov, another of Storm's general directors, was and remains a senior officer of Alfa Capital in Ukraine. (December 11 Sills Decl., Exhs. L, M). Vadim Klymenko is Altimo's "[g]eneral representative in Ukraine," with responsibility for "litigation and arbitration, representation and implementation of shareholders interests." (December 11 Sills Decl., Exh. A). He has also appeared on behalf of Storm in the original Alpren litigation, and most recently was the ostensible defendant in litigation brought by Alpren. (Sills Decl., Exh. F); (December 11 Sills Decl., Exhs. G, H); (December 5 Sills Decl., Exh. E). As noted in Telenor Mobile's previous papers, in essence, Mr. Klymenko has authorized and directed a lawsuit against himself.

7

In addition to the corporate relationships among Storm, Alpren and Altimo, there are specific acts that connect the Defendants to each other, and to the transactions in New York.

First, the applications brought to the Ukrainian courts, by both Storm or Alpren, have generally taken place in reaction to adverse rulings by the arbitration panel or by this Court.[5] For example, the arbitrators rejected Storm's motion to dismiss on October 22, 2006. Storm waited over three weeks, and then moved for an injunction against the arbitration, then scheduled for December 7. That application was denied by this Court on November 22, 2006. In evident response to this Court's denial of Storm's motion for a preliminary injunction, Storm arranged for its General Director, Mr. Klymenko, to be sued by its corporate parent, Alpren, on December 1, 2006 in Ukraine; that same day, the Ukrainian court granted Alpren's latest application, and purported to enjoin Telenor Mobile, a non-party, from proceeding with the arbitration.[6] See Declaration of Robert L. Sills dated December 5, 2006 ("December 5 Sills Decl."), Exhs. B-D. As is typical of Altimo's litigation campaign in Ukraine, that action was commenced without notice to Telenor Mobile or the arbitrators. (November 22 Tr. at 32). Storm then waited until the close of business on December 4 to notify Telenor Mobile of its claim that the arbitration

---

[5] Days after the Panel rejected Storm's fourth request for a stay, and ordered the parties to go forward with discovery, on October 31, 2006, Storm, the ostensible defendant in the *Alpren* litigation, petitioned for an "order of clarification" in Ukraine. In that two page petition, Storm made no argument and provided no additional materials on the record. In proceedings before this Court, Storm's American counsel confirmed that the failure to give notice of that application to the parties and the Panel was deliberate. *See* November 15 Tr. at 31-32. Moreover, far from defending the agreement it made before the Ukrainian courts, Storm's "clarification" sought and obtained a stronger judgment against itself. Days after the award was issued, Storm embraced the Ukrainian court's "decision" as a further basis to vacate the Panel's award, and continues to do so before the arbitrators.

[6] None of the underlying papers in the second Alpren litigation, assuming that any exist, have been presented to Telenor Mobile, to the arbitrators or to the Court. However, in the press, Mr. Ilyashev, who has appeared for Alpren in that case, asserted that Mr. Klymenko had been secretly participating in the arbitration, and that the injunction against him was sought once Alpren learned of Mr. Klymenko's unauthorized conduct. (Sills Decl., Exh. E).

8

then scheduled for December 7 had been enjoined; Storm simultaneously moved before the arbitrators for an indefinite stay of the arbitration. The hearing was then adjourned to December 18. From recent email exchanges, it appears likely that Storm will again seek a last minute adjournment based on one or the other of its collusive Ukrainian litigations.

However, it was Storm, against whom the Ukrainian injunction was entered in the most recent Alpren case, that raised the specter of criminal sanctions against Telenor Mobile before the arbitrators, and that sought an indefinite stay of the arbitration based on that lawsuit by its corporate parent against its general director. (December 5 Sills Decl., Exhs. B-D). The conspirators' overall strategy is clearly to delay and evade proceedings in New York through abusive litigation in the Ukrainian courts. As the Ninth Circuit held in *E & J. Gallo Winery v. Andina Liquories S.A.*, 446 F.3d 984 (9th Cir. 2006):

> Andina has not given any reason to set aside the forum selection clause. An anti-suit injunction is the only way Gallo can effectively enforce the forum selection clause. In addition, Andina's potentially fraudulent conduct and procedural machinations in Ecuador tilt the balance even further in favor of granting the injunction. We hold that Andina's pursuit of litigation in Ecuador, in violation of the forum selection clause, frustrates a policy of the United States and may well be vexatious and oppressive.

