Robert L. Sills (RS 8896)
Jay K. Musoff (JM 8716)
Orrick, Herrington & Sutcliffe LLP
666 Fifth Avenue, New York, New York 10103
Telephone: (212) 506-5000
Facsimile: (212) 506-5151
Attorneys for Defendant

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------- X

**STORM LLC,**

                         Plaintiff,

                  -against-

**TELENOR MOBILE COMMUNICATIONS AS,**

                         Defendant.

-------------------------------------------------------------------------- X   06 CV 13157 (GEL) (DF)

**TELENOR MOBILE COMMUNICATIONS AS,**

                         Counterclaimant,

                - against-

**STORM LLC,**

                         Counterclaim-Defendant,

              - and-

**ALTIMO HOLDINGS & INVESTMENTS LIMITED and**
**ALPREN LIMITED,**

                         Relief Defendants.

-------------------------------------------------------------------------- X

**DECLARATION OF**
**CHRISTODOULOS G.**
**PELAGHIAS**

      I, **CHRISTODOULOS G. PELAGHIAS,** declare the following to be true:

          1.      I am a practicing attorney admitted to the Bar of the State of New

York as well as the Bar of Cyprus. A copy of my profile from Martindale-Hubbell is

attached to this declaration as Exhibit A. I make this declaration at the request of Telenor

Mobile Communications AS ("Telenor Mobile") and pursuant to 28 U.S.C. § 1746 in

support of Telenor Mobile's motion for an anti-suit injunction.


            2.        In connection with this engagement, and with regard to Alpren

Limited, a company organized under the laws of Cyprus, registration number 143441

("Alpren") and Hardlake Limited, a company organized under the laws of Cyprus,

registration number 163009 ("Hardlake"), I requested from the Registrar of Cyprus

Companies (the "Registrar") the following documents:

        (a) Directors and Secretary Certificate;

        (b) Shareholders Certificate;

        (c) Registered Address Certificate;

        (d) Certified copies of Memorandum and Articles of Association.


I requested that the Registrar provide such documents on an expedited basis; however,

the Registrar has informed me that it will not be able to provide such certified copies until

December 20, 2006 at the earliest. Accordingly, I have conducted a search of the files

held by the Registrar and read and carefully reviewed all documents that are of public

record in the possession of the Registrar relating to Alpren and Hardlake. I was also able

to obtain non-certified copies of the respective memorandum and articles of association

of Alpren and Hardlake and copies of secretary's certifications showing the adoption of

special resolutions of the sole shareholders of Alpren and Hardlake. The records of the

Registrar include only the items that have been filed by the secretary and/or the directors

of each company and my search therefore was not able to locate items that have either not been filed or have been filed but have not as yet been processed by the Registrar. Set out below is a summary of the findings of my search:

3.      As of July 1, 2004, Alpren's registered address in Cyprus is Themistocle Dervi 5, Elenion Building, 2nd Floor, 1066 Nicosia .

4.      Alpren currently has two directors, whose names, addresses and citizenship are as follows: a) Stella Herodotou, having an address at 5, Themistocle Dervi, Elenion Building, 2nd floor, 1066 Nicosia, and having a Cypriot citizenship; b) Charalambos Michaelides, having an address at 5, Themistocle Dervi, Elenion Building, 2nd floor, 1066 Nicosia, and having a Cypriot citizenship.

5.      The secretary of Alpren is Abacus Secretarial Ltd. ("Abacus"), the address of which is also at 5, Themistocle Dervi, Elenion Building, 2nd floor, 1066 Nicosia and which is a company registered in Cyprus. The website of Abacus indicates that this company was set-up by ex-partners of PricewaterhouseCoopers Cyprus to provide non-audit services including corporate secretarial services, mainly to PricewaterhouseCoopers clients.

6.      The Articles of Association of Alpren were amended by a special resolution of the sole shareholder of Alpren dated January 27, 2006 to include Regulation 139 as follows:

3

"Notwithstanding anything contained in the Memorandum of Association of the

Company the sole subject of activity of the Company shall be the holding of participants

interests in Storm LLC a limited liability company registered in Ukraine as company

number 23163325 ("Storm"), the exercise of any and all rights and obligations associated

with or related to such shareholding and the entry into documents in connection with

borrowing from Credit Suisse, London Branch and the lenders from time to time under

the Loan Agreement.  The Company shall not engage into or carry out any other business

activity of any nature whatsoever".

Non-certified true and complete copies of the Memorandum of Association and Articles

of Association of Alpren are attached hereto as Exhibit B.  A true and complete copy of

a secretary's certification signed by Abacus showing that such special resolution was

duly adopted by Alpren is attached hereto as Exhibit C.

       7.     According to the records held by the Registrar, all of the shares in
Alpren at the date of the special resolution (i.e. January 27, 2006) were held by Alfa
Telecom Ltd. of Wickhams's Cay 1, P.O. Box 3339, Road Town, Tortola, BVI.  On
March 24, 2006 the Registrar was notified that Alfa Telecom Ltd. changed it's name to
Altimo Holdings & Investments Ltd. which retained the same address.

       8.     According to the records held by the Registrar all of the shares in
Alpren are currently held by: Altimo Holdings & Investments Ltd. having an address at:
Wickham's Cay 1, P.O. Box 3339, Road Town, Tortola, BVI.

       9.     As of July 13, 2005, Hardlake's registered office address is 5

4

Themistocle Dervi, Elenion Building, 2nd floor, 1066 Nicosia, which is the same registered office address as the registered office address of Alpren.

10.     Hardlake currently has two directors, whose names, addresses and citizenship are as follows: a) Sophia Ioannou having an address at: 5 Themistocle Dervi, Elenion Building, 2nd floor, 1066 Nicosia and having Cypriot citizenship; b) Charalambos Michaelides having an address at: 5 Themistocle Dervi, Elenion Building, 2nd floor, 1066 Nicosia and having Cypriot citizenship.

11.     The secretary of Hardlake is Abacus Secretarial Ltd.

12.     The Articles of Association of Hardlake were amended by a special resolution of Hardlake's sole shareholder dated January 27, 2006 to include Regulation 139 reading as follows:

"Notwithstanding anything contained in the Memorandum of Association of the Company the sole subject of activity of the Company shall be the holding of participants interests in Storm LLC a limited liability company registered in Ukraine as company number 23163325 ("Storm"), the exercise of any and all rights and obligations associated with or related to such shareholding and the entry into documents in connection with borrowing from Credit Suisse, London Branch and the lenders from time to time under the Loan Agreement.  The Company shall not engage into or carry out any other business activity of any nature whatsoever".

Non-certified true and complete copies of the memorandum of association and articles of association of Hardlake are attached hereto as Exhibit D.  A true and complete copy of a

5

secretary certification signed by Abacus showing that the said special resolution was duly adopted by Hardlake is attached hereto as Exhibit E.

14.    According to the records held by the Registrar, all of the shares in Hardlake at the date of the special resolution (i.e. January 27, 2006) were held by Alfa Telecom Ltd. of Wickhams Cay 1, P.O. Box 3339, Road Town, Tortola, BVI.  On March 24, 2006 the Registrar was notified that Alfa Telecom Ltd. changed it's name to Altimo Holdings & Investments Ltd which retained the same address.

15.    According to the records held by the Registrar all the shares in Hardlake are currently held by Altimo Holdings & Investments Ltd, having an address at Wickhams Cay 1, P.O. Box 3339, Road Town, Tortola, BVI.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 14th day of December, 2006

CHRISTODOULOS G. PELAGHIAS
ATTORNEY AT LAW

6

LexisNexis
Martindale-Hubbell

martindale.com

🖶 Print          ⊠ Close Window

## Private Practice Lawyer Profile for Christodoulos G. Pelaghias

**Christodoulos G. Pelaghias**
Member
Law Offices of
Christodoulos G. Pelaghias
27, Gregory Afxentiou Ave., P.O. Box 40672
6306 Larnaka, Cyprus

Telephone: +357-24-654900
Facsimile: +357-24-620319; +357-24-654972

**Practice Areas:** Corporate; International Tax; Securities Regulation; Admiralty;
Commercial Litigation

**Admitted:** 1985, New York; 1990, Cyprus

**Education:** Columbia University (M.A., Intl. Affairs, 1979; J.D., 1982; Ph.D., Pol. Sci.,
1999)

**Member:** American Bar Association; New York State Bar Association (International Law
and Practice Section; Chairperson, Cyprus Chapter); Association of the Bar of the City of
New York; Maritime Law Association of the United States; International Tax Planning
Association; Cyprus Bar Association.

**Biography:** Reviser, Digest of Commercial Laws of the World-Cyprus, Oceana, Dobbs
Ferry, New York 1995.

**Languages:** Greek, English and French

**Born:** Larnaka, Cyprus, May 10, 1953

**ISLN:** 904520550

**Web Site:** http://www.swrd.com

THE COMPANIES LAW, CAP. 113


PRIVATE COMPANY LIMITED

BY SHARES


MEMORANDUM

AND

ARTICLES OF ASSOCIATION

OF


# ALPREN LIMITED


Incorporated on the ............day of......................... 2003


Certificate No. ...........

## THE COMPANIES LAW (CAP. 113)

## PRIVATE COMPANY LIMITED BY SHARES

## MEMORANDUM OF ASSOCIATION

### OF

### ALPREN LIMITED

1.     The name of the Company is:

**ALPREN LIMITED**

2.     The registered office of the Company will be situated in Cyprus.

3.     The objects for which the Company is established are:-

(1) To carry on either alone or jointly with others anywhere in the world, any business, work, operation or activity whatsoever relating to connected with or involving stocks, shares, bonds, commodities of all kinds, real estate in general, developing, buying, selling and financing real estate and other businesses, sinking of wells, pumping, diving, surveying mineral, oil or gas exploration extraction or exploitation, installation or building of any structures and in connection with or in relation to the above, to act as contractors, sub-contractors, suppliers of power, designers, surveyors, managers, tenderers, agents, consultants, advisers, insurers, engineers, machinists, ship-chandlers, transporters and brokers of insurance, stocks, shares and all other commodities.

(2) To carry on either alone or jointly with others anywhere in the world the business of consultants, managers, analysts, controllers, examiners, researches, technical or other advisers, promoters, financial analysts, cost analysts, valuers, supervisors, auditors, accountants, statisticians, economists, (including the undertaking and making of feasibility studies), brokers or agents and advertisers in relation to any kind of industry, commerce, business or undertaking of every kind and nature either in the public or the private sector and to advise on the means and methods or promoting and executing any project whatsoever including the acquisition, sale letting or availability of any kind of "know-how" and the business of a company engaging acquiring and making available services and goods.

(3) To carry on either alone or jointly with others anywhere in the world (and whether in a "free zone area", bonded area or elsewhere), the business of manufacturers, processors, dealers, storers, warehousemen, removers, packers, wholesalers, retailers, importers, exporters, suppliers, distributors, consignees, buyers, sellers, resellers of any kind of goods materials merchandises or things of any nature, as well as the business of merchants in general, carriers by any means of transportation, travel or insurance agents, agents on commission or otherwise, forwarding agents, charterers, estate agents and agents in general.

3

(4) To engage, hire and train professional, clerical, manual technical and other staff and workers or the services of all or any of them and in any way and manner acquire, possess, manufacture or assemble any property of any kind or description whatsoever (including any rights over or in connection with such property) and to allocate and make available the aforesaid personnel or services or make the use of such property available on hire purchase, sale, exchange or in any other manner whatsoever, to those requiring or requesting same or who have need of the same or their use and otherwise to utilise same for the benefit or advantage of the Company; to provide or procure the provision by others of every and any service, need, want or requirement of any business nature required by any person, firm or company in or in connection with any business carried on by them.

(5) To carry on any other business or activity which may seem to the Directors capable of being conveniently or advantageously carried on or done in connection with any of the above objects or calculated directly or indirectly to enhance the value of or render more profitable any of the Company's business property or rights.

(6) To purchase, obtain by way of gift, take on lease or sub-lease or in exchange, or otherwise acquire or possess and hold for any estate or interest any lands, buildings, easements, rights, privileges, concessions, permits, licences, stock-in-trade, and movable and immovable property of any kind and description (whether mortgaged charged or not) necessary or convenient for the purposes of or in connection with the Company's business or any branch or department thereof or which may enhance the value of any other property of the Company.

(7) To erect, maintain, work, manage, construct, reconstruct, alter, enlarge, repair, improve, adapt, furnish, decorate, control, pull down, replace any shops, offices, flats, electric or water works, workshops, mills, plants, machinery, warehouses and any other works, buildings, plants, conveniences or structures whatsoever, which the Company may consider desirable for the purposes of its business and to contribute to, subsidize or otherwise assist or take part in the construction, improvement, maintenance, working, management, carrying out or control thereof.

(8) To improve, manage, control, cultivate, develop, exploit, exchange, let on lease or otherwise, mortgage, charge, sell, dispose of, grant as gift, turn to account, grant rights and privileges in respect of, or otherwise deal with all or any part of the property, assets and rights of the Company or in which the Company is interested and to adopt such means of making known and advertising the business and products of the Company as may seem expedient.

(9) To manufacture, repair, import, buy, sell, export, let on hire and generally trade or deal in, any kind of accessories, articles apparatus, plant, machinery, tools, goods, properties, rights or things of any description capable of being used or dealt with by the Company in connection with any of its objects.

(10) To deal in, utilise for building or other purposes, let on lease or sublease or on hire, to assign or grant licence over, charge or mortgage, the whole or any parts of the immovable property belonging to the Company or any rights thereon or in which the Company is interested on such terms as the Company shall determine.

(11) To purchase or otherwise acquire all or any part of the business, assets, property and liabilities of any company, society, partnership or person, formed for all or any part of the purposes within the objects of the Company, or carrying on any business or intending to carry on business which the Company is authorised to carry on, or possessing property suitable for the purposes of the Company and to undertake,

conduct and carry on, or liquidate and wind up, any such business and, in consideration for such acquisition, to pay in cash, issue shares, undertake any liabilities or acquire any interest in the vendor's business.

(12) To apply for and take out, purchase or otherwise acquire any designs, trade marks, patents, patent rights or inventions, brevets d'invention, copyright or secret processes, which may be useful for the Company's objects, and to grant licences to use the same.

(13) To pay all costs, charges and expenses incurred or sustained in or about the promotion, formation and establishment of the Company or which the Company shall consider to be in the nature of preliminary expenses or expenses incurred prior to incorporation and with a view to incorporation, including therein professional fees, the cost of advertising, taxes, commissions for underwriting, brokerage, printing and stationery, salaries to employees and other similar expenses and expenses attendant upon the formation and functioning of agencies, local boards or local administration or other bodies, or expenses relating to any business or work carried on or performed prior to incorporation, which the Company decides to take over or continue.

(14) Upon any issue of shares, debentures or any other securities of the Company, to employ brokers, commission agents and underwriters, and to provide for the remuneration of such persons for their services by payment in cash or by the issue of shares, debentures or other securities of the Company, or by the granting of options to take the same, or in any other manner allowed by law.

(15) To borrow, raise money or secure obligations (whether of the Company or any other person) in such manner or such terms as may seem expedient, including the issue of debentures, debenture stock (perpetual or terminable), bonds, mortgages or any other securities, founded or based upon all or any of the property and rights of the Company, including its uncalled capital, or without any such security and upon such terms as to priority or otherwise, as may be thought fit.

(16) To lend and advance money or give credit to any person, firm or company; to guarantee, give guarantees or indemnities for, undertake or otherwise support or secure, either with or without the Company receiving any consideration or advantage and whether by personal covenant or by mortgaging, charging, pledging, assigning or creating of any rights or priorities in favour of any person or in any other manner whatsoever all or part of the undertaking, property, assets, book, debts, rights, choses in action, receivables and revenues present and future and uncalled capital of the Company or by any such methods or by any other means whatsoever, the liabilities, the performance of contracts and obligations of and the payment of any moneys whatsoever (including but not limited to principal, interest and other liabilities or any borrowing or acceptance of credits and capital, and premiums, dividends, costs and expenses on any stocks, shares or securities) by any person, firm or company including, but not limited, to any company which is for the time being the holding company or a subsidiary of or associated or affiliated with the Company or with which the Company has any contractual relations or in which the Company holds any interest or which holds any share or interest in the Company; and otherwise to assist any person or company as may be thought fit.

(17) To draw, execute, issue, accept, make endorse, discount and negotiate bills of exchange, promissory notes, bills of lading, and other negotiable or transferable instruments or securities.

(18) To receive money on deposit, with or without allowances or interest thereon.

(19) To advance and lend money upon such security as may be thought proper, or without any security therefor.

(20) To invest the moneys of the Company not immediately required in such manner, other than in the shares of the Company, as from time to time may be determined by the Directors.

(21) To issue, or guarantee the issue or the payment of interest on, the shares, debentures, debenture stock, or other securities or obligations of any company or association, and to pay or provide for brokerage, commission, and underwriting in respect of any such issue.

(22) To acquire by subscription, purchase or otherwise, and to accept, take, hold, deal in, convert and sell, any kind of shares, stock, debentures or other securities or interests in any other company, society or undertaking whatsoever.

(23) To issue and allot fully or partly paid shares in the capital of the Company or issue debentures or securities in payment or part payment of any movable property purchased or otherwise acquired by the Company or any services rendered to the Company and to remunerate in cash or otherwise any person, firm or company rendering services or grant donations to such persons.

(24) To establish anywhere in the world, branch offices, regional offices, agencies and local boards and to regulate and to discontinue the same.

(25) To provide for the welfare of officers or of persons in the employment of the Company, or former officers or formerly in the employment of the Company or its predecessors in business or officers or employees of any subsidiary or associated or allied company, of the Company, and the wives, widows, dependants and families of such persons, by grants of money, pensions or other payments, (including payments of insurance premia) and to form, subscribe to, or otherwise aid, any trust, fund or scheme for the benefit of such persons, and any benevolent, religious, scientific, national or other institution or object of any kind, which shall have any moral or other claims to support or aid, by the Company by reason of the nature or the locality of its operations or otherwise.

(26) From time to time, to subscribe or contribute to any charitable, benevolent, or useful object of a public character the support of which will, in the opinion of the Company, tend, to increase its repute or popularity among its employees, its customers, or the public.

(27) To enter into and carry into effect any arrangement for joint working in business, union of interests, limiting competition, partnership or for sharing of profits, or for amalgamation, with any other company, partnership or person, carrying on business within the objects of the Company.

(28) To establish, promote and otherwise assist, any company or companies for the purpose of acquiring any of the property or furthering any of the objects of the Company or for any other purpose which may seem directly or indirectly calculated to benefit the Company.

(29) To apply for, promote, and obtain by Law, Order, Regulation, By-Law, or otherwise, concessions, rights, privileges, licences or permits enabling the Company to carry any of its objects into effect, or for effecting any modification of the Company's constitution, or for any other purpose which may seem expedient, and to oppose any proceedings or applications which may, calculated directly or indirectly, to prejudice the Company's interest and to enter into and execute any arrangement with any Government or Authority, supreme, municipal, local or otherwise that may seem conducive to the Company's objects or any of them.

(30) To sell, dispose of, mortgage, charge, grant rights or options or transfer the business, property and undertakings of the Company or any part thereof for any consideration the Company may see fit to accept.