446 F.2d at 993. Of course, the policy in favor of enforcing international arbitration clauses is even stronger, and more strongly supports the issuance of an injunction here.

*(d) Damage or Injury*

Telenor Mobile has also provided evidence of damage and injury in New York. As this Court observed, the continued "policy of dragging out these proceedings through delay tactics" threatens Telenor Mobile's investment in Kyivstar. (November 22 Tr. at

9

37). The record in the underlying arbitration makes clear that Altimo, acting through Alpren and Storm, is engaged in an effort to misappropriate, through the Ukrainian courts, all or part of Telenor Mobile's interest in Kyivstar. As part of that corrupt conspiracy, Altimo is engaged in a continuous effort to halt and disrupt the arbitration through which Telenor Mobile is asserting its rights, and which the parties agreed would be the forum in which their disputes would be settled. By agreement, that arbitration is taking place in New York, under New York law, and is subject to this Court's review. Accordingly, the conspirators' collusive litigation, the second Alpren case, is aimed squarely at New York, and subjects them all to personal jurisdiction here.[7]

## B.   Storm, Alpren and Altimo Are Members of the Conspiracy

The same facts support the inference that the Defendants are members of a conspiracy to disrupt the New York proceedings. First, Defendants clearly are "aware of the effects" of their collusive litigation on the disposition of the New York arbitration. *See In re Sumitomo*, 120 F. Supp. at 340. Moreover, although Storm or its General Director are nominally defendants in the latest Ukrainian litigations, Storm's legal strategy – including its complete failure to defend its contract and seeking to "clarify" an order against it in order to strengthen that order – clearly benefits the out of state Defendants' effort to obtain greater control of Kyivstar. (November 15 Tr. at 31); *Simon*, 2000 U.S. Dist. LEXIS 265 at *69. Finally, the absence of any independent operations of Storm or Alpren, the overlap of officers in Altimo and Storm, as well as Storm's adoption of its parent company's positions with respect to the Ukrainian litigation, strongly

---

[7] To cite a particularly striking example of Altimo's abusive conduct, following a Ukrainian decision obtained by Altimo that restricted membership on the Kyivstar board to shareholders, Altimo began a public campaign asserting that, based on that ruling, Telenor could not consolidate Kyivstar's results on its income statement. (See Sills Decl., Exh K). Altimo could have no legitimate interest in Telenor Mobile's accounting practices, but its effort to utilize one of its litigations in an effort to harm and pressure Telenor is revealing.

indicates that Storm's actions in New York come at the direction, under the control, or at the request of the out of state Defendants. *See Simon*, 2000 U.S. Dist. LEXIS 265 at *70.

### C. Storm Has Committed a Tort in the State

Storm's brazen and collusive resort to the Ukrainian courts and its endless efforts to disrupt the New York arbitration are part of Altimo's broader conspiracy to seize control of Telenor Mobile's extremely valuable interest in Kyivstar. It has long been settled that a conspiracy to destroy a plaintiff's business by the various means alleged constitutes a tortious act, including cases in which a conspiracy is effectuated by means of a breach of contract. *See, e.g., Path Instruments International v. Asahi Optical*, 312 F. Supp. 805, 810 (S.D.N.Y. 1970).