(31) To accept stock or shares in, or the debentures, mortgage debentures or other securities of any other company in payment or part payment for any services rendered or for any sale made to or debt owing from any such company.

(32) To distribute in specie or otherwise as may be resolved any assets of the Company among its Members and, particularly, the shares, debentures or other securities of any other company belonging to the Company or which the Company may have the power of disposing.

(33) To do all or any of the matters hereby authorised in any part of the world either alone or in conjunction with, or as factors, trustees, principals, sub-contractors or agents for, any other company, firm or person, or by or through any factors, trustees, sub-contractors or agents.

(34) To procure the registration or recognition of the Company in any country or place and to act as secretary, manager, director or treasurer of any other company.

(35) Generally to do all such other things as may appear to the Company to be incidental or conducive to the attainment of the above objects or any of them.

The objects set forth in any sub-clause of this clause shall not be restrictively construed but the widest interpretation shall be given thereto, and they shall not, except when the context expressly so requires, be in any way limited to or restricted by reference to or inference from any other object or objects set forth in such sub-clause or from the terms of any other sub-clause or marginal title or by the name of the Company. None of such sub-clauses or object or objects therein specified or the powers thereby conferred shall be deemed subsidiary or ancillary to the objects or powers mentioned in any other sub-clause, but the Company shall have full power to exercise all or any of the powers and to achieve or to endeavour to achieve all or any of the objects conferred by and provided in any one or more of the said sub-clauses.

Provided always that, as long as any of the shares of the Company are beneficially owned by any person (legal or natural) who is not a resident of the Republic of Cyprus, the Company will not do any business within the Republic except, if required, with the permission of the Central Bank of Cyprus and subject to the conditions of such permission.

7

4. The liability of the members is limited.

5. The authorized share capital of the Company is CYP10.000 divided into 10 000 (ten thousand) shares of CYP 1.- each with power to issue any of the shares in the capital, original or increased, with or subject to any preferential, special or qualified rights or conditions as regards dividends, repayment of capital, voting or otherwise.

WE, whose names and addresses are subscribed, are desirous of being formed into a Company in pursuance of this memorandum of association, and we respectively agree to take the number of shares in the capital of the Company set opposite our respective names.

| NAMES, ADDRESSES AND DESCRIPTION OF SUBSCRIBERS | Number of shares taken by each Subscriber |
|---|---|
| ABACUS (CYPRUS) LIMITED<br><br>*Sophia Ioannou*<br>Limited Liability Company<br>Julia House<br>1st floor<br>3 Themistocles Dervis Street<br>Nicosia – Cyprus<br>Registration No. 14002 | 1 000 Shares |

Dated this the ..2.. day of ...........................n........ 2003

Witness to the above signatures: *Xenia Georgiou*
*Dali*
*9 El. Venizelou Street*
*Private employer*

8

THE COMPANIES LAW, CAP. 113

PRIVATE COMPANY LIMITED BY SHARES

ARTICLES OF ASSOCIATION

OF

ALPREN  LIMITED

INTERPRETATION

hos  ✱  1. In these Regulations :

been
amended
by special     " Cyprus" means the Republic of Cyprus.
resolution
dated     "the Law" means the Companies Law, Cap. 113 or any Law substituting or amending
            same.
22/1/06
See R20     "the seal" means the common seal of the Company.

"the secretary" means any person appointed to perform the duties of the secretary of
the Company.

Expressions referring to writing shall, unless the contrary intention appears, be
construed as including references to printing, lithography, photography, and other
modes of representing or reproducing words in a visible form.

Unless the context otherwise requires, words or expressions contained in these
Regulations shall bear the same meaning as in the Law or any statutory modification
thereof in force at the date at which these Regulations become  binding on the
Company.

## TABLE "A"  EXCLUDED

2. The Regulations contained in Table "A" in the First Schedule to the Law shall not
apply except so far as the same are repeated or contained in these Regulations.

## PRELIMINARY

3. The Company is a private Company and accordingly:

(a) The right to transfer shares is restricted in the manner hereinafter prescribed.

(b) The number of Members of the Company (exclusive of persons who are in the
employment of the Company and of persons who, having been formerly in the
employment of the Company, were, while in such employment, and have continued
after the termination of such employment, to be Members of the Company) is limited
to fifty.  Provided that where two or more persons hold one or more shares in the

Company jointly they shall for the purpose of this Regulation be treated as a single Member.

(c)  Any invitation to the public to subscribe for any shares or debentures of the Company is prohibited.

(d)  The Company shall not have power to issue share warrants to bearer.

(e)  At all times where the Company shall have only one Member the following provisions shall apply:

The sole Member exercises all the powers of the General Meeting provided, always, that any decisions taken by the said Member in General Meeting are minuted or taken in writing.

Agreements concluded between the sole Member and the Company, are minuted or reduced in writing, unless they relate to day to day transactions of the Company concluded in the ordinary course of business.

## BUSINESS

4.     The Company shall pay all preliminary and other expenses and enter into, adopt or carry into effect and take over or continue (with such modifications, if any, as the contracting parties shall agree and the Directors shall approve), any agreement or business or work reached or carried on (as the case might be) prior to incorporation, as the Company may decide.

## SHARE CAPITAL AND VARIATION OF RIGHTS

*It has been amended by special resolution dated 23/1/06 see R20*

5.  The shares shall be at the disposal of the Directors which may allot or otherwise dispose of them, subject to Regulation 3, and to the provisions of the next following Regulation, to such persons at such times and generally on such terms and conditions as they think proper, and provided that no shares shall be issued at a discount, except as provided by section 56 of the Law.

*It has been amended by special resolution dated 23/1/06 see R20*

6.  Unless otherwise determined by the Company in General Meeting, any original shares for the time being unissued and not allotted and any new shares from time to time to be created shall, before they are issued, be offered to the Members in proportion, as nearly as may be, to the number of shares held by them.  Such offer shall be made by notice specifying the number of shares offered, and limiting a time within which the offer, if not accepted, will be deemed to be declined, and after the expiration of such time, or on the receipt of an intimation from the person to whom the offer is made that he declines to accept the shares offered, the Company may, subject to these Regulations, dispose of the same in such manner as it thinks most beneficial to the Company.  The Company may, in like manner, dispose of any such new or original shares as aforesaid, which, by reason of the proportion borne by them to the number of persons entitled to such offer as aforesaid  or by reason of any other difficulty in apportioning  the same, cannot in the opinion of the Company be conveniently offered in manner hereinbefore provided.

7.  Without prejudice to any special rights previously conferred on the holders of any existing shares or class of shares, any shares in the Company may be issued with such preferred, deferred or other special rights or such restrictions, whether in regard to dividend, voting, return of capital or otherwise, as the Company may from time to time by ordinary resolution determine.

8. Subject to the provisions of section 57 of the Law, any preference shares may, with the sanction of an ordinary resolution, be issued on the terms that they are, or at the option of the Company are liable, to be redeemed on such terms and in such manner as the Company before the issue of the shares may by special resolution determine.

9. If at any time the share capital is divided into different classes of shares, the rights attached to any class (unless otherwise provided by the terms of issue of shares of that class) may, whether or not the Company is being wound up, be varied with the consent in writing of the holders of three-fourths of the issued shares of that class, or with the sanction of an extraordinary resolution passed at a separate general meeting of the holders of the shares of the class. To every such separate general meeting the provisions of these Regulations relating to General Meetings shall apply, but so that the necessary quorum shall be two persons at least holding or representing by proxy one-third of the issued shares of the class and that any holder of shares of the class present in person or by proxy may demand a poll.

10. The rights conferred upon the holders of the shares of any class issued with preferred or other rights shall not, unless otherwise expressly provided by the terms of issue of the shares of that class, be deemed to be varied by the creation or issue of further shares ranking pari passu therewith.

11. The Company may exercise the powers of paying commissions conferred by section 52 of the Law, provided that the rate per cent or the amount of the commission paid or agreed to be paid shall be disclosed in the manner required by the said section and the rate of the commission shall not exceed the rate of 10 per cent of the price at which the shares in respect whereof the same is paid are issued or an amount equal to 10 per cent of such price (as the case may be). Such commission may be satisfied by the payment of cash or the allotment of fully or partly paid shares or partly in one way and partly in the other. The Company may also on any issue of shares pay such brokerage as may be lawful.

12. Except as required by law, no person shall be recognized by the Company as holding any shares upon any trust, and the Company shall not be bound by or be compelled in any way to recognize (even when having notice thereof) any equitable, contingent, future or partial interest in any share or any interest in any fractional part of a share or (except only as by these Regulations or by law otherwise provided) any other rights in respect of any share except an absolute right to the entirety thereof in the registered holder.

13. Every person whose name is entered as a Member in the register of Members shall be entitled without payment to receive within two months after allotment or lodgment of transfer (or within such other period as the conditions of issue shall provide) one certificate for all his shares or several certificates each for one or more of his shares upon payment of 12.5 cents for every certificate after the first or such lesser sum as the Directors shall from time to time determine. Every certificate shall be under the seal and shall specify the shares to which it relates and the amount paid up thereon. Provided that in respect of a share or shares held jointly by several persons the Company shall not be bound to issue more than one certificate, and delivery of a certificate for a share to one of several joint holders shall be sufficient delivery to all such holders.

11

**14.** If a share certificate be defaced, lost or destroyed, it may be substituted on payment of a fee of 12.5 cents, or such less sum and on such terms (if any) as to evidence and indemnity and the payment of out-of-pocket expenses of the Company for investigating the evidence adduced as the Directors think fit.

15. The Company shall not give, whether directly or indirectly, and whether by means of a loan, guarantee, the provision of security or otherwise, any financial assistance for the purpose of or in connection with a purchase or subscription made or to be made by any person of or for any shares in the Company or in its holding company nor shall the Company make a loan for any purpose whatsoever on the security of its shares or those of its holding company, but nothing in this Regulation shall prohibit transactions mentioned in the proviso to section 53(1) of the Law.

## LIEN

16. The Company shall have a first and paramount lien on every share for all moneys (whether presently payable or not) called or payable at a fixed time in respect of that share, and the Company shall also have a first and paramount lien on all shares standing registered in the name of a single person for all moneys presently payable by him or his estate to the Company; but the Directors may at any time declare any share to be wholly or in part exempt from the provisions of this Regulation. The Company's lien, if any, on a share shall extend to all dividends payable thereon as well as to any other rights or benefits attached thereto.

17. The Company may sell, in such manner as the Directors think fit, any shares on which the Company has a lien, but no sale shall be made unless a sum in respect of which the lien exists is presently payable, nor until the expiration of fourteen days after a notice in writing, stating and demanding payment of such part of the amount in respect of which the lien exists as is presently payable, has been given to the registered holder for the time being of the share, or the person entitled thereto by reason of his death or bankruptcy.

18. To give effect to any such sale, the Directors may authorise some person to transfer the shares sold to the purchaser thereof. The purchaser shall be registered as the holder of the shares comprised in any such transfer, and he shall not be bound to see to the application of the purchase money nor shall his title to the shares be affected by any irregularity or invalidity in the proceedings in reference to the sale.

19. The proceeds of the sale shall be received by the Company and applied in payment of such part of the amount in respect of which the lien exists as is presently payable, and the residue, if any, shall (subject to a like lien for sums not presently payable as existed upon the shares before the sale) be paid to the person entitled to the shares at the date of the sale.

## CALLS ON SHARES

20. The Directors may from time to time make calls upon the Members in respect of any moneys unpaid on their shares (whether on account of the nominal value of the shares or by way of premium) and not by the conditions of allotment thereof made payable at fixed times, and each Member shall (subject to receiving at least fourteen days' notice specifying the time or times and place of payment) pay to the Company, at the time or times and place so specified, the amount called on his shares. A call may be revoked or postponed as the Directors may determine and the Members shall be accordingly notified.

21. A call shall be deemed to have been made at the time when the Resolution of the Directors authorising the call was passed and may be required to be paid by installments.

22. The joint holders of a share shall be jointly and severally liable to pay all calls in respect thereof.

23. If a sum called in respect of a share is not paid before or on the day appointed for payment thereof, the person from whom the sum is due shall pay interest on the sum from the day appointed for payment thereof to the time of actual payment at such rate not exceeding 8 per cent per annum as the Directors may determine, but the Directors shall be at liberty to waive payment of such interest wholly or in part.

24. Any sum which by the terms of issue of a share becomes payable on allotment or at any fixed date, whether on account of the nominal value of the share or by way of premium, shall for the purposes of these Regulations be deemed to be a call duly made and payable on the date on which by the terms of issue the same becomes payable, and in case of non-payment all relevant provisions of these Regulations as to payment of interest and expenses, forfeiture or otherwise shall apply as if such sum had become payable by virtue of a call duly made and notified. The Directors may on the issue of shares, differentiate between the holders as to the number of calls, the amount of calls to be paid and the times of payment.

25. The Directors may, if they think fit, receive from any Member willing to advance the same, all or any part of the moneys uncalled and unpaid upon any shares held by him and upon all or any of the moneys so advanced may (until the same would, but for such advance, become payable) pay interest at such rate not exceeding (unless the Company in General Meeting shall otherwise direct) 5 per cent per annum, as may be agreed upon between the Directors and the Member paying such sum in advance.

## TRANSFER OF SHARES

26. The instrument of transfer of any share shall be executed by or on behalf of the transferor and transferee, and the transferor shall be deemed to remain a holder of the share until the name of the transferee is entered in the register of Members in respect thereof.

*has been + enacted by special resolution 27/1/06 see P20*

27. Subject to such of the restrictions of these Regulations as may be applicable, any Member may transfer all or any of his shares by instrument in writing in any usual or common form or any other form which the Directors may approve.

*addition of new reg (A) by special resolution dated 27/1/06 see P20*

28. The Directors may, in their absolute discretion and without assigning any reason therefor, decline to register the transfer of a share to a person of whom they shall not approve, and they may also decline to register the transfer of a share on which the Company has a lien.

*this been amended by special resolution dated 27/1/06 see P20*

29. The Directors may also decline to recognize any instrument of transfer unless:

(a) a fee of 12.5 cents, or such lesser sum as the Directors may from time to time require, is paid to the Company in respect thereof;

(b) the instrument of transfer is accompanied by the certificate of the shares to which it relates, and such other evidence as the Directors may reasonably require to show the right of the transferor to make the transfer; and

(c) the instrument of transfer is in respect of only one class of shares.

30. If the Directors refuse to register a transfer they shall, within two months after the date on which the transfer was lodged with the Company, send to the transferee notice of the refusal.

31. The registration of transfers may be suspended at such times and for such periods as the Directors may from time to time determine, provided always that such registration shall not be suspended for more than thirty days in any year.

32. The Company shall be entitled to charge a fee not exceeding 12.5 cents on the registration of every probate, letters of administration, certificate of death or marriage, power of attorney, or other instrument.

33.     Regulations 26 and 27 shall be read subject to the provisions of Regulation 34.

*it has been amended by special resolution dated 27/1/06 see Q20*

34.     (a)   For the purposes of this Regulation, where any person becomes un-conditionally entitled to be registered as the holder of a share he and not the registered holder of such share shall be deemed to be a Member of the Company in respect of that share.

    (b)   Except as hereinafter provided, no shares in the Company shall be transferred unless and until the rights of pre-emption hereinafter conferred shall have been exhausted.

    (c)   Every Member who desires to transfer any share or shares (hereinafter called "the Vendor") shall give to the Company notice in writing of such desire (hereinafter called "transfer notice") specifying the number of shares desired to be transferred (the "said shares").   Subject as hereinafter mentioned, a transfer notice shall constitute the Company the Vendor's agent for the sale of the said shares in one or more lots at the discretion of the Directors to the Members other than the Vendor at the price to be agreed upon by the Vendor and the remaining Members of the Company, or, in case of difference or no such agreement within fourteen days from the date of the transfer notice, at the price which the auditor of the Company for the time being shall, by writing under his hand, certify to be in his opinion the fair value thereof as between a willing seller and a willing buyer.   A transfer notice may contain a provision that unless all the shares comprised therein are sold by the Company pursuant to this Regulation, none shall be so sold and any such provision shall be binding on the Company.

    (d)   If the auditor is asked to certify the fair price as aforesaid, the Company shall, as soon as it receives the auditor's certificate, furnish a certified copy thereof to the Vendor and the Vendor shall be entitled, by notice in writing given to the Company within ten days of the service upon him of the said certified copy, to cancel the Company's authority to sell the said shares.   The cost of obtaining the certificate shall be borne by the Company unless the Vendor shall give notice of cancellation as aforesaid in which case he shall bear the said cost.

14

(e)   Upon the price being fixed as aforesaid and provided the Vendor shall not give notice of cancellation as aforesaid the Company shall forthwith by notice in writing inform each Member other than the Vendor and other than Members holding employees' shares only of the number and price of the said shares and invite each such Member to apply in writing to the Company within twenty-one days of the date of dispatch of the notice (which date shall be specified therein) for such maximum number of the said shares (being all or any thereof) as he shall specify in such application.

(f)   If the said Members shall within the said period of twenty-one days apply for all or (except where the transfer notice provides otherwise) any of the said shares, the Directors shall allocate the said shares (or so many of them as shall be applied for as aforesaid) to or amongst the applicants and in case of competition pro rata (as nearly as possible) according to the number of shares in the Company (other than employees' shares) of which they are registered or unconditionally entitled to be registered as holders, provided that no applicant shall be obliged to take more than the maximum number of shares specified by him as aforesaid; and the Company shall forthwith give notice of such allocations (hereinafter called "an allocation notice") to the Vendor and to the persons to whom the shares have been allocated and shall specify in such notice the place and time (being no earlier than fourteen and not later than twenty-eight days after the date of the notice) at which the sale of the shares so allocated shall be completed.

(g)   The Vendor shall be bound to transfer the shares comprised in an allocation notice to the purchasers named therein at the time and place therein specified; and if he shall fail to do so, the chairman of the Company or some other person appointed by the Directors shall be deemed to have been appointed attorney of the Vendor with full power to execute, complete and deliver, in the name and on behalf of the Vendor, transfers of the shares to the purchasers thereof against payment of the price to the Company. On payment of the price to the Company the purchaser shall be deemed to have obtained a good quittance for such payment and on execution and delivery of the transfer the purchaser shall be entitled to insist upon his name being entered in the register of Members as the holder by transfer of the shares. The Company shall forthwith pay the price into a separate bank account in the Company's name and shall hold such price in trust for the Vendor.

(h)   During the six months following the expiry of the said period of twenty-one days referred to in paragraph (e) of this Regulation, the Vendor shall be at liberty, (subject nevertheless to the provisions of Regulation 28) to transfer to any person and at any price (not being less than the price fixed under paragraph (c) of this Regulation) any share not allocated by the Directors in an allocation notice. Provided that, if the Vendor stipulated in his transfer notice that unless all the shares comprised therein were sold pursuant to this Regulation, none should be sold, the Vendor shall not be entitled, save with the written consent of all the other Members of the Company, to sell hereunder only some of the shares comprised in his transfer notice.