The parties are obligated under the Shareholders Agreement they executed on January 30, 2004 not to bring any "action, lawsuit or other proceeding. . . . in connection with any matter arising out of or in connection with" the Agreement. (Dec. 5 Sills Decl., Exh. A § 12.01(b)). In repeated and flagrant violation of § 12.01(b) of the Shareholders Agreement, Storm, and Storm's immediate corporate parent, Alpren, at the direction of Altimo, brought an action against Storm on April 14, 2006, seeking to invalidate the Shareholders Agreement. The result of that decision has disrupted the arbitration proceedings in New York, and reflects a broader attempt to destroy Telenor's interests in Kyivstar.[8]

---

[8] Only this week, Storm boycotted a shareholders meeting of Kyivstar called for the express purpose of considering amendments to the charter to meet the purported requirement, established in one of Altimo's many Ukrainian litigations, that only shareholders in Kyivstar may serve as directors. At the same time, Storm is conducting a highly public campaign asserting that it is entitled to equal representation on the Kyivstar board, despite its minority shareholding and the express provisions of the Shareholders Agreement. See Sills Decl., Exh J.

### D.   Storm Is a "Mere Department"

Alternatively, personal jurisdiction exists because Storm and Alpren act as mere departments of Altimo. A subsidiary consenting to New York jurisdiction can also confer jurisdiction over a foreign parent when the subsidiary is so dominated by the parent as to be, in practice, a "mere department" of the parent rather than a truly independent entity. *See Salemi v. Boccador*, 2004 WL 943869 at *3 (S.D.N.Y. Apr. 29, 2004 ); *Taca Int'l Airlines, S.A. v. Rolls-Royce of England, Ltd.*, 15 N.Y.2d 97, 101-102 (1965).

To determine whether a subsidiary is a "mere department" of its parent corporation, the Second Circuit has developed a four part test: (1) "common ownership," which is "essential"; (2) "financial dependency of the subsidiary on the parent corporation"; (3) "the degree to which the parent corporation interferes in the selection and assignment of the subsidiary's executive personnel and fails to observe corporate formalities"; and (4) "the degree of control over the marketing and operational policies exercised by the parent." *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120-22 (2d Cir. 1984). The first factor, common ownership, is "essential to the assertion of jurisdiction over a foreign related corporation, while the three other factors are important. The overall weighing of the various factors thus necessitates a balancing process, and not every factor need weigh entirely in the plaintiff's favor." *Allojet v. Vantgage Assocs.*, 2005 WL 612848 at *5 (S.D.N.Y. Mar. 15, 2005); *Northrop Grumman Overseas Serv. Corp. v. Banco Wiese Sudameris*, 2004 WL 2199547 at *9 (S.D.N.Y. Sept. 29, 2004) (*citing Beech*, 751 F.2d at 120-22).

With respect to the first, and most essential, factor, Altimo does not contest that it wholly owns both Alpren and Storm. (December 11 Tr. at 21). The principal business of

Alpren (and Hardlake) is to hold shares in Storm for Altimo. (Pelaghias Decl. ¶¶ 6-15). Storm, in turn, only exists to hold shares in Kyivstar for Altimo. (Sills Decl. ¶ 5, Exh. D)

With respect to the second factor, neither Storm, Alpren or Hardlake has any business other than holding shares in another company, and they are wholly financially dependent on Altimo. (Pelaghias Decl. ¶¶ 7-15)

With respect to the third factor, for the past three years, each general director of Storm has also been an Altimo executive; currently, Mr. Klymenko serves as both Altimo's Ukrainian country manager and Storm's general director. (December 11 Sills Decl., Exh A.); *see also Allojet*, 2005 WL 612848 at *9 ("courts look to, *inter alia*, whether the parent shares officers with the subsidiary and shifts executives among its subsidiaries, whether the parent pays the executives' salaries, and whether the subsidiary holds separate meetings of its Board of Directors.") For Alpren, there are no employees, and the only directors are professional directors who work for Abacus. (Pelaghias Decl. ¶¶ 4-10)

With respect to the fourth factor, neither Storm nor Alpren have any independent operations in Cyprus or Ukraine. (Pelaghias Decl. ¶ 6); (Sills Decl., Exh. D). Indeed, neither has any operations at all. All are reliant on Altimo for direction and management, whether it be in relation to their marketing, operations or financing. The fact that their "operations" are carried on through corporations, rather than departments, is insignificant for jurisdictional purposes.