(i)   Any share may be transferred by a Member to the spouse, child or remote issue or parent, brother or sister of that Member or to a company beneficially owned or controlled by such Member and any share of a deceased Member may be transferred by his personal representatives to any widow, widower, child or remote issue or parent, brother or sister of such deceased Member and shares standing in the name of the trustees of any deceased Member may be transferred upon any change of trustees to the trustees for the time being of such will; and where the Member is a body corporate any share may be transferred by such Member to its subsidiary or

15

holding company or to a company controlled by such holding company. The rights of pre-emption hereinbefore conferred in this Regulation shall not arise on the occasion of any such transfer or transfers as aforesaid and Regulation 28 shall be read subject to this paragraph.

## TRANSMISSION OF SHARES

35. In case of the death of a Member, the survivor or survivors where the deceased was a joint holder, and the legal personal representatives of the deceased where he was a sole holder, shall be the only persons recognized by the Company as having any title to his interest in the shares; but nothing herein contained shall release the estate of a deceased joint holder from any liability in respect of any share which had been jointly held by him with other persons.

36. Any person becoming entitled to a share in consequence of the death or bankruptcy of a Member may, upon such evidence being produced as may from time to time properly be required by the Directors and subject as hereinafter provided, elect either to be registered himself as holder of the share or to have some person nominated by him registered as the transferee thereof, but the Directors shall, in either case, have the same right to decline or suspend registration as they would have had in the case of a transfer of the share by that Member before his death or bankruptcy, as the case may be.

37. If the person so becoming entitled shall elect to be registered himself, he shall deliver or send to the Company a notice in writing signed by him stating that he so elects. If he shall elect to have another person registered, he shall testify his election by executing to that person a transfer of the share. All the limitations, restrictions and provisions of these Regulations relating to the right to transfer and the registration of transfers of shares shall be applicable to any such notice or transfer as aforesaid as if the death or bankruptcy of the Member had not occurred and the notice or transfer was a transfer signed by that Member.

38. A person becoming entitled to a share by reason of the death or bankruptcy of the holder shall be entitled to the same dividends and other advantages to which he would be entitled if he were the registered holder of the share, except that he shall not, before being registered as a Member in respect of the share, be entitled in respect of it to exercise any right conferred by Membership in relation to meetings of the Company.

Provided always that the Directors may at any time give notice requiring any such person to elect either to be registered himself or to transfer the share, and if the notice is not complied with within ninety days, the Directors may thereafter withhold payment of all dividends, bonuses or other moneys payable in respect of the share until the requirements of the notice have been complied with.

## FORFEITURE OF SHARES

39. If a Member fails to pay any call or installment of a call on the day appointed for payment thereof, the Directors may, at any time thereafter during such time as any part of the call or installment remains unpaid, serve a notice on him requiring payment of so much of the call or installment as is unpaid, together with any interest which may have accrued.

40. The notice shall name a further day (not earlier than the expiration of fourteen days from the date of service of the notice) on or before which the payment required by the notice is to be made, and shall state that in the event of non-payment at or before the time appointed, the shares in respect of which the call was made will be liable to be forfeited.

41. If the requirements of any such notice as aforesaid are not complied with, any share in respect of which the notice has been given may at any time thereafter, before the payment required by the notice has been made, be forfeited by a resolution of the Directors to that effect.

42. A forfeited share may be sold or otherwise disposed of on such terms and in such manner as the Directors think fit, and at any time before a sale or disposition the forfeiture may be canceled on such terms as the Directors think fit.

43. A person whose shares have been forfeited shall cease to be a Member in respect of the forfeited shares, but shall, notwithstanding, remain liable to pay to the Company all moneys which, at the date of forfeiture, were payable by him to the Company in respect of the shares, but his liability shall cease if and when the Company shall have received payment in full of all such moneys in respect of the shares.

44. A statutory declaration in writing that the declarant is a Director or the secretary of the Company, and that a share in the Company has been duly forfeited on a date stated in the declaration, shall be conclusive evidence of the facts therein stated as against all persons claiming to be entitled to the share. The Company may receive the consideration, if any, given for the share on any sale or disposition thereof and may execute a transfer of the share in favour of the person to whom the share is sold or disposed of and he shall thereupon be registered as the holder of the share, and shall not be bound to see to the application of the purchase money, if any, nor shall his title to the share be affected by any irregularity or invalidity in the proceedings in reference to the forfeiture, sale or disposal of the share.

45. The provisions of these Regulations as to forfeiture shall apply in the case of non-payment of any sum which, by the terms of issue of a share, becomes payable at a fixed time, whether on account of the nominal value of the shares or by way of premium, as if the same had been payable by virtue of a call duly made and notified.

## CONVERSION OF SHARES INTO STOCK

46. The Company may by ordinary Resolution convert any paid-up shares into stock, and reconvert any stock into paid-up shares of any denomination.

47. The holders of stock may transfer the same, or any part thereof, in the same manner, and subject to the same Regulations, as and subject to which the shares from which the stock arose might previously to conversion have been transferred, or as near thereto as circumstance admit; and the Directors may from time to time fix the minimum amount of stock transferable but so that such minimum shall not exceed the nominal amount of the shares from which the stock arose.

48. The holders of stock shall, according to the amount of stock held by them, have the same rights, privileges and advantages as regards dividends, voting at meetings of the Company and other matters as if they held the shares from which the stock arose, but no such privilege or advantage (except participation in the dividends and profits of the Company and in the assets on winding up) shall be conferred by an

17

amount of stock which would not, if existing in shares, have conferred that privilege or advantage.

49. Such of the Regulations of the Company as are applicable to paid-up shares shall apply to stock, and the words "share" and "shareholder" therein shall include "stock" and "stockholder".

## ALTERATION OF CAPITAL

it has been
amended by
special resolution
dated 24.1.06
see R20

50. The Company may from time to time by ordinary resolution increase the share capital by such sum, to be divided into shares of such amount, as the Resolution shall prescribe.

It has been
amended by
special
resolution
dated 24.1.06
see R20

51. The Company may by ordinary resolution:

(a) consolidate and divide all or any of its share capital into shares of larger amount than its existing shares;

(b) subdivide its existing shares, or any of them, into shares of smaller amount than is fixed by the memorandum of association subject, nevertheless, to the provisions of section 60 (1) (d) of the Law;

(c) cancel any shares which, at the date of the passing of the resolution, have not been taken or agreed to be taken by any person.

52. The Company may by special resolution reduce its share capital, any capital redemption reserve fund or any share premium account in any manner and with, and subject to, any incident authorised, and consent required, by law.

## GENERAL MEETINGS

53. The Company shall in each year hold a General Meeting as its Annual General Meeting in addition to any other Meetings in that year, and shall specify the Meeting as such in the notices calling it, and not more than fifteen months shall elapse between the date of one Annual General Meeting of the Company and that of the next.

Provided that so long as the Company holds its first Annual General Meeting within eighteen months of its incorporation, it need not hold it in the year of its incorporation or in the following year. The Annual General Meeting shall be held at such time and place as the Directors shall appoint.

54. All General Meetings other than Annual General Meetings shall be called Extraordinary General Meetings.

55. The Directors may, whenever they think fit, convene an Extraordinary General Meeting, and Extraordinary General Meetings shall also be convened on such requisition, or, in default, may be convened by such requisitionists, as provided by section 126 of the Law. If at any time there are not within Cyprus sufficient Directors capable of acting to form a quorum, any Director or any two Members of the Company may convene an Extraordinary General Meeting in the same manner as nearly as possible as that in which meetings may be convened by the Directors.

18

## NOTICE OF GENERAL MEETINGS

56.  An Annual General Meeting and a Meeting called for the passing of a special resolution shall be called by twenty-one days' notice in writing at the least, and a Meeting of the Company other than an Annual General Meeting or a Meeting for the passing of a special resolution shall be called by fourteen days' notice in writing at the least.  The notice shall be exclusive of the day on which it is served or deemed to be served and of the day for which it is given, and shall specify the place, the date and the hour of the meeting and, in case of special business, the general nature of that business and shall be given in manner hereinafter mentioned or in such other manner, if any, as may be prescribed by the Company in general meetings to such persons as are, under the Regulations of the Company, entitled to receive such notices from the Company.

Provided that a Meeting of the Company shall, notwithstanding that it is called by shorter notice than that specified in this Regulation, be deemed to have been duly called if it is so agreed:

(a)  in the case of a Meeting called as the Annual General Meeting, by all the Members entitled to attend and vote thereat; and

(b)  in the case of any other Meeting, by majority in number of the Members having a right to attend and vote at the Meeting, being a majority together holding not less than 95 per cent in nominal value of the shares giving that right.

57.  The accidental omission to give notice of a Meeting to, or the non-receipt of notice of a Meeting by, any person entitled to receive notice, shall not invalidate the proceedings at that Meeting.

## PROCEEDINGS AT GENERAL MEETINGS

58.  All business shall be deemed special that is transacted at an Extraordinary General Meeting, and also all that is transacted at an Annual General Meeting, with the exception of declaring a dividend, the consideration of the accounts, balance sheets and the reports of the Directors and auditors, the election of Directors in the place of those retiring and the appointment of, and the fixing of the remuneration of, the auditors.

59.  No business shall be transacted at any General Meeting unless a quorum of Members is present at the time when the Meeting proceeds to business; save as herein otherwise provided, two Members present in person or by proxy shall be a quorum. At all times when the Company has one and only Member, one Member present in person or by proxy shall be a quorum.

60.  If within half an hour from the time appointed for the Meeting a quorum is not present, the Meeting, if convened upon the requisition of Members, shall be dissolved; in any other case it shall stand adjourned to the same day in the next week, at the same time and place or to such other day and at such other time and place as the Directors may determine, and if at the adjourned Meeting a quorum is not present within half an hour from the time appointed for the Meeting, the Members present shall be a quorum.

61. The chairman, if any, of the Board of Directors shall preside as chairman at every General Meeting of the Company, or if there is no such chairman, or if he shall not be present within fifteen minutes after the time appointed for the holding of the Meeting or is unwilling to act, the Directors present shall elect one of their number to be chairman of the Meeting.

62. If at any Meeting no Director is willing to act as chairman or if no Director is present within fifteen minutes after the time appointed for holding the Meeting, the Members present shall choose one of their number to be chairman of the Meeting.

63. The chairman may, with the consent of any Meeting at which a quorum is present (and shall if so directed by the Meeting), adjourn the Meeting from time to time and from place to place, but no business shall be transacted at any adjourned Meeting other than the business left unfinished at the Meeting from which the adjournment took place. When a Meeting is adjourned for thirty days or more, notice of the adjourned Meeting shall be given as in the case of an original Meeting. Save as aforesaid it shall not be necessary to give any notice of an adjournment or of the business to be transacted at an adjourned Meeting.

64. At any General Meeting any resolution put to the vote of the Meeting shall be decided on a show of hands unless a poll is (before or on the declaration of the result of the show of hands) demanded:

(a) by the chairman; or

(b) by at least two Members present in person or by proxy; or

(c) by any Member or Members present in person or by proxy and representing not less than one-tenth of the total voting rights of all the Members having the right to vote at the Meeting; or

(d) by a Member or Members holding shares in the Company conferring a right to vote at the Meeting being shares on which an aggregate sum has been paid up equal to not less than one-tenth of the total sum paid up on all the shares conferring that right.

Unless a poll be so demanded, a declaration by the chairman that a resolution has on a show of hands been carried or carried unanimously, or by a particular majority, or lost and an entry to that effect in the book containing the minutes of the proceedings of the Company shall be conclusive evidence of the fact without proof of the number or proportion of the votes recorded in favour of or against such resolution.

The demand for a poll may be withdrawn.

65. Except as provided in Regulation 68, if a poll is duly demanded, it shall be taken in such manner as the chairman directs, and the result of the poll shall be deemed to be the resolution of the Meeting at which the poll was demanded.

66. In the case of an equality of votes, whether on a show of hands or on a poll, the chairman of the Meeting shall not have a casting vote.

67. A poll demanded on the election of a chairman or on a question of adjournment of the Meeting shall be taken forthwith. A poll demanded on any other question shall be taken at such time as the chairman of the Meeting directs, and any business other than upon which a poll has been demanded may be proceeded with, pending the taking of the poll.

## VOTES OF MEMBERS

68. Subject to any rights or restrictions for the time being attached to any class or classes of shares, on a show of hands every Member present in person shall have one vote, and on a poll every Member shall have one vote for each share of which he is the holder.

69. In the case of joint holders the vote of the senior who tenders a vote, whether in person or by proxy, shall be accepted to the exclusion of the votes of the other joint holders; and for this purpose seniority shall be determined by the order in which the names stand in the register of Members.

70. A Member of unsound mind, or in respect of whom an order has been made by any Court having jurisdiction in lunacy, may vote, whether on a show of hands or on a poll, by the administrator of his property, his committee, receiver, curator bonis, or other person in the nature of an administrator, committee, receiver or curator bonis appointed by that Court, and any such administrator, committee, receiver, curator bonis or other person may, on a poll, vote by proxy.

71. No Member shall be entitled to vote at any General Meeting unless all calls or other sums presently payable by him in respect of shares in the Company have been paid.

72. No objection shall be raised to the qualification of any voter except at the Meeting or adjourned Meeting at which the vote objected to is given or tendered and every vote not disallowed at such Meeting shall be valid for all purposes. Any such objection made in due time shall be referred to the chairman of the Meeting whose decision shall be final and conclusive.

73. On a poll votes may be given either personally or by proxy.

74. The instrument appointing a proxy shall be in writing under the hand of the appointer or of his attorney duly authorised in writing, or, if the appointer is a corporation, either under seal or under the hand of an officer or attorney duly authorised. A proxy need not be a Member of the Company.

75. The instrument appointing a proxy and the power of attorney or other authority, if any, under which it is signed or a notarially certified copy of that power or authority shall be deposited at the registered office of the Company or at such other place within Cyprus as is specified for that purpose in the notice convening the Meeting, at any time before the time for holding the Meeting or adjourned Meeting, at which the person named in the instrument proposes to vote, or, in the case of a poll, at any time before the time appointed for the taking of the poll, and in default the instrument of proxy shall not be treated as valid.

21

76.  An instrument appointing a proxy shall be in the following form or a form as near thereto as circumstances admit-

> "      (Name of the Company)              Limited

> I/We                  , of

being a Member/Members of the above-named Company, hereby appoint, ,      , of      ,

or failing him                  of          ,

as my/our proxy to vote for me/us or on my/our behalf at the (Annual or Extraordinary, as the case may be) General Meeting of the Company, to be held on the    day of        ,20  , and at any adjournment thereof.

> Signed this  day of        , 20    "

77.  Where it is desired to afford Members an opportunity of voting for or against a resolution the instrument appointing a proxy shall be in the following form or a form as near thereto as circumstances admit-

> "      (Name of the Company)              Limited.

> I/We,                  , of          .

being a Member/Members of the above-named Company, hereby appoint ,      , of          ,

or failing him                  of          ,

as my/our proxy to vote for me/us or on my/our behalf at the (Annual or Extraordinary, as the case may be) General Meeting of the Company, to be held on the    day of        ,20  , and at any adjournment thereof.

> Signed this  day of        ,20

> This form is to be used in favour of/* against the resolution.  Unless otherwise instructed, the proxy will vote as he thinks fit.

*Strike out whichever is not desired."

78.  The instrument appointing a proxy shall be deemed to confer authority to demand or join in demanding a poll.

79.  A vote given in accordance with the terms of an instrument of proxy shall be valid notwithstanding the previous death or insanity of the principal or revocation of the proxy or of the authority under which the proxy was executed or the transfer of the share in respect of which the proxy is given, provided that no intimation in writing of such death, insanity, revocation or transfer as aforesaid shall have been received by the Company at its office before the commencement of the Meeting or adjourned Meeting at which the proxy is used.

22

80. Subject to the provisions of the Law, a resolution in writing signed or approved by letter, email or facsimile by each Member for the time being entitled to receive notice of and to attend and vote at General Meetings (or being corporations by their duly authorised representatives) shall be as valid and effective as if the same had been passed at a General Meeting of the Company duly convened and held. Any such resolution may consist of several documents in the like form each signed by one or more of the Members or their attorneys, and signature in the case of a corporate body which is a Member shall be sufficient if made by a director or other authorised officer thereof or its duly appointed attorney.

## CORPORATIONS ACTING BY REPRESENTATIVES AT MEETINGS

81. Any corporation which is a Member of the Company may by resolution of its directors or other governing body authorise such person as it thinks fit to act as its representative at any Meeting of the Company or of any class of Members of the Company, and the person so authorised shall be entitled to exercise the same powers on behalf of the corporation which he represents, as that corporation could exercise if it were an individual Member of the Company.

## DIRECTORS

82. Unless and until otherwise determined by the Company in General Meeting there shall be no minimum or maximum number of Directors. The first Directors of the Company shall be appointed in writing by the subscribers to the memorandum of association or a majority of them and it shall not be necessary to hold any meeting for that purpose.

83. The remuneration of the Directors shall from time to time be determined by the Company in General Meeting. Such remuneration shall be deemed to accrue from day to day. The Directors may also be paid all traveling, hotel and other expenses properly incurred by them in attending and returning from meetings of the Directors or any committee of the Directors or General Meetings of the Company or in connection with the business of the Company.

84. The shareholding qualification for Directors may be fixed by the Company in General Meeting, and unless and until so fixed no qualification shall be required.

85. A Director of the Company may be or become a director or other officer of, or otherwise interested in, any company promoted by the Company or in which the Company may be interested as a shareholder or otherwise, and no such Director shall be accountable to the Company for any remuneration or other benefits received by him as a director or officer of, or from his interest in, such other company unless the Company otherwise directs.

## BORROWING POWERS

86. The Directors may exercise all the powers of the Company to borrow or raise money without limitation or to guarantee and to mortgage, pledge, assign or otherwise charge its undertaking, property, assets, rights, choses in action and book debts, receivables, revenues and uncalled capital or any part thereof and to issue and create debentures, debenture stock, mortgages, pledges, charges and other securities as security for any debt, liability or obligation of the Company or of any third party.

It has been amended by special resolution dated 30/11/2006 see P20

23

## POWERS AND DUTIES OF DIRECTORS

there been
amended by
Special
resolution
dated articles
see Reso

87. The business of the Company shall be managed by the Directors, who may pay all expenses incurred in promoting and registering the Company, and may exercise all such powers of the Company as are not, by the Law or by these Regulations, required to be exercised by the Company in General Meeting, subject, nevertheless to any of these Regulations, to the provisions of the Law and to such Regulations, being not inconsistent with the aforesaid Regulations or provisions as may be prescribed by the Company in General Meeting. But no Regulation made by the Company in General Meeting shall invalidate any prior act of the Directors which would have been valid if that Regulation had not been made.

88. The Directors may from time to time and at any time appoint any company, firm or person or body or persons, whether nominated directly or indirectly by the Directors, to be the authorised representative or attorney of the Company for such purposes and with such powers, authorities and discretions (not exceeding those vested in or exercisable by the Directors under these Regulations) and for such period and subject to such conditions as they may think fit, and any such authorisation or power of attorney may contain such provisions for the protection and convenience of persons dealing with any such authorised representative or attorney as the Directors may think fit and may also authorise any such authorised representative or attorney to delegate all or any of the powers, authorities and discretions vested in him.

89. The Company may exercise the powers conferred by section 36 of the Law with regard to having an official seal for use abroad, and such powers shall be vested in the Directors.