### E. The Assertion of Jurisdiction Is Consistent With Due Process

Relying on broad statements of principle, Defendants also argue that jurisdiction would violate due process. Defendants cannot seriously question being brought before a New York court after acting together to deliberately disrupt arbitration

proceedings in New York. *See Calder v. Jones*, 465 U.S. 783, 789 (1984) (jurisdiction over Florida resident proper in California in light of "intentional, and allegedly tortious actions . . . expressly aimed at California"); *Simon,* 2000 U.S. Dist. Lexis at *89. Having engaged in intentional, collusive misconduct, knowing that this would have its principal effect and cause harm in New York, Defendants have subjected themselves to jurisdiction in New York.[9] *Id.*

### F. A Preliminary Injunction Should be Entered

More than sufficient evidence has been introduced demonstrating that Storm, Alpren and Altimo are acting in concert to frustrate an international arbitration proceeding in New York, in order to prevent Telenor Mobile from protecting its rights in Kyivstar. Suits brought in violation of international arbitration agreements frustrate important federal policies favoring enforcement of arbitration and forum selection clauses. *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 654 (2d Cir. 2004); *Farrell Lines Inc. v. Columbus Cello-Poly Corp.*, 32 F. Supp.2d 118, 130 (S.D.N.Y. 1997). As a general matter, violation of such strong public policies of the enjoining forum takes on "significance in deciding whether or not to grant an injunction." *See E. J. Gallo Winery, supra,* 446 F.3d at 991-93; *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.,* 198 F.3d 88, 92 (2d Cir. 1999). Absent an injunction compelling Storm, and its co-conspirators Alpren and Altimo, to halt their campaign of vexatious and collusive litigation those policies. *See E. & J. Gallo Winery*, 446 F.3d at 995 ("Andina has involved Gallo in messy, protracted and potentially fraudulent litigation in Ecuadar. . . . [T]his is a paradigmatic case for a

---

[9] Two of Altimo's major holdings, VimpelCom and Golden Telecom, are listed on the New York Stock

preliminary anti-suit injunction.") An injunction against Storm, Altimo and Alpren is well within this Court's power, and will allow the arbitration, at long last, to move forward without interference.[10]

---

Exchange and Nasdaq, respectively.

[10] While it is true that, if only Storm were enjoined, Alpren and Altimo could be held in contempt if they acted in concert with Storm, such an injunction would provide Telenor Mobile with incomplete relief, and enforcement after the fact by contempt is a poor substitute for injunctive relief. For example, Telenor Mobile has asked that Storm, Alpren and Altimo be directed, as in *Paramedics*, to withdraw their collusive litigations. If such relief is granted, they will presumably comply, and if not, the contempt proceeding will be straightforward. If only Storm were directed to do so, and the litigation were not withdrawn, a long proceeding in which Alpren and Altimo again sought to prove that they had independently decided to sue their subsidiary would almost certainly follow. Given that Altimo and Alpren are within the Court's jurisdiction, and that there is already ample evidence that they are acting in concert, there is no prudential reason to withhold relief against them.

## CONCLUSION

For the above reasons, and those set forth in its other papers, Telenor Mobile's Motion to Compel Arbitration and Request for an Anti-Suit Injunction should be granted in its entirety.

Dated: New York, New York
December 14, 2006

Respectfully submitted,
ORRICK, HERRINGTON & SUTCLIFFE LLP

By: *Robert L. Sills*
Robert L. Sills (RS 8890)
Jay K. Musoff (JM 8716)
666 Fifth Avenue
New York, New York 10103
Telephone: (212) 506-5000
Facsimile: (212) 506-5151

-and-

Peter O'Driscoll
ORRICK, HERRINGTON & SUTCLIFFE LLP
25 Old Broad Street
London EC2N 1HQ
DX: 557 London/ City
United Kingdom
Telephone: +44 20 7562 5000