90. The Company may exercise the powers conferred upon the Company by sections 114 to 117 (both inclusive) of the Law with regard to the keeping of a dominion register, and the Directors may (subject to the provisions of those sections) make and vary such Regulations as they may think fit respecting the keeping of any such register.

91.    (1) A Director who is in any way, whether directly or indirectly, interested in a contract or proposed contract or employment with the Company shall declare the nature of his interest at a meeting of the Directors in accordance with section 191 of the Law.

(2)    A Director may vote in respect of any contract or proposed contract or arrangement notwithstanding that he may be interested therein and if he does so his vote shall be counted and he may be counted in the quorum at any meeting of the Directors at which any such contract or proposed contract or arrangement shall come before the meeting for consideration.

(3)    A Director may hold any other office or place of profit under the Company (other than the office of auditor) in conjunction with his office of Director for such period and on such terms (as to remuneration and otherwise) as the Directors may determine and no Director or intending Director shall be disqualified by his office from contracting with the Company either with regard to his tenure of any such other office or place of profit or as vendor, purchaser or otherwise, nor shall any such contract, or any contract or arrangement entered into by or on behalf of the Company in which any Director is in any way interested, be liable to be avoided, nor shall any Director so contracting or being so interested be liable to account to the Company for

any profit realised by any such contract or arrangement by reason of such Director holding that office or of the fiduciary relation thereby established.

(4) Any Director may act by himself or his firm in a professional capacity for the Company, and he or his firm shall be entitled to remuneration for professional services as if he were not a Director; provided that nothing herein contained shall authorise a Director or his firm to act as auditor of the Company.

92. All cheques, promissory notes, drafts, bills of exchange, and other negotiable instruments, and all receipts for moneys paid to the Company, shall be signed, drawn, accepted, endorsed, or otherwise executed, as the case may be, in such manner as the Directors shall from time to time by resolution determine.

93.   The Directors shall cause minutes to be made in books provided for the purpose:-

(a) of all appointments of officers made by the Directors;

(b) of the names of the Directors present at each meeting of the Directors and of any committee of the Directors;

(c) of all resolutions and proceedings at all meetings of the Company, and of the Directors, and of committees of Directors.

## PENSIONS

94.  The Directors may grant retirement pensions or annuities or other gratuities or allowances, including allowances on death, to any person or persons in respect of services rendered by him or them to the Company whether as managing Directors or in any other office or employment under the Company or indirectly as officers or employees of any subsidiary, associated or allied company of the Company, notwithstanding that he or they may be or may have been Directors of the Company and the Company may make payments towards insurance, trusts, schemes or funds for such purposes in respect of such person or persons and may include rights in respect of such pensions, annuities and allowances in the terms of engagement of any such person or persons.

## DISQUALIFICATION OF DIRECTORS

95. The office of Director shall be vacated if the Director:-

(a) ceases to be a Director by virtue of section 176 of the Law; or

(b) becomes bankrupt or makes any arrangement or composition with his creditors generally; or

(c) becomes prohibited from being a director by reason of any order made under section 180 of the Law; or

(d) becomes of unsound mind; or

(e) resigns his office by notice in writing to the Company.

25

## APPOINTMENT OF ADDITIONAL DIRECTORS
## AND REMOVAL OF DIRECTORS

96.  The Directors shall have power at any time, and from time to time, to appoint any person to be a Director, either to fill a casual vacancy or as an addition to the existing Directors, but so that the total number of Directors shall not at any time exceed the number fixed in accordance with these Regulations.  Any Director so appointed shall hold office only until the next following Annual General Meeting, and shall then be eligible for re-election.

97.  The Company may by ordinary resolution, of which special notice has been given in accordance with section 136 of the Law, remove any Director before the expiration of his period of office notwithstanding anything in these Regulations or in any agreement between the Company and such Director.  Such removal shall be without prejudice to any claim such Director may have for damages for breach of any contract of service between him and the Company.

98.  At any time, and from time to time, the Company may (without prejudice to the powers of the Directors under Regulation 96) by ordinary resolution appoint any person as Director and determine the period for which such person is to hold office.

## PROCEEDINGS OF DIRECTORS

99.  The Directors may meet together for the despatch of business, adjourn, and otherwise regulate their meetings as they think fit and questions arising at any meeting shall be decided by a simple majority of votes.  In case of equality of votes the chairman shall not have a second or casting voteA Director may, and the secretary on the requisition of a Director shall, at any time summon a meeting of the Directors.  It shall be necessary to give at least a 96 hour notice of a meeting of Directors to any Director for the time being absent from Cyprus who has supplied to the Company a registered address situated outside Cyprus.  A meeting may be held by telephone or other means whereby all persons present may at the same time hear and be heard by everybody else present and persons who participate in this way shall be considered present at the meeting.  In such case the meeting shall be deemed to be held where the secretary of the meeting is located.  All board and Committee meetings shall take place in Cyprus, where the management and control of the company shall rest.

100.  The quorum necessary for the transaction of the business of the Directors may be fixed by the Directors, and unless so fixed shall be one Director or his alternate.

101.  The continuing Directors may act notwithstanding any vacancy in their body, but, if and so long as their number is reduced below the number fixed by or pursuant to the Regulations of the Company as the necessary quorum of Directors, the continuing Directors or Director may act for the purpose of increasing the number of Directors to that number, or of summoning a General Meeting of the Company, but for no other purpose.

102.  The Directors may elect a chairman of their meeting and determine the period for which he is to hold office; but if no such chairman is elected, or if at any meeting the chairman is not present within five minutes after the time appointed for holding the same, the Directors present may choose one of their number to be chairman of the meeting.

103.  The Directors may delegate any of their powers to a committee or committees consisting of such Member or Members of their body as they think fit; any committee so formed shall in the exercise of the powers so delegated conform to any Regulations that may be imposed on it by the Directors, as to its powers, constitution, proceedings, quorum or otherwise.

104.  A committee may elect a chairman of its meetings; if no such chairman is elected, or if at any meeting the chairman is not present within five minutes after the time appointed for holding the same, the Members present may choose one of their number to be chairman of the meeting.

105.  Subject to any Regulations imposed on it by the Directors, a committee may meet and adjourn as it thinks proper and questions arising at any meeting shall be determined by a majority of votes of the Members present.

106.  All acts done by any meeting of the Directors or of a committee of Directors or by any person acting as a Director shall, notwithstanding that it be afterwards discovered that there was some defect in the appointment of any such Director or person acting as aforesaid, or that they or any of them were disqualified, be as valid as if every such person had been duly appointed and was qualified to be a Director.

107. A resolution in writing signed or approved by letter, email or facsimile by each Director or his alternate shall be as valid and effectual as if it had been passed at a meeting of the Directors or a committee duly convened and held and when signed may consist of several documents each signed by one or more of the persons aforesaid.

## ALTERNATE DIRECTORS

108.    (a) Each Director shall have power from time to time to nominate another Director or any person, not being a Director, to act as his alternate Director and at his discretion to remove such alternate Director.

(b)  An alternate Director shall (except as regards power to appoint an alternate Director and remuneration) be subject in all respects to the terms and conditions existing with reference to the other Directors, and shall be entitled to receive notices of all meetings of the Directors and to attend, speak and vote at any such meeting at which his appointor is not present.

(c)  One person may act as alternate Director to more than one Director and while he is so acting shall be entitled to a separate vote for each Director he is representing and, if he is himself a Director, his vote or votes as an alternate Director shall be in addition to his own vote.

(d)  Any appointment or removal of an alternate Director may be made by letter, email or facsimile or in any other manner approved by the Directors.  Any email or facsimile shall be confirmed as soon as possible by letter but may be acted upon by the Company meanwhile.

(e)  If a Director making any such appointment as aforesaid shall cease to be a Director otherwise than by reason of vacating his office at a meeting of the Company at which he is re-elected, the person appointed by him shall thereupon cease to have any power or authority to act as an alternate Director.

(f)  An alternate Director shall not be taken into account in reckoning the minimum or maximum number of Directors allowed for the time being but he shall be counted for the purpose of reckoning whether a quorum is present at any meeting of the Directors attended by him at which he is entitled to vote.

## MANAGING DIRECTOR

109.  The Directors may from time to time appoint one or more of their body to the office of managing Director for such period and on such terms as they think fit, and, subject to the terms of any agreement entered into in any particular case, may revoke such appointment.  A Director so appointed shall not, whilst holding that office, be subject to retirement by rotation or be taken into account in determining the rotation of retirement of Directors, but his appointment shall be automatically determined if he ceases from any cause to be a Director.

110.  A managing Director shall receive such remuneration (whether by way of salary, commission or participation in profits, or partly in one way and partly in another) as the Directors may determine.

111.  The Directors may entrust to and confer upon a managing Director any of the powers exercisable by them upon such terms and conditions and with such restrictions as they may think fit, and either collaterally with or to the exclusion of their own powers and may from time to time revoke, withdraw, alter or vary all or any of such powers.

## SECRETARY

112.  The secretary shall be appointed by the Directors for such term, at such remuneration and upon such conditions as they may think fit; and any secretary so appointed may be removed by them.

113.  No person shall be appointed or hold office as secretary who is:-

(a)  the sole Director of the Company; or

(b)  a corporation the sole director of which is the sole Director of the Company; or

(c)  the sole director of a corporation which is the sole Director of the Company.

These restrictions shall not apply at all times when the Company has one and only Member.

114.  A provision of the Law or these Regulations requiring or authorising a thing to be done by or to a Director and the secretary shall not be satisfied by its being done by or to the same person acting both as Director and as, or in place of, the secretary. The present Regulation shall not apply at all times when the Company has one and only Member.

## THE SEAL

115.  The Directors shall provide for the safe custody of the seal, which shall only be used by the authority of the Directors or of a committee of the Directors authorised by the Directors in that behalf, and every instrument to which the seal shall be affixed shall be signed by a Director or his alternate and shall be countersigned by

the Secretary or by a second Director or his alternate or by some other person appointed by the Directors for the purpose.

## DIVIDENDS AND RESERVE

*be hxou or*
*ded by*
*spal resolution*
*of rules*
*see R20*

116. The Company in General Meeting may declare dividends, but no dividend shall exceed the amount recommended by the Directors.

117. The Directors may from time to time pay to the Members such interim dividends as appear to the Directors to be justified by the profits of the Company.

118. No dividend shall be paid otherwise than out of profits.

119. The Directors may, before recommending any dividend, set aside out of the profits of the Company such sums as they think proper as a reserve or reserves which shall, at the discretion of the Directors, be applicable for any purpose to which the profits of the Company may be properly applied, and pending such application may, at the like discretion, either be employed in the business of the Company or be invested in such investments (other than shares of the Company) as the Directors may from time to time think fit. The Directors may also without placing the same to the reserve carry forward any profits which they may think prudent not to divide.

120. Subject to the rights of persons, if any, entitled to shares with special rights as to dividends, all dividends shall be declared and paid according to the amounts paid or credited as paid on the shares in respect whereof the dividend is paid, but not amount paid or credited as paid on a share in advance of calls shall be treated for the purposes of this Regulation as paid on the share. All dividends shall be apportioned and paid proportionately to the amounts paid or credited as paid on the shares during any portion or portions of the period in respect of which the dividend is paid; but if any share is issued on terms providing that it shall rank for dividend as from a particular date such share shall rank for dividend accordingly.

121. The Directors may deduct from any dividend payable to any Member all sums of money (if any) presently payable by him to the Company on account of calls or otherwise in relation to the shares of the Company.

122. Any General Meeting declaring a dividend or bonus may direct payment of such dividend or bonus wholly or partly by the distribution of specific assets and in particular of paid up shares, debentures or debenture stock of any other Company or in any one or more of such ways, and the Directors shall give effect to such resolution, and where any difficulty arises in regard to such distribution, the Directors may settle the same as they think expedient, and in particular may issue fractional certificates and fix the value for distribution of such specific assets or any part thereof and may determine that cash payments shall be made to any Members upon the footing of the value so fixed in order to adjust the rights of all parties, and may vest any such specific assets in trustees as may seem expedient to the Directors.

123. Any dividend, interest or other moneys payable in cash in respect of shares may be paid by cheque or warrant sent through the post directed to the registered address of the holder or, in the case of joint holders, to the registered address of that one of the joint holders who is first named in the register of Members or to such person and to such address as the holder or joint holders may in writing direct. Every such cheque or warrant shall be made payable to the order of the person to whom it is sent. Any one of two or more joint holders may give effectual receipts for any

29

dividends, bonuses or other moneys payable in respect of the shares held by them as joint holders.

124. No dividend shall bear interest against the Company.

## ACCOUNTS

125. The Directors shall cause proper books of account to be kept with respect to:

(a) all sums of money received and expended by the Company and the matters in respect of which the receipt and expenditure takes place;

(b) all sales and purchases of goods by the Company; and

(c) the assets and liabilities of the Company.

Proper books shall not be deemed to be kept if there are not kept such books of account as are necessary to give a true and fair view of the state of the Company's affairs and to explain its transactions.

126. The books of account shall be kept at the registered office of the Company, or, subject to section 141(3) of the Law, at such other place or places as the Directors think fit, and shall always be open to the inspection of the Directors.

127. The Directors shall from time to time determine whether and to what extent and at what times and places and under what conditions or Regulations the accounts and books of the Company or any of them shall be open to the inspection of Members not being Directors and no Member (not being a Director) shall have any right of inspecting any account or book or document of the Company except as conferred by statute or authorised by the Directors or by the Company in General Meeting.

128. The Directors shall from time to time, in accordance with sections 142, 144 and 151 of the Law, cause to be prepared and to be laid before the Company in General Meeting such profit and loss accounts, balance sheets, group accounts (if any) and reports as are referred to in those sections.

129. A copy of every balance sheet (including every document required by law to be annexed thereto) which is to be laid before the Company in General Meeting, together with a copy of the auditors' report shall, not less than twenty-one days before the date of the meeting, be sent to every Member of, and every holder of debentures of the Company and to every person registered under Regulation 37. Provided that this Regulation shall not require a copy of those documents to be sent to any person of whose address the Company is not aware or to more than one of the joint holders of any shares or debentures.

## CAPITALISATION OF PROFITS

130. The Company in General Meeting may upon the recommendation of the Directors resolve that it is desirable to capitalise any part of the amount for the time being standing to the credit of any of the Company's reserve accounts or to the credit of the profit and loss account or otherwise available for distribution, and accordingly that such sum be set free for distribution, amongst the Members who would have been entitled thereto if distributed by way of dividend and in the same proportions on condition that the same be not paid in cash but be applied either in or towards paying

up any amounts for the time being unpaid on any shares held by such Members respectively or paying up in full unissued shares or debentures of the Company to be allotted, distributed and credited as fully paid up to and amongst such Members in the proportions aforesaid, or partly in the one way and partly in the other, and the Directors shall give effect to such resolution:

Provided that a share premium account and a capital redemption reserve fund may, for the purposes of this Regulation, only be applied in the paying up of unissued shares to be issued to Members of the Company as fully paid bonus shares.

131. Whenever such a resolution as aforesaid shall have been passed, the Directors shall make all appropriations and applications of the undivided profits resolved to be capitalised thereby, and all allotments and issues of fully paid up shares or debentures, if any, and generally shall do all acts and things required to give effect thereto, with full power to the Directors to make such provisions by the issue of fractional certificates or by payment in cash or otherwise as they think fit for the case of shares or debentures becoming distributable in fractions and also to authorise any person to enter on behalf of all the Members entitled thereto into an agreement with the Company providing for the allotment to them respectively, credited as fully paid up, of any further shares or debentures to which they may be entitled upon such capitalisation, or (as the case may require) for the payment up by the Company on their behalf, by the application thereto of their respective proportions of the profits resolved to be capitalised, of the amounts or any part of the amounts remaining unpaid on their existing shares, and any agreement made under such authority shall be effective and binding on all such Members.

## AUDIT

132. Auditors shall be appointed and their duties regulated in accordance with sections 153 to 156 (both inclusive) of the Law.

## NOTICES

133. A notice may be given by the Company to any Member either personally or by sending it by post, email or facsimile to him or to his registered address. Where a notice is sent by post, service of the notice shall be deemed to be effected, provided that it has been properly mailed, addressed, and posted, at the expiration of 24 hours after same is posted. Where a notice is sent by email or facsimile it shall be deemed to be effected as soon as it is sent, provided there will be the relevant transmission confirmation.

134. A notice may be given by the Company to the joint holders of a share by giving the notice to the joint holder first named in the register of Members in respect of the share.

135. A notice may be given by the Company to the persons entitled to a share in consequence of the death or bankruptcy of a Member by sending it through the post in a prepaid letter addressed to them by name, or by the title of representative of the deceased, or trustee of the bankrupt, or by any like descriptions, at the address, if any, supplied for the purpose by the persons claiming to be so entitled, or (until such an address has been so supplied) by giving the notice in any manner in which the same might have been given if the death or bankruptcy had not occurred.

136. Notice of every General Meeting shall be given in any manner herein-before authorised to:

(a) every Member except those Members who have not supplied to the Company a registered address for the giving of notices to them;

(b) every person upon whom the ownership of a share devolves by reason of his being a legal personal representative or a trustee in bankruptcy of a Member where the Member but for his death or bankruptcy would be entitled to receive notice of the meeting; and

(c) the auditor for the time being of the Company.

No other person shall be entitled to receive notices of General Meetings.

## WINDING UP

137. If the Company shall be wound up the liquidator may, with the sanction of an extraordinary resolution of the Company and any other sanction required by the Law, divide amongst the Members in specie or kind the whole or any part of the assets of the Company (whether they shall consist of property of the same kind or not) and may for such purpose set such value as he deems fair upon any property to be divided as aforesaid and may determine how such division shall be carried out as between the Members or different classes of Members. The liquidator may, with the like sanction, vest the whole or any part of such assets in trustees upon such trusts for the benefit of the contributories as the liquidator, with the like sanction, shall think fit, but so that no Member shall be compelled to accept any shares or other securities whereon there is any liability.

## INDEMNITY

Addition of a
new regulation
138(A) by special
resolution
dated 22/1/06
see R20

138. Every Director or other officer for the time being of the Company shall be indemnified out of the assets of the Company against any losses or liabilities which he may sustain or incur in or about the execution of his duties including liability incurred by him in defending any proceedings whether civil or criminal in which judgment is given in his favour or in which he is acquitted or in connection with any application under section 383 of the Law in which relief is granted to him by the Court and no Director or officer of the Company shall be liable for any loss, damage or misfortune which may happen to or be incurred by the Company in the execution of the duties of his office or in relation thereto. But this clause shall only have effect insofar as its provisions are not avoided by section 197 of the Law.

Addition of new
regulations
139 & 40
by special
resolution
dated 22/1/06
see R20

32

NAMES, ADDRESSES AND DESCRIPTION OF SUBSCRIBERS

ABACUS (CYPRUS) LIMITED

Sophia Ioannou

Limited Liability Company
Julia House
1st floor
3 Themistocles Dervis Street
Nicosia – Cyprus
Registration No: 14002

Dated this 2nd day of ........./.1.!......... 2003.

Witness to the above signatures: Xenia Georgiou

Dali

9 El. Venizelou Street

Private employer

I confirm that I settled the
above Memorandum and Articles of
Association of the Company

Sgd ...............................................
Elena Nicolaides
Advocate.
Sofouli 29
Chanteclair, Bl. 406
PO Box 24314
Nicosia 1703

specenglish

33

# Alpren Limited

Following a written decision by all members of the above company dated 27 January 2006, in accordance with paragraph 80 of the company's articles of association the following resolution was approved:

## SPECIAL RESOLUTION

1.      **THAT** the Articles of Association of the Company be amended as follows:

A.      By the addition of the following definition in Regulation 1 immediately after the definition of "the secretary":

" Loan Agreement" means a certain facility agreement dated on or about 31 January 2006 as amended varied or supplemented from time to time made between Credit Suisse, London Branch (the "Lender"), Alfa Telecom Limited (the "'Guarantor") and the Company and Alpren Limited (the "Borrowers") whereby the Lender has agreed to make available to the Borrowers n loan facility in the amount of up to U$D450.000.000."

B.      By the addition of the following Regulation 138A:

" 138A.    Notwithstanding any other provision in the present Regulation, the Company shall not:

    (a)     Issue or allot or grunt any options over or in respect of, any new shares or debentures or any other securities of any nature in the capital of the Company or do any act would could dilute or affect the investment or equity holding of any Member in the Company except as expressly permitted under the Loan Agreement.

    (b)     Recognise, register or accept any Member assigning, transferring or selling or disposing or pledging or encumbering in any way its shareholding interest in the share capital of the Company, other than pursuant to any security interest granted in connection with or under the Loan Agreement.

    (c)     Incur any Financial Indebtedness (as defined in the Loan Agreement) except as expressly permitted under the Loan Agreement.

    (d)     Declare or pay any dividend and/or distribution under or in respect of any of the shares in share capital of the Company except as expressly permitted pursuant to the Loan Agreement.

C.      By the addition of a new Regulation. 28A:

> **"Notwithstanding anything contained in these Regulations, the directors shall not decline to register any transfer of shares, nor may they suspend registration thereof where such transfer is executed by any bank or institution to whom such shares have been charged or pledged by way of security, or by any nominee of such bank or institution, pursuant to the power of sale under such security, and a certificate by any official of such bank or institution that the shares were so charged or pledged and the transfer was so executed shall be conclusive evidence of such facts".**

D.      By the addition of the following sentence at the beginning of Regulation 5:

> **"Subject to the provisions of Regulation 138A..."**

E.      By the addition of the following sentence at the beginning of Regulation 6:

> **"Subject to the provisions of Regulation I38A..."**

F.      By the addition of the following sentence at the beginning of Regulation 27:

> **"Subject to the provisions of Regulation 138A..."**

G.      By the addition of the following sentence at the beginning of Regulation 29:

> **"Subject to the provisions of Regulation 138A..."**

H.      By the addition of the following sentence at the beginning of Regulation 34:

> **"Subject to the provisions of Regulation 138A..."**

I.      By the addition of the following sentence at the beginning of .Regulation 50:

> **"Subject to the provisions of Regulation 138A..."**

J.      By the addition of the following sentence at the beginning of Regulation 51:

> **"Subject to the provisions of Regulation 138A..."**

K.      By the addition of the following sentence at the beginning of Regulation 86:

> **"Subject to the provisions of Regulation 138A..."**

L.        By the addition of the following sentence at the beginning of Regulation 87:

>  **"Subject to the provisions of Regulation 138A..."**

M.        By the addition of the following sentence at the beginning of Regulation 116:

>  **"Subject to the provisions of Regulation 138A..."**

N.        By the insertion of a new Regulation 139:

>  "Notwithstanding anything contained in the Memorandum of Association of the Company the sole subject of activity of the Company shall be the holding of participants interests in Storm LLC a limited liability company registered in Ukraine as company number 23163325 ("**Storm**"), the exercise of any and all rights and obligations associated with or related to such shareholding and the entry into documents in connection with borrowings from Credit Suisse, London Branch and the lenders from time to time under the Loan Agreement. The Company shall not engage into or carry out. any other business activity of any nature whatsoever."

O.        By the insertion of a new Regulation 140:

>  "The Company shall at all times exercise all rights it has as a participant in Storm solely In compliance with its obligations pursuant to its borrowing from Credit Suisse, London Branch and the lenders from time to time under the Loan Agreement."

**CertifiedTrue copy**

Sophia Ioannou
For Abacus Secretarial Limited
Secretary

EXHIBIT D

THE COMPANIES LAW, CAP. 113

PRIVATE COMPANY LIMITED

BY SHARES

MEMORANDUM

AND

ARTICLES OF ASSOCIATION

OF

# HARDLAKE LIMITED

Incorporated on the ............day of......................... 2005

Certificate No. ...........

THE COMPANIES LAW (CAP. 113)

PRIVATE COMPANY LIMITED BY SHARES

MEMORANDUM OF ASSOCIATION

# HARDLAKE LIMITED

1. The name of the Company is:-
   **HARDLAKE LIMITED**
2. The registered office of the Company will be situated in Cyprus.
3. The objects for which the Company is established are:-

(1) To carry on either alone or jointly with others anywhere in the world the business of an investment company (including that of an invetment trust company) and to acquire by original subscription, contract, purchase, exchange or otherwise and either in the name of the company or in that of any nominee and to possess, exploit, charge, exchange, hold, sell or otherwise in any other manner alienate on any terms, any shares, stocks, debentures, debenture stock, bonds, notes, obligation and securities whatsoever issued or guaranteed by any government, sovereign ruler, natural or legal person, partnership, public body or authority supreme, dependent, municipal, local, or otherwise wherever situate and whether they are fully paid or not and subject to any terms that may be deemed proper, and, to acquire, possess, exploit, sell or otherwise alienate or charge, on any terms which may be deemed proper, the whole or part of the interest in any business or undertaking, any letters patent, brevets d' inventions, concessions, designs, trade marks, copyrights secret processes, licences, inventions, rights and privileges subject to royalty or otherwise whether on an exclusive or non-exclusive or limited basis or otherwise.

(2) To carry out either alone or jointly with others anywhere in the world work or business relating to real estate in general, developing, buying, selling, leasing or subleasing and financing and to acquire by donation, to convey or either through barter of otherwise, or to own, auction and exploit any real estate as well as any business relating to the construction, erection, maintenance, decoration, operation, management and administration of either real estate belonging to the company or others, houses, flats, offices, blocks, hotels, tourist buildings and accommodation, shops, workshops, water reservoirs, roads, buildings or other works of every description and to trade, sell or hire purchase, lease, rent, convey property, mortgage, grant licences or in any way provide all or part of these and carry out all types of land parcelling works, construction and the business of building contractors, mechanics, architects, general managers and all types of construction work.

(3) To carry on either alone or jointly with others anywhere in the world (and whether in a "free zone area", bonded area or elsewhere), the business of manufacturers, processors, dealers, storers, warehousemen, removers, packers, wholesalers, retailers, importers, exporters, suppliers, distributors, consignees, buyers, sellers, resellers of any kind of goods materials merchandises or things of any nature, as well as the business of merchants in general, carriers by any means of transportation, travel or insurance agents, agents on commission or otherwise, forwarding agents, charterers, estate agents and agents in general and to carry on either alone or jointly with others anywhere in the world the business of general and specialised consultants and managers.

3

(4) To engage, hire and train professional, clerical, manual technical and other staff and workers or the services of all or any of them and in any way and manner acquire, possess, manufacture or assemble any property of any kind or description whatsoever (including any rights over or in connection with such property) and to allocate and make available the aforesaid personnel or services or make the use of such property available on hire purchase, sale, exchange or in any other manner whatsoever, to those requiring or requesting same or who have need of the same or their use and otherwise to utilise same for the benefit or advantage of the Company; to provide or procure the provision by others of every and any service, need, want or requirement of any business nature required by any person, firm or company in or in connection with any business carried on by them.

(5)  To carry on any other business or activity which may seem to the Directors capable of being conveniently or advantageously carried on or done in connection with any of the above objects or calculated directly or indirectly to enhance the value of or render  more profitable any of the Company's business property or rights.

(6)  To purchase, obtain by way of gift, take on lease or sub-lease or in exchange, or otherwise acquire or possess and hold for any estate or interest any lands, buildings, easements, rights, privileges, concessions, permits, licences, stock-in-trade, and movable and immovable property of any kind and description (whether mortgaged charged or not) necessary or convenient for the purposes of or in connection with the Company's business or any branch or department thereof or which may enhance the value of any other property of the Company.

(7) To erect, maintain, work, manage, construct, reconstruct, alter, enlarge, repair, improve, adapt, furnish, decorate, control, pull down, replace any shops, offices, flats, electric or water works,  workshops, mills, plants, machinery, warehouses and any other works, buildings, plants, conveniences or structures whatsoever, which the Company may consider desirable for the purposes of its business and to contribute to, subsidize or otherwise assist or take part in the construction, improvement, maintenance, working, management, carrying out or control thereof.

(8)  To improve, manage, control, cultivate, develop, exploit, exchange, let on lease or otherwise, mortgage, charge, sell, dispose of, grant as gift, turn to account, grant rights and privileges in respect of, or otherwise deal with all or any part of the property, assets and rights of the Company or in which the Company is interested and to adopt such means of making known and advertising the business and products of the Company as may seem expedient.

(9) To manufacture, repair, import, buy, sell, export, let on hire and generally trade or deal in, any kind of accessories, articles apparatus, plant, machinery, tools, goods, properties, rights or things of any description capable of being used or dealt with  by the Company in connection with any of its objects.

(10)  To deal in, utilise for building or other purposes, let on lease or sublease or on hire, to assign or grant licence over, charge or mortgage, the whole or any parts of the immovable property belonging to the Company or any rights thereon or in which the Company is interested on such terms as the Company shall determine.

(11)  To purchase or otherwise acquire all or any part of the business, assets, property and liabilities of any company, society, partnership or person, formed for all or any part of the purposes within the objects of the Company, or carrying on any  business or intending to carry on business which the Company  is authorised to carry on, or possessing property suitable for the purposes of the Company and to undertake,

4

conduct and carry on, or liquidate and wind up, any such  business and, in consideration for such acquisition, to pay in cash, issue shares, undertake any liabilities or acquire any interest in the vendor's business.

(12) To apply for and take out, purchase or otherwise acquire any designs, trade marks, patents, patent rights or inventions, brevets d'invention, copyright or secret processes, which may be useful for the Company's objects, and to grant licences to use the same.

(13)  To pay all costs, charges and expenses incurred or sustained in or about the promotion, formation and establishment of the Company or which the Company shall consider to be in the nature of preliminary expenses or expenses incurred prior to incorporation and with a view to incorporation, including therein professional fees, the cost of advertising, taxes, commissions for underwriting, brokerage, printing and stationery, salaries to employees and other similar expenses and expenses attendant upon the formation and functioning of agencies, local boards or local administration or other bodies, or expenses relating to any business or work carried on or performed prior to incorporation, which the Company decides to take over or continue.

(14)  Upon any issue of shares, debentures or any other securities of the Company, to employ brokers, commission agents and underwriters, and to provide for the remuneration of such persons for their services by payment in cash or by the issue of shares, debentures or other securities of the Company, or by the granting of options to take the same, or in any other manner  allowed by law.

(15)  To borrow, raise money or secure obligations (whether of the Company or any other person) in such manner or such terms as may seem expedient, including the issue of debentures, debenture stock (perpetual or terminable), bonds, mortgages or any other securities, founded or based upon all or any of the property and rights of the Company, including its uncalled capital, or without any such security and upon such terms as to priority or otherwise, as may be thought fit.

(16)  To lend and advance money or give credit to any person, firm or company; to guarantee, give guarantees or indemnities for, undertake or otherwise support or secure, either with or without the Company receiving any consideration or advantage and whether by personal covenant or by mortgaging, charging, pledging, assigning or creating of any rights or priorities in favour of any person or in any other manner whatsoever all or part of the undertaking, property, assets, book, debts, rights, choses in action, receivables and revenues present and future and uncalled capital of the Company or by any such methods or by any other means whatsoever, the liabilities, the performance of contracts and obligations of and the payment of any moneys whatsoever (including but not limited to principal, interest and other liabilities or any borrowing or acceptance of credits and capital, and premiums, dividends, costs and expenses on any stocks, shares or securities) by any person, firm or company including, but not limited, to any company which is for the time being the holding company or a subsidiary of or associated or affiliated with the Company or with which the Company has any contractual relations or in which the Company holds any interest or which holds any share or interest in the Company; and otherwise to assist any person or company as may be thought fit.

(17) To draw, execute, issue, accept, make endorse, discount and negotiate bills of exchange, promissory notes, bills of lading, and other negotiable or transferable instruments or securities.

(18) To receive money on deposit, with or without allowances or interest thereon.

(19) To advance and lend money upon such security as may be thought proper, or without any security therefor.

(20) To invest the moneys of the Company not immediately required in such manner, other than in the shares of the Company, as from time to time may be determined by the Directors.

(21) To issue, or guarantee the issue or the payment of interest on, the shares, debentures, debenture stock, or other securities or obligations of any company or association, and to pay or provide for brokerage, commission, and underwriting in respect of any such issue.

(22) To acquire by subscription, purchase or otherwise, and to accept, take, hold, deal in, convert and sell, any kind of shares, stock, debentures or other securities or interests in any other company, society or undertaking whatsoever.

(23) To issue and allot fully or partly paid shares in the capital of the Company or issue debentures or securities in payment or part payment of any movable property purchased or otherwise acquired by the Company or any services rendered to the Company and to remunerate in cash or otherwise any person, firm or company rendering services or grant donations to such persons.

(24) To establish anywhere in the world, branch offices, regional offices, agencies and local boards and to regulate and to discontinue the same.

(25) To provide for the welfare of officers or of persons in the employment of the Company, or former officers or formerly in the employment of the Company or its predecessors in business or officers or employees of any subsidiary or associated or allied company, of the Company, and the wives, widows, dependants and families of such persons, by grants of money, pensions or other payments, (including payments of insurance premia) and to form, subscribe to, or otherwise aid, any trust, fund or scheme for the benefit of such persons, and any benevolent, religious, scientific, national or other institution or object of any kind, which shall have any moral or other claims to support or aid, by the Company by reason of the nature or the locality of its operations or otherwise.

(26) From time to time, to subscribe or contribute to any charitable, benevolent, or useful object of a public character the support of which will, in the opinion of the Company, tend, to increase its repute or popularity among its employees, its customers, or the public.

(27) To enter into and carry into effect any arrangement for joint working in business, union of interests, limiting competition, partnership or for sharing of profits, or for amalgamation, with any other company, partnership or person, carrying on business within the objects of the Company.

(28)  To establish, promote and otherwise assist, any company or companies for the purpose of acquiring any of the property or furthering any of the objects of the Company or for any other purpose which may seem directly or indirectly calculated to benefit the Company.

(29)  To apply for, promote, and obtain by Law, Order, Regulation, By-Law, or otherwise, concessions, rights, privileges, licences or permits enabling the Company to carry any of its objects into effect, or for effecting any modification of the Company's constitution, or for any other purpose which may seem expedient, and to oppose any proceedings or applications which may, calculated directly or indirectly, to prejudice the Company's interest and to enter into and execute any arrangement with any Government or Authority, supreme, municipal, local or otherwise that may seem conducive to the Company's objects or any of them.

(30)  To sell, dispose of, mortgage, charge, grant rights or options or transfer the business, property and undertakings of the Company or any part thereof for any consideration the Company may see fit to accept.

(31)  To accept stock or shares in, or the debentures, mortgage debentures or other securities of any other company in payment or part payment for any services rendered or for any sale made to or debt owing from any such company.

(32)  To distribute in specie or otherwise as may be resolved any assets of the Company among its Members and, particularly, the shares, debentures or other securities of any other company belonging to the Company or which the Company may have the power of disposing.

(33)  To do all or any of the matters hereby authorised in any part of the world either alone or in conjunction with, or as factors, trustees, principals, sub-contractors or agents for, any other company, firm or person, or by or through any factors, trustees, sub-contractors or agents.

(34)  To procure the registration or recognition of the Company in any country or place and to act as secretary, manager, director or treasurer of any other company.

(35)  Generally to do all such other things as may appear to the Company to be incidental or conducive to the attainment of the above objects or any of them.

7

The objects set forth in any sub-clause of this clause shall not be restrictively construed but the widest interpretation shall be given thereto, and they shall not, except when the context expressly so requires, be in any way limited to or restricted by reference to or inference from any other object or objects set forth in such sub-clause or from the terms of any other sub-clause or marginal title or by the name of the Company. None of such sub-clauses or object or objects therein specified or the powers thereby conferred shall be deemed subsidiary or ancillary to the objects or powers mentioned in any other sub-clause, but the Company shall have full power to exercise all or any of the powers and to achieve or to endeavour to achieve all or any of the objects conferred by and provided in any one or more of the said sub-clauses.

4. The liability of the members is limited.

5. The authorised share capital of the Company is CYP1.000 divided into 1 000 (one thousand) shares of CYP 1.- each with power to issue any of the shares in the capital, original or increased, with or subject to any preferential, special or qualified rights or conditions as regards dividends, repayment of capital, voting or otherwise.

WE, whose names and addresses are subscribed, are desirous of being formed into a Company in pursuance of this memorandum of association, and we respectively agree to take the number of shares in the capital of the Company set opposite our respective names.

| NAMES, ADDRESSES AND DESCRIPTION OF SUBSCRIBERS | Number of shares taken by each Subscriber |
|---|---|
| ABACUS (CYPRUS) LIMITED<br><br>...............................................<br>Limited Liability Company<br>Elenion Building<br>2st floor<br>5 Themistocles Dervis Street<br>Nicosia – Cyprus<br>Registration No. 14003 | 1000 Shares |

Dated this the ...7... day of ......July.................... 2005

Witness to the above signatures:

GEORGIA KAPSALI
Private employee
Elenion Building, 2nd floor
5 Th Dervis Street
1066 Nicosia, Cyprus

9

THE COMPANIES LAW, CAP. 113

PRIVATE COMPANY LIMITED BY SHARES

ARTICLES OF ASSOCIATION

OF

# HARDLAKE LIMITED

## INTERPRETATION

1. In these Regulations :

" Cyprus" means the Republic of Cyprus.

"the Law" means the Companies Law, Cap. 113 or any Law substituting or amending same.

"the seal" means the common seal of the Company.

"the secretary" means any person appointed to perform the duties of the secretary of the Company. Ordered by Sp Res dated 27/1/06 see RT

Expressions referring to writing shall, unless the contrary intention appears, be construed as including references to printing, lithography, photography, and other modes of representing or reproducing words in a visible form.

Unless the context otherwise requires, words or expressions contained in these Regulations shall bear the same meaning as in the Law or any statutory modification thereof in force at the date at which these Regulations become  binding on the Company.

## TABLE "A" EXCLUDED

2. The Regulations contained in Table "A" in the First Schedule to the Law shall not apply except so far as the same are repeated or contained in these Regulations.

## PRELIMINARY

3. The Company is a private Company and accordingly:

(a) The right to transfer shares is restricted in the manner hereinafter prescribed.

(b) The number of Members of the Company (exclusive of persons who are in the employment of the Company and of persons who, having been formerly in the employment of the Company, were, while in such employment, and have continued after the termination of such employment, to be Members of the Company) is limited to fifty.  Provided that where two or more persons hold one or more shares in the

Company jointly they shall for the purpose of this Regulation be treated as a single Member.

(c)  Any invitation to the public to subscribe for any shares or debentures of the Company is prohibited.

(d) The Company shall not have power to issue share warrants to bearer.

(e) At all times where the Company shall have only one Member the following provisions shall apply:

  (i)   The sole Member exercises all the powers of the General Meeting provided, always, that any decisions taken by the said Member in General Meeting are minuted or taken in writing.

  (ii)  Agreements concluded between the sole Member and the Company, are minuted or reduced in writing, unless they relate to day to day transactions of the Company concluded in the ordinary course of business.

## B U S I N E S S

4.      The Company shall pay all preliminary and other expenses and enter into, adopt or carry into effect and take over or continue (with such modifications, if any, as the contracting parties shall agree and the Directors shall approve), any agreement or business or work reached or carried on (as the case might be) prior to incorporation, as the Company may decide.

## SHARE CAPITAL AND VARIATION OF RIGHTS

5.  The shares shall be at the disposal of the Directors which may allot or otherwise dispose of them, subject to Regulation 3, and to the provisions of the next following Regulation, to such persons at such times and generally on such terms and conditions as they think proper, and provided that no shares shall be issued at a discount, except as provided by section 56 of the Law.

6.  Unless otherwise determined by the Company in General Meeting, any original shares for the time being unissued and not allotted and any new shares from time to time to be created shall, before they are issued, be offered to the Members in proportion, as nearly as may be, to the number of shares held by them.  Such offer shall be made by notice specifying the number of shares offered, and limiting a time within which the offer, if not accepted, will be deemed to be declined, and after the expiration of such time, or on the receipt of an intimation from the person to whom the offer is made that he declines to accept the shares offered, the Company may, subject to these Regulations, dispose of the same in such manner as it thinks most beneficial to the Company.  The Company may, in like manner, dispose of any such new or original shares as aforesaid, which, by reason of the proportion borne by them to the number of persons entitled to such offer as aforesaid  or by reason of any other difficulty in apportioning the same, cannot in the opinion of the Company be conveniently offered in manner hereinbefore provided.

7. Without prejudice to any special rights previously conferred on the holders of any existing shares or class of shares, any shares in the Company may be issued with such preferred, deferred or other special rights or such restrictions, whether in regard to dividend, voting, return of capital or otherwise, as the Company may from time to time by ordinary resolution determine.

11

8.   Subject to the provisions of section 57 of the Law, any preference shares may, with the sanction of an ordinary resolution, be issued on the terms that they are, or at the option of the Company are liable, to be redeemed on such terms and in such manner as the Company before the issue of the shares may by special resolution determine.

9.   If at any time the share capital is divided into different classes of shares, the rights attached to any class (unless otherwise provided by the terms of issue of shares of that class) may, whether or not the Company is being wound up, be varied with the consent in writing of the holders of three-fourths of the issued shares of that class, or with the sanction of an extraordinary resolution passed at a separate general meeting of the holders of the shares of the class.   To every such separate general meeting the provisions of these Regulations relating to General Meetings shall apply, but so that the necessary quorum shall be two persons at least holding or representing by proxy one-third of the issued shares of the class and that any holder of shares of the class present in person or by proxy may demand a poll.

10.   The rights conferred upon the holders of the shares of any class issued with preferred or other rights shall not, unless otherwise expressly provided by the terms of issue of the shares of that class, be deemed to be varied by the creation or issue of further shares ranking pari passu therewith.

11.   The Company may exercise the powers of paying commissions conferred by section 52 of the Law, provided that the rate per cent or the amount of the commission paid or agreed to be paid shall be disclosed in the manner required by the said section   and the rate of the commission shall not exceed the rate of 10 per cent of the price at which the shares in respect whereof the same is paid are issued or an amount equal to 10 per cent of such price (as the case may be).   Such commission may be satisfied by the payment of cash or the allotment of fully or partly paid shares or partly in one way and partly in the other.   The Company may also on any issue of shares pay such brokerage as may be lawful.

12.   Except as required by law, no person shall be recognized by the Company as holding any shares upon any trust, and the Company shall not be bound by or be compelled in any way to recognize (even when having notice thereof) any equitable, contingent, future or partial interest in any share or any interest in any fractional part of a share or (except only as by these Regulations or by law otherwise provided) any other rights in respect of any share except an absolute right to the entirety thereof in the registered holder.

13.   Every person whose name is entered as a Member in the register of Members shall be entitled without payment to receive within two months after allotment or lodgment of transfer (or within such other period as the conditions of issue shall provide) one certificate for all his shares or several certificates each for one or more of his shares upon payment of 12.5 cents for every certificate after the first or such lesser sum as the Directors shall from time to time determine.   Every certificate shall be under the seal and shall specify the shares to which it relates and the amount paid up thereon.   Provided that in respect of a share or shares held jointly by several persons the Company shall not be bound to issue more than one certificate, and delivery of a certificate for a share to one of several joint holders shall be sufficient delivery to all such holders.

12

14.  If a share certificate be defaced, lost or destroyed, it may be substituted on payment of a fee of 12.5 cents, or such less sum and on such terms (if any) as to evidence and indemnity and the payment of out-of-pocket expenses of the Company for investigating the evidence adduced as the Directors think fit.

15.  The Company shall not give, whether directly or indirectly, and whether by means of a loan, guarantee, the provision of security or otherwise, any financial assistance for the purpose of or in connection with a purchase or subscription made or to be made by any person of or for any shares in the Company or in its holding company nor shall the Company make a loan for any purpose whatsoever on the security of its shares or those of its holding company, but nothing in this Regulation shall prohibit transactions mentioned in the proviso to section 53(1) of the Law.

### L I E N

16.  The Company shall have a first and paramount lien on every share for all moneys (whether presently payable or not) called or payable at a fixed time in respect of that share, and the Company shall also have a first and paramount lien on all shares standing registered in the name of a single person for all moneys presently payable by him or his estate to the Company; but the Directors may at any time declare any share to be wholly or in part exempt from the provisions of this Regulation.  The Company's lien, if any, on a share shall extend to all dividends payable thereon as well as to any other rights or benefits attached thereto.

17.  The Company may sell, in such manner as the Directors think fit, any shares on which the Company has a lien, but no sale shall be made unless a sum in respect of which the lien exists is presently payable, nor until the expiration of fourteen days after a notice in writing, stating and demanding payment of such part of the amount in respect of which the lien exists as is presently payable, has been given to the registered holder for the time being of the share, or the person entitled thereto by reason of his death or bankruptcy.

18.  To give effect to any such sale, the Directors may authorise some person to transfer the shares sold to the purchaser thereof.  The purchaser shall be registered as the holder of the shares comprised in any such transfer, and he shall not be bound to see to the application of the purchase money nor shall his title to the shares be affected by any irregularity or invalidity in the proceedings in reference to the sale.

19.  The proceeds of the sale shall be received by the Company and applied in payment of such part of the amount in respect of which the lien exists as is presently payable, and the residue, if any, shall (subject to a like lien for sums not presently payable as existed upon the shares before the sale) be paid to the person entitled to the shares at the date of the sale.

### CALLS ON SHARES

20. The Directors may from time to time make calls upon the Members in respect of any moneys unpaid on their shares (whether on account of the nominal value of the shares or by way of premium) and not by the conditions of allotment thereof made payable at fixed times, and each Member shall (subject to receiving at least fourteen days' notice specifying the time or times and place of payment) pay to the Company, at the time or times and place so specified, the amount called on his shares.  A call may be revoked or postponed as the Directors may determine and the Members shall be accordingly notified.

21.  A call shall be deemed to have been made at the time when the Resolution of the Directors authorising the call was passed and may be required to be paid by installments.

22.  The joint holders of a share shall be jointly and severally liable to pay all calls in respect thereof.

23.  If a sum called in respect of a share is not paid before or on the day appointed for payment thereof, the person from whom the sum is due shall pay interest on the sum from the day appointed for payment thereof to the time of actual payment at such rate not exceeding 8 per cent per annum as the Directors may determine, but the Directors shall be at liberty to waive payment of such interest  wholly or in part.

24.  Any sum which by the terms of issue of a share becomes payable on allotment or at any fixed date, whether on account of the nominal value of the share or by way of premium, shall for the purposes of these Regulations be deemed to be a call duly made and payable on the date on which by the terms of issue the same becomes payable, and in case of non-payment all relevant provisions of these Regulations as to payment of interest and expenses, forfeiture or otherwise shall apply as if such sum had become payable by virtue of a call duly made and notified.  The Directors may on the issue of shares, differentiate between the holders as to the number of calls, the amount of calls to be paid and the times of payment.

25.  The Directors may, if they think fit, receive from any Member willing to advance the same, all or any part of the moneys uncalled and unpaid upon any shares held by him and upon all or any of the moneys so advanced may (until the same would, but for such advance, become payable) pay interest at such rate not exceeding (unless the Company in General Meeting shall otherwise direct) 5 per cent per annum, as may be agreed upon between the Directors and the Member paying such sum in advance.

## TRANSFER OF SHARES

26.  The instrument of transfer of any share shall be executed by or on behalf of the transferor and transferee, and the transferor shall be deemed to remain a holder of the share until the name of the transferee is entered in the register of Members in respect thereof.

27.  Subject to such of the restrictions of these Regulations as may be applicable, any Member may transfer all or any of his shares by instrument in writing in any usual or common form or any other form which the Directors may approve.

28.  The Directors may, in their absolute discretion and without assigning any reason therefor, decline to register the transfer of a share to a person of whom they shall not approve, and they may also decline to register the transfer of a share on which the Company has a lien.

29.  The Directors may also decline to recognize any instrument of transfer unless:

(a)  a fee of 12.5 cents, or such lesser sum as the Directors may from time to time require, is paid to the Company in respect thereof;

14

(b) the instrument of transfer is accompanied by the certificate of the shares to which it relates, and such other evidence as the Directors may reasonably require to show the right of the transferor to make the transfer; and

(c) the instrument of transfer is in respect of only one class of shares.

30. If the Directors refuse to register a transfer they shall, within two months after the date on which the transfer was lodged with the Company, send to the transferee notice of the refusal.

31. The registration of transfers may be suspended at such times and for such periods as the Directors may from time to time determine, provided always that such registration shall not be suspended for more than thirty days in any year.

32. The Company shall be entitled to charge a fee not exceeding 12.5 cents on the registration of every probate, letters of administration, certificate of death or marriage, power of attorney, or other instrument.

33. Regulations 26 and 27 shall be read subject to the provisions of Regulation 34.

Ordered by Sp Reg. dated 27/1/00 RS

34. (a) For the purposes of this Regulation, where any person becomes un- conditionally entitled to be registered as the holder of a share he and not the registered holder of such share shall be deemed to be a Member of the Company in respect of that share.

(b) Except as hereinafter provided, no shares in the Company shall be transferred unless and until the rights of pre-emption hereinafter conferred shall have been exhausted.

(c) Every Member who desires to transfer any share or shares (hereinafter called "the Vendor") shall give to the Company notice in writing of such desire (hereinafter called "transfer notice") specifying the number of shares desired to be transferred (the "said shares"). Subject as hereinafter mentioned, a transfer notice shall constitute the Company the Vendor's agent for the sale of the said shares in one or more lots at the discretion of the Directors to the Members other than the Vendor at the price to be agreed upon by the Vendor and the remaining Members of the Company, or, in case of difference or no such agreement within fourteen days from the date of the transfer notice, at the price which the auditor of the Company for the time being shall, by writing under his hand, certify to be in his opinion the fair value thereof as between a willing seller and a willing buyer. A transfer notice may contain a provision that unless all the shares comprised therein are sold by the Company pursuant to this Regulation, none shall be so sold and any such provision shall be binding on the Company.

(d) If the auditor is asked to certify the fair price as aforesaid, the Company shall, as soon as it receives the auditor's certificate, furnish a certified copy thereof to the Vendor and the Vendor shall be entitled, by notice in writing given to the Company within ten days of the service upon him of the said certified copy, to cancel the Company's authority to sell the said shares. The cost of obtaining the certificate shall be borne by the Company unless the Vendor shall give notice of cancellation as aforesaid in which case he shall bear the said cost.

15

(e)  Upon the price being fixed as aforesaid and provided the Vendor shall not give notice of cancellation as aforesaid the Company shall forthwith by notice in writing inform each Member other than the Vendor and other than Members holding employees' shares only of the number and price of the said shares and invite each such Member to apply in writing to the Company within twenty-one days of the date of dispatch of the notice (which date shall be specified therein) for such maximum number of the said shares (being all or any thereof) as he shall specify in such application.

(f)  If the said Members shall within the said period of twenty-one days apply for all or (except where the transfer notice provides otherwise) any of the said shares, the Directors shall allocate the said shares (or so many of them as shall be applied for as aforesaid) to or amongst the applicants and in case of competition pro rata (as nearly as possible) according to the number of shares in the Company (other than employees' shares) of which they are registered or unconditionally entitled to be registered as holders, provided that no applicant shall be obliged to take more than the maximum number of shares specified by him as aforesaid; and the Company shall forthwith give notice of such allocations (hereinafter called "an allocation notice") to the Vendor and to the persons to whom the shares have been allocated and shall specify in such notice the place and time (being no earlier than fourteen and not later than twenty-eight days after the date of the notice) at which the sale of the shares so allocated shall be completed.

(g)  The Vendor shall be bound to transfer the shares comprised in an allocation notice to the purchasers named therein at the time and place therein specified; and if he shall fail to do so, the chairman of the Company or some other person appointed by the Directors shall be deemed to have been appointed attorney of the Vendor with full power to execute, complete and deliver, in the name and on behalf of the Vendor, transfers of the shares to the purchasers thereof against payment of the price to the Company. On payment of the price to the Company the purchaser shall be deemed to have obtained a good quittance for such payment and on execution and delivery of the transfer the purchaser shall be entitled to insist upon his name being entered in the register of Members as the holder by transfer of the shares.  The Company shall forthwith pay the price into a separate bank account in the Company's name and shall hold such price in trust for the Vendor.

(h)  During the six months following the expiry of the said period of twenty-one days referred to in paragraph (e) of this Regulation, the Vendor shall be at liberty, (subject nevertheless to the provisions of Regulation 28) to transfer to any person and at any price (not being less than the price fixed under paragraph (c) of this Regulation) any share not allocated by the Directors in an allocation notice. Provided that, if the Vendor stipulated in his transfer notice that unless all the shares comprised therein were sold pursuant to this Regulation, none should be sold, the Vendor shall not be entitled, save with the written consent of all the other Members of the Company, to sell hereunder only some of the shares comprised in his transfer notice.

(i)  Any share may be transferred by a Member to the spouse, child or remote issue or parent, brother or sister of that Member or to a company beneficially owned or controlled by such Member and any share of a deceased Member may be transferred by his personal representatives to any widow, widower, child or remote issue or parent, brother or sister of such deceased Member and shares standing in the name of the trustees of any deceased Member may be transferred upon any change of trustees to the trustees for the time being of such will; and where the Member is a body corporate any share may be transferred by such Member to its subsidiary or

16

holding company or to a company controlled by such holding company. The rights of pre-emption hereinbefore conferred in this Regulation shall not arise on the occasion of any such transfer or transfers as aforesaid and Regulation 28 shall be read subject to this paragraph.

## TRANSMISSION OF SHARES

35. In case of the death of a Member, the survivor or survivors where the deceased was a joint holder, and the legal personal representatives of the deceased where he was a sole holder, shall be the only persons recognized by the Company as having any title to his interest in the shares; but nothing herein contained shall release the estate of a deceased joint holder from any liability in respect of any share which had been jointly held by him with other persons.

36. Any person becoming entitled to a share in consequence of the death or bankruptcy of a Member may, upon such evidence being produced as may from time to time properly be required by the Directors and subject as hereinafter provided, elect either to be registered himself as holder of the share or to have some person nominated by him registered as the transferee thereof, but the Directors shall, in either case, have the same right to decline or suspend registration as they would have had in the case of a transfer of the share by that Member before his death or bankruptcy, as the case may be.

37. If the person so becoming entitled shall elect to be registered himself, he shall deliver or send to the Company a notice in writing signed by him stating that he so elects. If he shall elect to have another person registered, he shall testify his election by executing to that person a transfer of the share. All the limitations, restrictions and provisions of these Regulations relating to the right to transfer and the registration of transfers of shares shall be applicable to any such notice or transfer as aforesaid as if the death or bankruptcy of the Member had not occurred and the notice or transfer was a transfer signed by that Member.

38. A person becoming entitled to a share by reason of the death or bankruptcy of the holder shall be entitled to the same dividends and other advantages to which he would be entitled if he were the registered holder of the share, except that he shall not, before being registered as a Member in respect of the share, be entitled in respect of it to exercise any right conferred by Membership in relation to meetings of the Company.

Provided always that the Directors may at any time give notice requiring any such person to elect either to be registered himself or to transfer the share, and if the notice is not complied with within ninety days, the Directors may thereafter withhold payment of all dividends, bonuses or other moneys payable in respect of the share until the requirements of the notice have been complied with.

## FORFEITURE OF SHARES

39. If a Member fails to pay any call or installment of a call on the day appointed for payment thereof, the Directors may, at any time thereafter during such time as any part of the call or installment remains unpaid, serve a notice on him requiring payment of so much of the call or installment as is unpaid, together with any interest which may have accrued.

17

40. The notice shall name a further day (not earlier than the expiration of fourteen days from the date of service of the notice) on or before which the payment required by the notice is to be made, and shall state that in the event of non-payment at or before the time appointed, the shares in respect of which the call was made will be liable to be forfeited.

41. If the requirements of any such notice as aforesaid are not complied with, any share in respect of which the notice has been given may at any time thereafter, before the payment required by the notice has been made, be forfeited by a resolution of the Directors to that effect.

42. A forfeited share may be sold or otherwise disposed of on such terms and in such manner as the Directors think fit, and at any time before a sale or disposition the forfeiture may be canceled on such terms as the Directors think fit.

43. A person whose shares have been forfeited shall cease to be a Member in respect of the forfeited shares, but shall, notwithstanding, remain liable to pay to the Company all moneys which, at the date of forfeiture, were payable by him to the Company in respect of the shares, but his liability shall cease if and when the Company shall have received payment in full of all such moneys in respect of the shares.

44. A statutory declaration in writing that the declarant is a Director or the secretary of the Company, and that a share in the Company has been duly forfeited on a date stated in the declaration, shall be conclusive evidence of the facts therein stated as against all persons claiming to be entitled to the share. The Company may receive the consideration, if any, given for the share on any sale or disposition thereof and may execute a transfer of the share in favour of the person to whom the share is sold or disposed of and he shall thereupon be registered as the holder of the share, and shall not be bound to see to the application of the purchase money, if any, nor shall his title to the share be affected by any irregularity or invalidity in the proceedings in reference to the forfeiture, sale or disposal of the share.

45. The provisions of these Regulations as to forfeiture shall apply in the case of non-payment of any sum which, by the terms of issue of a share, becomes payable at a fixed time, whether on account of the nominal value of the shares or by way of premium, as if the same had been payable by virtue of a call duly made and notified.

## CONVERSION OF SHARES INTO STOCK

46. The Company may by ordinary Resolution convert any paid-up shares into stock, and reconvert any stock into paid-up shares of any denomination.

47. The holders of stock may transfer the same, or any part thereof, in the same manner, and subject to the same Regulations, as and subject to which the shares from which the stock arose might previously to conversion have been transferred, or as near thereto as circumstance admit; and the Directors may from time to time fix the minimum amount of stock transferable but so that such minimum shall not exceed the nominal amount of the shares from which the stock arose.

48. The holders of stock shall, according to the amount of stock held by them, have the same rights, privileges and advantages as regards dividends, voting at meetings of the Company and other matters as if they held the shares from which the stock arose, but no such privilege or advantage (except participation in the dividends and profits of the Company and in the assets on winding up) shall be conferred by an

amount of stock which would not, if existing in shares, have conferred that privilege or advantage.

49.  Such of the Regulations of the Company as are applicable to paid-up shares shall apply to stock, and the words "share" and "shareholder" therein shall include "stock" and "stockholder".

## ALTERATION OF CAPITAL

*Ordered by Sp. Res. dated 27/1/00 PLS*

50.  The Company may from time to time by ordinary resolution increase the share capital by such sum, to be divided into shares of such amount, as the Resolution shall prescribe.

51.  The Company may by ordinary resolution:

*Ordered by Sp Res, dated 27/1/00 PLS*

(a) consolidate and divide all or any of its share capital into shares of larger amount than its existing shares;

(b) subdivide its existing shares, or any of them, into shares of smaller amount than is fixed by the memorandum of association subject, nevertheless, to the provisions of section 60 (1) (d) of the Law;

(c)  cancel any shares which, at the date of the passing of the resolution, have not been taken or agreed to be taken by any person.

52.  The Company may by special resolution reduce its share capital, any capital redemption reserve fund or any share premium account in any manner and with, and subject to, any incident authorised, and consent required, by law.

## GENERAL MEETINGS

53.  The Company shall in each year hold a General Meeting as its Annual General Meeting in addition to any other Meetings in that year, and shall specify the Meeting as such in the notices calling it, and not more than fifteen months shall elapse between the date of one Annual General Meeting of the Company and that of the next.

Provided that so long as the Company holds its first Annual General Meeting within eighteen months of its incorporation, it need not hold it in the year of its incorporation or in the following year.  The Annual General Meeting shall be held at such time and place as the Directors shall appoint.

54.  All General Meetings other than Annual General Meetings shall be called Extraordinary General Meetings.

55.  The Directors may, whenever they think fit, convene an Extraordinary General Meeting, and Extraordinary General Meetings shall also be convened on such requisition, or, in default, may be convened by such requisitionists, as provided by section 126 of the Law.  If at any time there are not within Cyprus sufficient Directors capable of acting to form a quorum, any Director or any two Members of the Company may convene an Extraordinary General Meeting in the same manner as nearly as possible as that in which meetings may be convened by the Directors.

19

## NOTICE OF GENERAL MEETINGS

56. An Annual General Meeting and a Meeting called for the passing of a special resolution shall be called by twenty-one days' notice in writing at the least, and a Meeting of the Company other than an Annual General Meeting or a Meeting for the passing of a special resolution shall be called by fourteen days' notice in writing at the least. The notice shall be exclusive of the day on which it is served or deemed to be served and of the day for which it is given, and shall specify the place, the date and the hour of the meeting and, in case of special business, the general nature of that business and shall be given in manner hereinafter mentioned or in such other manner, if any, as may be prescribed by the Company in general meetings to such persons as are, under the Regulations of the Company, entitled to receive such notices from the Company.

Provided that a Meeting of the Company shall, notwithstanding that it is called by shorter notice than that specified in this Regulation, be deemed to have been duly called if it is so agreed:

(a)  in the case of a Meeting called as the Annual General Meeting, by all the Members entitled to attend and vote thereat; and

(b)  in the case of any other Meeting, by majority in number of the Members having a right to attend and vote at the Meeting, being a majority together holding not less than 95 per cent in nominal value of the shares giving that right.

57.  The accidental omission to give notice of a Meeting to, or the non-receipt of notice of a Meeting by, any person entitled to receive notice, shall not invalidate the proceedings at that Meeting.

## PROCEEDINGS AT GENERAL MEETINGS

58.  All business shall be deemed special that is transacted at an Extraordinary General Meeting, and also all that is transacted at an Annual General Meeting, with the exception of declaring a dividend, the consideration of the accounts, balance sheets and the reports of the Directors and auditors, the election of Directors in the place of those retiring and the appointment of, and the fixing of the remuneration of, the auditors.

59.  No business shall be transacted at any General Meeting unless a quorum of Members is present at the time when the Meeting proceeds to business; save as herein otherwise provided, two Members present in person or by proxy shall be a quorum. At all times when the Company has one and only Member, one Member present in person or by proxy shall be a quorum.

60.  If within half an hour from the time appointed for the Meeting a quorum is not present, the Meeting, if convened upon the requisition of Members, shall be dissolved; in any other case it shall stand adjourned to the same day in the next week, at the same time and place or to such other day and at such other time and place as the Directors may determine, and if at the adjourned Meeting a quorum is not present within half an hour from the time appointed for the Meeting, the Members present shall be a quorum.

20

61.  The chairman, if any, of the Board of Directors shall preside as chairman at every General Meeting of the Company, or if there is no such chairman, or if he shall not be present within fifteen minutes after the time appointed for the holding of the Meeting or is unwilling to act, the Directors present shall elect one of their number to be chairman of the Meeting.

62.  If at any Meeting no Director is willing to act as chairman or if no Director is present within fifteen minutes after the time appointed for holding the Meeting, the Members present shall choose one of their number to be chairman of the Meeting.

63.  The chairman may, with the consent of any Meeting at which a quorum is present (and shall if so directed by the Meeting), adjourn the Meeting from time to time and from place to place, but no business shall be transacted at any adjourned Meeting other than the business left unfinished at the Meeting from which the adjournment took place.  When a Meeting is adjourned for thirty days or more, notice of the adjourned Meeting shall be given as in the case of an original Meeting. Save as aforesaid it shall not be necessary to give any notice of an adjournment or of the business to be transacted at an adjourned Meeting.

64.  At any General Meeting any resolution put to the vote of the Meeting shall be decided on a show of hands unless a poll is (before or on the declaration of the result of the show of hands) demanded:

(a)  by the chairman; or

(b)  by at least two Members present in person or by proxy; or

(c)  by any Member or Members present in person  or by proxy and representing not less than one-tenth of the total voting rights of all the Members having the right to vote at the Meeting; or

(d)  by a Member or Members holding shares in the Company conferring a right to vote at the Meeting being shares on which an aggregate sum has been paid up equal to not less than one-tenth of the total sum paid up on all the shares conferring that right.

      Unless a poll be so demanded, a declaration by the chairman that a resolution has on a show of hands been carried or carried unanimously, or by a particular majority, or lost and an entry to that effect in the book containing the minutes of the proceedings of the Company shall be conclusive evidence of the fact without proof of the number or proportion of the votes recorded in favour of or against such resolution.

The demand for a poll may be withdrawn.

65.  Except as provided in Regulation 68, if a poll is duly demanded, it shall be taken in such manner as the chairman directs, and the result of the poll shall be deemed to be the resolution of the Meeting at which the poll was demanded.

66.  In the case of an equality of votes, whether on a show of hands or on a poll, the chairman of the Meeting shall not have a casting vote.

21

67.  A poll demanded on the election of a chairman or on a question of adjournment of the Meeting shall be taken forthwith.  A poll demanded  on any other question shall be taken at such time as the chairman of the Meeting directs, and any business other than upon which a poll has been demanded may be proceeded with, pending the taking of the poll.

## VOTES OF MEMBERS

68.  Subject to any rights or restrictions for the time being attached to any class or classes of shares, on a show of hands every Member present in person shall have one vote, and on a poll every Member shall have one vote for each share of which he is the holder.

69.  In the case of joint holders the vote of the senior who tenders a vote, whether in person or by proxy, shall be accepted to the exclusion of the votes of the other joint holders; and for this purpose seniority shall be determined by the order in which the names stand in the register of Members.

70.  A Member of unsound mind, or in respect of whom an order has been made by any Court having jurisdiction in lunacy, may vote, whether on a show of hands or on a poll, by the administrator of his property, his committee, receiver, curator bonis, or other person in the nature of an administrator, committee, receiver or curator bonis appointed by that Court, and any such administrator, committee, receiver, curator bonis or other person may, on a poll, vote by proxy.

71.  No Member shall be entitled to vote at any General Meeting unless all calls or other sums presently payable by him in respect of shares in the Company have been paid.

72.  No objection shall be raised to the qualification of any voter except at the Meeting or adjourned Meeting at which the vote objected to is given or tendered and every vote not disallowed at such Meeting shall be valid for all purposes.  Any such objection made in due time shall be referred to the chairman of the Meeting whose decision shall be final and conclusive.

73.  On a poll votes may be given either personally or by proxy.

74.  The instrument appointing a proxy shall be in writing under the hand of the appointer or of his attorney duly authorised in writing, or, if the appointer is a corporation, either under seal or under the hand of an officer or attorney duly authorised.  A proxy need not be a Member of the Company.

75.  The instrument appointing a proxy and the power of attorney or other authority, if any, under which it is signed or a notarially certified copy of that power or authority shall be deposited at the registered office of the Company or at such other place within Cyprus as is specified for that purpose in the notice convening the Meeting, at any time before the time for holding the Meeting or adjourned Meeting, at which the person named in the instrument proposes to vote, or, in the case of a poll, at any time before the time appointed for the taking of the poll, and in default the instrument of proxy shall not be treated as valid.

22

76. An instrument appointing a proxy shall be in the following form or a form as near thereto as circumstances admit-

    "    (Name of the Company)        Limited

    I/We        , of

being a Member/Members of the above-named Company, hereby appoint, , , of ,

or failing him        of    ,

as my/our proxy to vote for me/us or on my/our behalf at the (Annual or Extraordinary, as the case may be) General Meeting of the Company, to be held on the    day of    ,20   , and at any adjournment thereof.

    Signed this  day of    , 20   "

77. Where it is desired to afford Members an opportunity of voting for or against a resolution the instrument appointing a proxy shall be in the following form or a form as near thereto as circumstances admit-

    "    (Name of the Company)        Limited.

    I/We,        , of    .

being a Member/Members of the above-named Company, hereby appoint , , of ,

or failing him        of    ,

as my/our proxy to vote for me/us or on my/our behalf at the (Annual or Extraordinary, as the case may be) General Meeting of the Company, to be held on the    day of    ,20   , and at any adjournment thereof.

    Signed this  day of    ,20

    This form is to be used in favour of/* against the resolution.  Unless otherwise instructed, the proxy will vote as he thinks fit.

*Strike out whichever is not desired."

78. The instrument appointing a proxy shall be deemed to confer authority to demand or join in demanding a poll.

79. A vote given in accordance with the terms of an instrument of proxy shall be valid notwithstanding the previous death or insanity of the principal or revocation of the proxy or of the authority under which the proxy was executed or the transfer of the share in respect of which the proxy is given, provided that no intimation in writing of such death, insanity, revocation or transfer as aforesaid shall have been received by the Company at its office before the commencement of the Meeting or adjourned Meeting at which the proxy is used.

23

80. Subject to the provisions of the Law, a resolution in writing signed or approved by letter, email or facsimile by each Member for the time being entitled to receive notice of and to attend and vote at General Meetings (or being corporations by their duly authorised representatives) shall be as valid and effective as if the same had been passed at a General Meeting of the Company duly convened and held. Any such resolution may consist of several documents in the like form each signed by one or more of the Members or their attorneys, and signature in the case of a corporate body which is a Member shall be sufficient if made by a director or other authorised officer thereof or its duly appointed attorney.

## CORPORATIONS ACTING BY REPRESENTATIVES AT MEETINGS

81. Any corporation which is a Member of the Company may by resolution of its directors or other governing body authorise such person as it thinks fit to act as its representative at any Meeting of the Company or of any class of Members of the Company, and the person so authorised shall be entitled to exercise the same powers on behalf of the corporation which he represents, as that corporation could exercise if it were an individual Member of the Company.

## DIRECTORS

82. Unless and until otherwise determined by the Company in General Meeting there shall be no minimum or maximum number of Directors. The first Directors of the Company shall be appointed in writing by the subscribers to the memorandum of association or a majority of them and it shall not be necessary to hold any meeting for that purpose.

83. The remuneration of the Directors shall from time to time be determined by the Company in General Meeting. Such remuneration shall be deemed to accrue from day to day. The Directors may also be paid all traveling, hotel and other expenses properly incurred by them in attending and returning from meetings of the Directors or any committee of the Directors or General Meetings of the Company or in connection with the business of the Company.

84. The shareholding qualification for Directors may be fixed by the Company in General Meeting, and unless and until so fixed no qualification shall be required.

85. A Director of the Company may be or become a director or other officer of, or otherwise interested in, any company promoted by the Company or in which the Company may be interested as a shareholder or otherwise, and no such Director shall be accountable to the Company for any remuneration or other benefits received by him as a director or officer of, or from his interest in, such other company unless the Company otherwise directs.

## BORROWING POWERS

Orders by Sp Res dtd 29/1/00 R.C

86. The Directors may exercise all the powers of the Company to borrow or raise money without limitation or to guarantee and to mortgage, pledge, assign or otherwise charge its undertaking, property, assets, rights, choses in action and book debts, receivables, revenues and uncalled capital or any part thereof and to issue and create debentures, debenture stock, mortgages, pledges, charges and other securities as security for any debt, liability or obligation of the Company or of any third party.

24

### POWERS AND DUTIES OF DIRECTORS

*Ordered by Sp Res dated 27/11/06 see Rt 1*

87.  The business of the Company shall be managed by the Directors, who may pay all expenses incurred in promoting and registering the Company, and may exercise all such powers of the Company as are not, by the Law or by these Regulations, required to be exercised by the Company in General Meeting, subject, nevertheless to any of these Regulations, to the provisions of the Law and to such Regulations, being not inconsistent with the aforesaid Regulations or provisions as may be prescribed by the Company in General Meeting. But no Regulation made by the Company in General Meeting shall invalidate any prior act of the Directors which would have been valid if that Regulation had not been made.

88.  The Directors may from time to time and at any time appoint any company, firm or person or body or persons, whether nominated directly or indirectly by the Directors, to be the authorised representative or attorney of the Company for such purposes and with such powers, authorities and discretions (not exceeding those vested in or exercisable by the Directors under these Regulations) and for such period and subject to such conditions as they may think fit, and any such authorisation or power of attorney may contain such provisions for the protection and convenience of persons dealing with any such authorised representative or attorney as the Directors may think fit and may also authorise any such authorised representative or attorney to delegate all or any of the powers, authorities and discretions vested in him.

89.  The Company may exercise the powers conferred by section 36 of the Law with regard to having an official seal for use abroad, and such powers shall be vested in the Directors.

90.  The Company may exercise the powers conferred upon the Company by sections 114 to 117 (both inclusive) of the Law with regard to the keeping of a dominion register, and the Directors may (subject to the provisions of those sections) make and vary such Regulations as they may think fit respecting the keeping of any such register.

91.    (1) A Director who is in any way, whether directly or indirectly, interested in a contract or proposed contract or employment with the Company shall declare the nature of his interest at a meeting of the Directors in accordance with section 191 of the Law.

(2)  A Director may vote in respect of any contract or proposed contract or arrangement notwithstanding that he may be interested therein and if he does so his vote shall be counted and he may be counted in the quorum at any meeting of the Directors at which any such contract or proposed contract or arrangement shall come before the meeting for consideration.

(3)  A Director may hold any other office or place of profit under the Company (other than the office of auditor) in conjunction with his office of Director for such period and on such terms (as to remuneration and otherwise) as the Directors may determine and no Director or intending Director shall be disqualified by his office from contracting with the Company either with regard to his tenure of any such other office or place of profit or as vendor, purchaser or otherwise, nor shall any such contract, or any contract or arrangement entered into by or on behalf of the Company in which any Director is in any way interested, be liable to be avoided, nor shall any Director so contracting or being so interested be liable to account to the Company for

25

any profit realised by any such contract or arrangement by reason of such Director holding that office or of the fiduciary relation thereby established.

(4) Any Director may act by himself or his firm in a professional capacity for the Company, and he or his firm shall be entitled to remuneration for professional services as if he were not a Director; provided that nothing herein contained shall authorise a Director or his firm to act as auditor of the Company.

92. All cheques, promissory notes, drafts, bills of exchange, and other negotiable instruments, and all receipts for moneys paid to the Company, shall be signed, drawn, accepted, endorsed, or otherwise executed, as the case may be, in such manner as the Directors shall from time to time by resolution determine.

93. The Directors shall cause minutes to be made in books provided for the purpose:-

(a) of all appointments of officers made by the Directors;

(b) of the names of the Directors present at each meeting of the Directors and of any committee of the Directors;

(c) of all resolutions and proceedings at all meetings of the Company, and of the Directors, and of committees of Directors.

## PENSIONS

94. The Directors may grant retirement pensions or annuities or other gratuities or allowances, including allowances on death, to any person or persons in respect of services rendered by him or them to the Company whether as managing Directors or in any other office or employment under the Company or indirectly as officers or employees of any subsidiary, associated or allied company of the Company, notwithstanding that he or they may be or may have been Directors of the Company and the Company may make payments towards insurance, trusts, schemes or funds for such purposes in respect of such person or persons and may include rights in respect of such pensions, annuities and allowances in the terms of engagement of any such person or persons.

## DISQUALIFICATION OF DIRECTORS

95. The office of Director shall be vacated if the Director:-

(a) ceases to be a Director by virtue of section 176 of the Law; or

(b) becomes bankrupt or makes any arrangement or composition with his creditors generally; or

(c) becomes prohibited from being a director by reason of any order made under section 180 of the Law; or

(d) becomes of unsound mind; or

(e) resigns his office by notice in writing to the Company.

26

## APPOINTMENT OF ADDITIONAL DIRECTORS
## AND REMOVAL OF DIRECTORS

96. The Directors shall have power at any time, and from time to time, to appoint any person to be a Director, either to fill a casual vacancy or as an addition to the existing Directors, but so that the total number of Directors shall not at any time exceed the number fixed in accordance with these Regulations. Any Director so appointed shall hold office only until the next following Annual General Meeting, and shall then be eligible for re-election.

97. The Company may by ordinary resolution, of which special notice has been given in accordance with section 136 of the Law, remove any Director before the expiration of his period of office notwithstanding anything in these Regulations or in any agreement between the Company and such Director. Such removal shall be without prejudice to any claim such Director may have for damages for breach of any contract of service between him and the Company.

98. At any time, and from time to time, the Company may (without prejudice to the powers of the Directors under Regulation 96) by ordinary resolution appoint any person as Director and determine the period for which such person is to hold office.

## PROCEEDINGS OF DIRECTORS

99. The Directors may meet together for the despatch of business, adjourn, and otherwise regulate their meetings as they think fit and questions arising at any meeting shall be decided by a simple majority of votes. In case of equality of votes the chairman shall not have a second or casting vote. A Director may, and the secretary on the requisition of a Director shall, at any time summon a meeting of the Directors. It shall be necessary to give at least a 96 hour notice of a meeting of Directors to any Director for the time being absent from Cyprus who has supplied to the Company a registered address situated outside Cyprus. A meeting may be held by telephone or other means whereby all persons present may at the same time hear and be heard by everybody else present and persons who participate in this way shall be considered present at the meeting. In such case the meeting shall be deemed to be held where the secretary of the meeting is located. All board and Committee meetings shall take place in Cyprus, where the management and control of the company shall rest.

100. The quorum necessary for the transaction of the business of the Directors may be fixed by the Directors, and unless so fixed shall be one Director or his alternate.

101. The continuing Directors may act notwithstanding any vacancy in their body, but, if and so long as their number is reduced below the number fixed by or pursuant to the Regulations of the Company as the necessary quorum of Directors, the continuing Directors or Director may act for the purpose of increasing the number of Directors to that number, or of summoning a General Meeting of the Company, but for no other purpose.

102. The Directors may elect a chairman of their meeting and determine the period for which he is to hold office; but if no such chairman is elected, or if at any meeting the chairman is not present within five minutes after the time appointed for holding the same, the Directors present may choose one of their number to be chairman of the meeting.

103. The Directors may delegate any of their powers to a committee or committees consisting of such Member or Members of their body as they think fit; any committee so formed shall in the exercise of the powers so delegated conform to any Regulations that may be imposed on it by the Directors, as to its powers, constitution, proceedings, quorum or otherwise.

104. A committee may elect a chairman of its meetings; if no such chairman is elected, or if at any meeting the chairman is not present within five minutes after the time appointed for holding the same, the Members present may choose one of their number to be chairman of the meeting.

105. Subject to any Regulations imposed on it by the Directors, a committee may meet and adjourn as it thinks proper and questions arising at any meeting shall be determined by a majority of votes of the Members present.

106. All acts done by any meeting of the Directors or of a committee of Directors or by any person acting as a Director shall, notwithstanding that it be afterwards discovered that there was some defect in the appointment of any such Director or person acting as aforesaid, or that they or any of them were disqualified, be as valid as if every such person had been duly appointed and was qualified to be a Director.

107. A resolution in writing signed or approved by letter, email or facsimile by each Director or his alternate shall be as valid and effectual as if it had been passed at a meeting of the Directors or a committee duly convened and held and when signed may consist of several documents each signed by one or more of the persons aforesaid.

## ALTERNATE DIRECTORS

108. (a) Each Director shall have power from time to time to nominate another Director or any person, not being a Director, to act as his alternate Director and at his discretion to remove such alternate Director.

(b) An alternate Director shall (except as regards power to appoint an alternate Director and remuneration) be subject in all respects to the terms and conditions existing with reference to the other Directors, and shall be entitled to receive notices of all meetings of the Directors and to attend, speak and vote at any such meeting at which his appointor is not present.

(c) One person may act as alternate Director to more than one Director and while he is so acting shall be entitled to a separate vote for each Director he is representing and, if he is himself a Director, his vote or votes as an alternate Director shall be in addition to his own vote.

(d) Any appointment or removal of an alternate Director may be made by letter, email or facsimile or in any other manner approved by the Directors. Any email or facsimile shall be confirmed as soon as possible by letter but may be acted upon by the Company meanwhile.

(e) If a Director making any such appointment as aforesaid shall cease to be a Director otherwise than by reason of vacating his office at a meeting of the Company at which he is re-elected, the person appointed by him shall thereupon cease to have any power or authority to act as an alternate Director.

(f) An alternate Director shall not be taken into account in reckoning the minimum or maximum number of Directors allowed for the time being but he shall be counted for the purpose of reckoning whether a quorum is present at any meeting of the Directors attended by him at which he is entitled to vote.

## MANAGING DIRECTOR

109. The Directors may from time to time appoint one or more of their body to the office of managing Director for such period and on such terms as they think fit, and, subject to the terms of any agreement entered into in any particular case, may revoke such appointment. A Director so appointed shall not, whilst holding that office, be subject to retirement by rotation or be taken into account in determining the rotation of retirement of Directors, but his appointment shall be automatically determined if he ceases from any cause to be a Director.

110. A managing Director shall receive such remuneration (whether by way of salary, commission or participation in profits, or partly in one way and partly in another) as the Directors may determine.

111. The Directors may entrust to and confer upon a managing Director any of the powers exercisable by them upon such terms and conditions and with such restrictions as they may think fit, and either collaterally with or to the exclusion of their own powers and may from time to time revoke, withdraw, alter or vary all or any of such powers.

## SECRETARY

112. The secretary shall be appointed by the Directors for such term, at such remuneration and upon such conditions as they may think fit; and any secretary so appointed may be removed by them.

113. No person shall be appointed or hold office as secretary who is:-

(a) the sole Director of the Company; or

(b) a corporation the sole director of which is the sole Director of the Company; or

(c) the sole director of a corporation which is the sole Director of the Company.

These restrictions shall not apply at all times when the Company has one and only Member.

114. A provision of the Law or these Regulations requiring or authorising a thing to be done by or to a Director and the secretary shall not be satisfied by its being done by or to the same person acting both as Director and as, or in place of, the secretary. The present Regulation shall not apply at all times when the Company has one and only Member.

## THE SEAL

115. The Directors shall provide for the safe custody of the seal, which shall only be used by the authority of the Directors or of a committee of the Directors authorised by the Directors in that behalf, and every instrument to which the seal shall be affixed shall be signed by a Director or his alternate and shall be countersigned by

the Secretary or by a second Director or his alternate or by some other person appointed by the Directors for the purpose.

## DIVIDENDS AND RESERVE

116. The Company in General Meeting may declare dividends, but no dividend shall exceed the amount recommended by the Directors.

*Ordered by Sp Res dated 27/11/06 see R.17*

117. The Directors may from time to time pay to the Members such interim dividends as appear to the Directors to be justified by the profits of the Company.

118. No dividend shall be paid otherwise than out of profits.

119. The Directors may, before recommending any dividend, set aside out of the profits of the Company such sums as they think proper as a reserve or reserves which shall, at the discretion of the Directors, be applicable for any purpose to which the profits of the Company may be properly applied, and pending such application may, at the like discretion, either be employed in the business of the Company or be invested in such investments (other than shares of the Company) as the Directors may from time to time think fit. The Directors may also without placing the same to the reserve carry forward any profits which they may think prudent not to divide.

120. Subject to the rights of persons, if any, entitled to shares with special rights as to dividends, all dividends shall be declared and paid according to the amounts paid or credited as paid on the shares in respect whereof the dividend is paid, but not amount paid or credited as paid on a share in advance of calls shall be treated for the purposes of this Regulation as paid on the share. All dividends shall be apportioned and paid proportionately to the amounts paid or credited as paid on the shares during any portion or portions of the period in respect of which the dividend is paid; but if any share is issued on terms providing that it shall rank for dividend as from a particular date such share shall rank for dividend accordingly.

121. The Directors may deduct from any dividend payable to any Member all sums of money (if any) presently payable by him to the Company on account of calls or otherwise in relation to the shares of the Company.

122. Any General Meeting declaring a dividend or bonus may direct payment of such dividend or bonus wholly or partly by the distribution of specific assets and in particular of paid up shares, debentures or debenture stock of any other Company or in any one or more of such ways, and the Directors shall give effect to such resolution, and where any difficulty arises in regard to such distribution, the Directors may settle the same as they think expedient, and in particular may issue fractional certificates and fix the value for distribution of such specific assets or any part thereof and may determine that cash payments shall be made to any Members upon the footing of the value so fixed in order to adjust the rights of all parties, and may vest any such specific assets in trustees as may seem expedient to the Directors.

123. Any dividend, interest or other moneys payable in cash in respect of shares may be paid by cheque or warrant sent through the post directed to the registered address of the holder or, in the case of joint holders, to the registered address of that one of the joint holders who is first named in the register of Members or to such person and to such address as the holder or joint holders may in writing direct. Every such cheque or warrant shall be made payable to the order of the person to whom it is sent. Any one of two or more joint holders may give effectual receipts for any

dividends, bonuses or other moneys payable in respect of the shares held by them as joint holders.

124.  No dividend shall bear interest against the Company.

## ACCOUNTS

125.  The Directors shall cause proper books of account to be kept with respect to:

(a)  all sums of money received and expended by the Company and the matters in respect of which the receipt and expenditure takes place;

(b)  all sales and purchases of goods by the Company; and

(c)  the assets and liabilities of the Company.

Proper books shall not be deemed to be kept if there are not kept such books of account as are necessary to give a true and fair view of the state of the Company's affairs and to explain its transactions.

126.  The books of account shall be kept at the registered office of the Company, or, subject to section 141(3) of the Law, at such other place or places as the Directors think fit, and shall always be open to the inspection of the Directors.

127.  The Directors shall from time to time determine whether and to what extent and at what times and places and under what conditions or Regulations the accounts and books of the Company or any of them shall be open to the inspection of Members not being Directors and no Member (not being a Director) shall have any right of inspecting any account or book or document of the Company except as conferred by statute or authorised by the Directors or by the Company in General Meeting.

128.  The Directors shall from time to time, in accordance with sections 142, 144 and 151 of the Law, cause to be prepared and to be laid before the Company in General Meeting such profit and loss accounts, balance sheets, group accounts (if any) and reports as are referred to in those sections.

129.  A copy of every balance sheet (including every document required by law to be annexed thereto) which is to be laid before the Company in General Meeting, together with a copy of the auditors' report shall, not less than twenty-one days before the date of the meeting, be sent to every Member of, and every holder of debentures of the Company and to every person registered under Regulation 37. Provided that this Regulation shall not require a copy of those documents to be sent to any person of whose address the Company is not aware or to more than one of the joint holders of any shares or debentures.

## CAPITALISATION OF PROFITS

130.  The Company in General Meeting may upon the recommendation of the Directors resolve that it is desirable to capitalise any part of the amount for the time being standing to the credit of any of the Company's reserve accounts or to the credit of the profit and loss account or otherwise available for distribution, and accordingly that such sum be set free for distribution, amongst the Members who would have been entitled thereto if distributed by way of dividend and in the same proportions on condition that the same be not paid in cash but be applied either in or towards paying

31

up any amounts for the time being unpaid on any shares held by such Members respectively or paying up in full unissued shares or debentures of the Company to be allotted, distributed and credited as fully paid up to and amongst such Members in the proportions aforesaid, or partly in the one way and partly in the other, and the Directors shall give effect to such resolution:

Provided that a share premium account and a capital redemption reserve fund may, for the purposes of this Regulation, only be applied in the paying up of unissued shares to be issued to Members of the Company as fully paid bonus shares.

131. Whenever such a resolution as aforesaid shall have been passed, the Directors shall make all appropriations and applications of the undivided profits resolved to be capitalised thereby, and all allotments and issues of fully paid up shares or debentures, if any, and generally shall do all acts and things required to give effect thereto, with full power to the Directors to make such provisions by the issue of fractional certificates or by payment in cash or otherwise as they think fit for the case of shares or debentures becoming distributable in fractions and also to authorise any person to enter on behalf of all the Members entitled thereto into an agreement with the Company providing for the allotment to them respectively, credited as fully paid up, of any further shares or debentures to which they may be entitled upon such capitalisation, or (as the case may require) for the payment up by the Company on their behalf, by the application thereto of their respective proportions of the profits resolved to be capitalised, of the amounts or any part of the amounts remaining unpaid on their existing shares, and any agreement made under such authority shall be effective and binding on all such Members.

## AUDIT

132. Auditors shall be appointed and their duties regulated in accordance with sections 153 to 156 (both inclusive) of the Law.

## NOTICES

133. A notice may be given by the Company to any Member either personally or by sending it by post, email or facsimile to him or to his registered address. Where a notice is sent by post, service of the notice shall be deemed to be effected, provided that it has been properly mailed, addressed, and posted, at the expiration of 24 hours after same is posted. Where a notice is sent by email or facsimile it shall be deemed to be effected as soon as it is sent, provided there will be the relevant transmission confirmation.

134. A notice may be given by the Company to the joint holders of a share by giving the notice to the joint holder first named in the register of Members in respect of the share.

135. A notice may be given by the Company to the persons entitled to a share in consequence of the death or bankruptcy of a Member by sending it through the post in a prepaid letter addressed to them by name, or by the title of representative of the deceased, or trustee of the bankrupt, or by any like descriptions, at the address, if any, supplied for the purpose by the persons claiming to be so entitled, or (until such an address has been so supplied) by giving the notice in any manner in which the same might have been given if the death or bankruptcy had not occurred.

136. Notice of every General Meeting shall be given in any manner herein-before authorised to:

(a)  every Member except those Members who have not supplied to the Company a registered address for the giving of notices to them;

(b)  every person upon whom the ownership of a share devolves by reason of his being a legal personal representative or a trustee in bankruptcy of a Member where the Member but for his death or bankruptcy would be entitled to receive notice of the meeting; and

(c)  the auditor for the time being of the Company.

No other person shall be entitled to receive notices of General Meetings.

## WINDING UP

137.  If the Company shall be wound up the liquidator may, with the sanction of an extraordinary resolution of the Company and any other sanction required by the Law, divide amongst the Members in specie or kind the whole or any part of the assets of the Company (whether they shall consist of property of the same kind or not) and may for such purpose set such value as he deems fair upon any property to be divided as aforesaid and may determine how such division shall be carried out as between the Members or different classes of Members.  The liquidator may, with the like sanction, vest the whole or any part of such assets in trustees upon such trusts for the benefit of the contributories as the liquidator, with the like sanction, shall think fit, but so that no Member shall be compelled to accept any shares or other securities whereon there is any liability.

## INDEMNITY

138.  Every Director or other officer for the time being of the Company shall be indemnified out of the assets of the Company against any losses or liabilities which he may sustain or incur in or about the execution of his duties including liability incurred by him in defending any proceedings whether civil or criminal in which judgment is given in his favour or in which he is acquitted or in connection with any application under section 383 of the Law in which relief is granted to him by the Court and no Director or officer of the Company shall be liable for any loss, damage or misfortune which may happen to or be incurred by the Company in the execution of the duties of his office or in relation thereto. But this clause shall only have effect insofar as its provisions are not avoided by section 197 of the Law. Ordered by Sp Res. dated 27/1/00 see R15

Add a new Regulation by Sp Resol. dated 27/1/00 see R13 (13a)
Add a new Regulation by Sp Resol dated 27/1/00 see R15 (140)

NAMES, ADDRESSES AND DESCRIPTION OF SUBSCRIBERS

---

ABACUS (CYPRUS) LIMITED

............................................

Limited Liability Company
Elenion Building
2st floor
5 Themistocles Dervis Street
Nicosia – Cyprus
Registration No. 14003

Dated this ....7..day of .....July......... 2005.

Witness to the above signatures:

**GEORGIA KAPSALI**
**Private employee**
**Elenion Building, 2nd floor**
**5 Th Dervis Street**
**1066 Nicosia, Cyprus**

I confirm that I settled the
above Memorandum and Articles of
Association of the Company

Sgd .....................................

**ELENA P. NICOLAIDES**
**LAWYER**
**28 Sopoulis Str. Chandeclair Bld**
**4th Floor, Office No 405**
**Nicosia - Cyprus**

34

# Hardlake Limited

Following a written decision by all members of the above company dated 27 January 2006, in accordance with paragraph 80 of the company's articles of association the following resolution was approved:

## SPECIAL RESOLUTION

1.      **THAT** the Articles of Association of the Company be amended as follows:

A.      By the addition of the following definition in Regulation 1 immediately after the definition of "the secretary":

" Loan Agreement" means a certain facility agreement dated on or about 31 January 2006 as amended varied or supplemented from time to time made between Credit Suisse, London Branch (the "Lender"), Alfa Telecom Limited (the '"Guarantor") and the Company and Hardlake Limited (the "Borrowers") whereby the Lender has agreed to make available to the Borrowers n loan facility in the amount of up to U$D450.000.000."

B.      By the addition of the following Regulation 138A:

" 138A.   Notwithstanding any other provision in the present Regulation, the Company shall not:

(a)     Issue or allot or grant any options over or in respect of, any new shares or debentures or any other securities of any nature in the capital of the Company or do any act would could dilute or affect the investment or equity holding of any Member in the Company except as expressly permitted under the Loan Agreement.

(b)     Recognise, register or accept any Member assigning, transferring or selling or disposing or pledging or encumbering in any way its shareholding interest in the share capital of the Company, other than pursuant to any security interest granted in connection with or under the Loan Agreement.

(c)     Incur any Financial Indebtedness (as defined in the Loan Agreement) except as expressly permitted under the Loan Agreement.

(d)     Declare or pay any dividend and/or distribution under or in respect of any of the shares in share capital of the Company except as expressly permitted pursuant to the Loan Agreement.

By the addition of a new Regulation. 28A:

> **"Notwithstanding anything contained in these Regulations, the directors shall not decline to register any transfer of shares, nor may they suspend registration thereof where such transfer is executed by any bank or institution to whom such shares have been charged or pledged by way of security, or by any nominee of such bank or institution, pursuant to the power of sale under such security, and a certificate by any official of such bank or institution that the shares were so charged or pledged and the transfer was so executed shall be conclusive evidence of such facts".**

D.      By the addition of the following sentence at the beginning of Regulation 5:

> **"Subject to the provisions of Regulation 138A..."**

E.      By the addition of the following sentence at the beginning of Regulation 6:

> **"Subject to the provisions of Regulation I38A..."**

F.      By the addition of the following sentence at the beginning of Regulation 27:

> **"Subject to the provisions of Regulation 138A..."**

G.      By the addition of the following sentence at the beginning of Regulation 29:

> **"Subject to the provisions of Regulation 138A..."**

H.      By the addition of the following sentence at the beginning of Regulation 34:

> **"Subject to the provisions of Regulation 138A..."**

I.      By the addition of the following sentence at the beginning of .Regulation 50:

> **"Subject to the provisions of Regulation 138A..."**

J.      By the addition of the following sentence at the beginning of Regulation 51:

> **"Subject to the provisions of Regulation 138A..."**

K.      By the addition of the following sentence at the beginning of Regulation 86:

> **"Subject to the provisions of Regulation 138A..."**

By the addition of the following sentence at the beginning of Regulation 87:

**"Subject to the provisions of Regulation 138A..."**

M.      By the addition of the following sentence at the beginning of Regulation 116:

**"Subject to the provisions of Regulation 138A..."**

N.      By the insertion of a new Regulation 139:

"Notwithstanding anything contained in the Memorandum of Association of the Company the sole subject of activity of the Company shall be the holding of participants interests in Storm LLC a limited liability company registered in Ukraine as company number 23163325 ("**Storm**"), the exercise of any and all rights and obligations associated with or related to such shareholding and the entry into documents in connection with borrowings from Credit Suisse, London Branch and the lenders from time to time under the Loan Agreement. The Company shall not engage into or carry out. any other business activity of any nature whatsoever."

O.      By the insertion of a new Regulation 140:

"The Company shall at all times exercise all rights it has as a participant in Storm solely In compliance with its obligations pursuant to its borrowing from Credit Suisse, London Branch and the lenders from time to time under the Loan Agreement."

**CertifiedTrue copy**

Sophia Ioannou
For Abacus Secretarial Limited
Secretary