UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

**STORM LLC,**

                          Plaintiff,

               -against-

**TELENOR MOBILE COMMUNICATIONS AS,**

                     Defendant.

------------------------------------------------------------------------X  06-CV 13157 (GEL) (DF)

**TELENOR MOBILE COMMUNICATIONS AS,**

                     Counterclaimant,

               -against-

**STORM LLC,**

                   Counterclaim-Defendant,

               -and-

**ALTIMO HOLDINGS & INVESTMENTS LIMITED
and ALPREN LIMITED**

                   Relief Defendants.

------------------------------------------------------------------------X

## <u>DECLARATION OF SERGII VLASENKO</u>

      I, Sergii Vlasenko, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct:

1.     I am a partner at Magister & Partners Attorneys-at-Law in Kyiv, Ukraine.  I have over 14 years of experience in Ukrainian litigation, and appear regularly before the courts of Ukraine at all levels, from local courts of first instance to the Supreme Court of Ukraine, and in all jurisdictions, including general (civil) courts, commercial courts, and administrative courts.

2.     My practice includes dispute resolution, civil law, commercial (economic) law, tax law, and electoral law.    My litigation experience is extensive; I provide the following as a representative sample:  I represented President Viktor Yuschenko (then one of the candidates running for the Ukrainian presidency) before the Supreme Court of Ukraine in the dispute on the annulment of the results of the presidential elections in 2004; I have acted for private investors in the disputes concerning the privatization of Joint-Stock Company "Kryvorizhstal" and "Nikopol Ferroalloy Plant"; and I have represented "Inter-media" company (a Ukrainian company in the media sector) in a lawsuit on the recognition of its property rights in the share of the capital of a major Ukrainian TV company "Studio 1+1."  My firm also acted for Storm LLC ("Storm") in a number of cases in Ukraine from 2005 to 2006.

3.     I submit this declaration in opposition to the motion for a civil contempt order ("Motion") by Telenor Mobile Communications AS ("Telenor Mobile").  Specifically, I have been asked to comment on the second Declaration of Mr. Oleksiy Didkovskiy, dated March 12, 2007 (the "Second Didkovskiy Declaration" or "Didkovskiy Decl. II") made in support of Motion, which discusses the three actions in Ukraine (the "E & Y Actions") brought by Storm and Alpren Limited ("Alpren") arising out of agreements between Closed Joint Stock Company Kviystar G.S.M. ("Kyivstar") and two Ernst & Young entities.[1]

4.     By way of introduction, I note that Mr. Didkovskiy makes several highly misleading statements concerning whether notice was properly given by either Storm or Alpren to the respondents in the various disputes discussed below.  The same applies to Mr. Didkovskiy's statements concerning Telenor Mobile's arguments in the proceedings as being "procedural" in

---

[1]     Even though I have commented below on all the E & Y Actions, rather than just the action commenced by Storm, I wish to point out that I act only for Storm in this matter.  My observations regarding the actions commenced by other entities are based solely on my review of public records contained in the Second Didkovskiy Declaration and I do not represent those entities.  I understand that Telenor Mobile has argued that Storm acted in concert with other entities in the E & Y Actions.  My declaration does not touch on those matters, other than to note that Storm disputes this contention and I have not seen any evidence of collusion in the filings I have reviewed.

nature. Mr. Didkovskiy also makes several incorrect or erroneous statements of Ukrainian law throughout his declaration, and I will discuss the more substantial ones below. I will address each of these inaccurate statements in turn, in the order they appear in his declaration.

**The First E & Y Action**

5.    Mr. Didkovskiy first discusses a claim filed by Storm on December 21, 2006 against Kyivstar, Limited Liability Company 'Ernst & Young Audit Services' ("E & Y I") and Limited Liability Company "Ernst & Young" ("E & Y II") in the Kyiv City Commercial Court. (That claim will be referred to herein as the "First E & Y Action.") Mr. Didkovskiy states that Storm filed its claim against the respondents "without notice to Telenor Mobile, or, so far as I am aware, any other party." (Didkovskiy Decl. II at ¶ 2.) Storm's statement of claim indicates that it was served on the respondents. (*See* Didkovskiy Decl. II, Exhibit A, at 5.) This service is also reflected in other documents attached to the Second Didkovskiy Declaration. A December 27, 2006 statement filed by Storm in the First E & Y Action notes that it has sent a copy of the statement of claim to the respondents[2]. (*See* Didkovskiy Decl. II, Exhibit H (first document).)

6.    Ukrainian commercial procedure clearly obligates a claimant to send copies of the claim and annexes thereto to the other parties to the lawsuit. (*See* Articles 56 and 57 of the Code of Commercial Procedure of Ukraine, attached hereto as Exhibit A.) Without a proof of such dispatch, a commercial court will return the claim without consideration. (See Article 63 of the Code of Commercial Procedure of Ukraine, attached hereto as Exhibit B.) The chronology of the First E & Y Action indicates that the court commenced proceedings on December 28, 2006, only after it was satisfied that the statement of claim was in compliance with all the requirements of

---

[2]    I note that there is a discrepancy in Telenor Mobile's translation of the Statement of Claim, and that the Ukrainian original document does not appear to mention service of the document on the respondents. Nevertheless, I still note that Ex. H to the Didkovskiy Declaration clearly does mention the service, in both the English version and Ukrainian original.

the legislation in force, including those concerning the evidence of service upon the respondent of the copy of the statement of claim and all the documents attached thereto.

7.    As concerns Telenor Mobile, Storm was under no obligation to give it notice of the proceedings under the rules governing Ukrainian commercial procedure because Telenor Mobile was not a party to the dispute at that point.

8.    Mr. Didkovskiy makes another similarly misleading statement when he asserts that Storm filed a petition for injunctive relief with the Kyiv City Commercial Court on December 21, 2006 without notifying the parties or Telenor Mobile. (Didkovskiy Decl. II at ¶ 3.) Mr. Didkovskiy omits the relevant fact that such petitions for injunctive relief are typically made *ex parte* because the Code of Commercial Procedure of Ukraine does not require notification of the parties about their filing and consideration (See Article 66 of the Code of Commercial Procedure of Ukraine, attached hereto as Exhibit C.). Instead, parties to the action are served with copies of an injunction ruling after the court has ruled on it (See Article 87 of the Code of Commercial Procedure of Ukraine, attached hereto as Exhibit D.) As noted above, Storm's petition for injunctive relief was properly served as an annex to the statement of claim. (Didkovskiy Decl. II Exhibit H (first document)).

9.    Mr. Didkovskiy notes that Telenor Mobile filed a petition on January 19, 2007 to participate in the First E & Y Action and on the same day filed a petition requesting that the court cancel the injunction that it had entered on December 29, 2006 (the "December 29 Injunction"). (Didkovskiy Decl. II at ¶ 7.) Mr. Didkovskiy claims that the petition to cancel the December 29 Injunction was "on procedural grounds." (*Id.*)

10.    A cursory review of the case file shows that Telenor Mobile also invoked substantive grounds in arguing that the December 29 Injunction did not meet the requirements for an injunction under Ukrainian law. In its petition, Telenor Mobile relied on a number of provisions

4

of Ukrainian substantive law—specifically, the Laws on Accounting and Financial Reporting in Ukraine, On Business Entities, On Auditing Activity—which have nothing to do with procedural matters.  Thus, Telenor Mobile made the substantive argument that the December 29 Injunction would cause an illegitimate interference with the business relations and activities of the respondents and it cited substantive provisions of Ukrainian law.  (*See* Petition to Cancel Injunctive Relief, Exhibit F to Didkovskiy Decl., at 2-3.)

11.    I should note that Telenor Mobile's petitions to allow it to participate in the case as a third party without independent claims and to cancel the December 29 Injunction were, as far as I can tell, both filed without notice to any other party in the proceeding.  Telenor Mobile has provided no evidence that it sent notice of these petitions to any other parties.  Furthermore, the decree of the Kyiv City Commercial Court granting both petitions was delivered *ex parte*.  (*See* Exhibit G to Didkovskiy Decl. II at 1.)  I do not see how Mr. Didkovskiy and Telenor Mobile can complain about a lack of notice by Storm regarding other filings in the First E & Y Action when Telenor Mobile itself sought and obtained relief in the same action without notice.

12.    Finally, I note that in the same January 19, 2007 petition, Mr. Didkovskiy argued on behalf of Telenor Mobile that Storm's claim was "in violation of an agreement between Telenor and [Storm] that is the subject of an arbitration proceeding in New York."  (Didkovskiy Decl. II, Exhibit F at 2.)  However, as the case documents show, Storm's claim was filed not against Telenor Mobile, but against the parties to the disputed audit agreement, that is, Kyivstar, E & Y I and E & Y II.  Thus, the parties to the proceedings in that case do not correspond to the  parties to the Shareholders Agreement of 2004 referred to by Telenor Mobile. Further, Storm's claim concerns the invalidity of the audit agreement, which has no relation whatsoever to the Shareholders Agreement. In other words, the subject matter of the audit agreement – the provision of specific audit services to Kyivstar – does not overlap in any way with the subject matter of the Shareholders Agreement. Based on the foregoing, and under Ukrainian procedure,

Storm's claim is subject to the exclusive jurisdiction of the Ukrainian commercial court. Any refusal by the court to consider this claim would constitute a serious violation of the procedural law of Ukraine.

13.      Apparently aware of these circumstances, Telenor Mobile did not move for a dismissal of the litigation proceedings on the basis of the arbitration agreement between itself and Storm. If Telenor Mobile's assertions that Storm's claim violated the arbitration agreement were valid, it should logically have sought a dismissal as the proper relief (See Article 80 of the Code of Commercial Procedure of Ukraine, attached hereto as Exhibit E, and Article 8 of the Law on International Commercial Arbitration, attached hereto as Exhibit F.)  However, Telenor Mobile has not gone so far as request such relief, and chose to remain as a "third party without independent claims" in the First E & Y Action.

**The Second E & Y Action**

14.      The Didkovskiy Second Declaration next describes the claim filed on January 31, 2007, by Alpren against Mr. Vadym Klymenko (Director General of Storm), Kyivstar, Mr. Trond Moe, E & Y I, and E & Y II (the "Second E & Y Action").  As with the First E & Y Action, Mr. Didkovskiy states that Alpren filed its claim against the respondents "without notice to Telenor Mobile, or, so far as I am aware, any other party." (Didkovskiy Decl. II at ¶ 9.)  Once again, this statement is misleading.

15.      As already noted above with respect to the First E & Y Action, no notice was initially provided to Telenor Mobile in the Second E & Y Action because it was not a party to that action when it was initiated.  In addition, the Second E & Y Action brought before the Krasnolutsky City District Court of Lugansk Region, a civil court (as opposed to a commercial court, as with the other E & Y Actions).  According to Article 127 of the Code of Civil Procedure of Ukraine

(attached as Exhibit G hereto), it is the obligation of the court, and not the claimant, to give notice to the respondents of the claim and its consideration.

16.    Mr. Didkovskiy states that the January 31, 2007 petition for injunctive relief filed by Alpren in the Second E & Y Action was "without notice to Telenor Mobile or, so far as I am aware, any other party." (Didkovskiy Decl. II at ¶ 10.) This statement is inaccurate and misleading for the same reasons explained above. Moreover, as noted in the Decree on the Commencement of Proceedings in the Case dated February 6, 2007, a copy of Alpren's petition for injunctive relief was properly served as an annex to the statement of claim. Exhibit N to Didkovskiy Decl. II, at 23 (PACER numbering).

17.    Mr. Didkovskiy notes that Telenor Mobile appealed the injunction that was issued in the Second E & Y Action on January 31, 2007 (the "January 31 Injunction"). However, Mr. Didkovskiy inaccurately claims that the appeal requests the reversal of the January 31 Injunction "on procedural grounds." (Didkovskiy Decl. II at ¶ 13.) As with Telenor Mobile's petition to cancel the First E & Y Injunction, the appeal also invoked substantive grounds concerning the injunction. In its petition, Telenor Mobile relies on provisions of Ukrainian substantive law—specifically, the Laws On Accounting and Financial Reporting in Ukraine, On Business Entities, and On Auditing Activity, which have nothing to do with procedural legislation. Indeed, Telenor Mobile's statement of appeal says in no uncertain terms (with the original text emphasized in bold) that: "We consider that the decree of the Krasnolutsky City Court of Lugansk Region dated January 31, 2007 … on granting injunctive relief, was issued in violation of applicable rules of substantive and procedural law, that the court has failed to fully establish the facts in the case, and, therefore, that such decree should be reversed." (Exhibit M to Didkovskiy Decl., at 2-3 (emphasis added).) Therefore, it is highly misleading for Mr. Didkovskiy to assert that Telenor Mobile's appeal is "on procedural grounds" only.

18.     As a last point, I note that Telenor Mobile's statement of appeal states that Alpren's January 31, 2007 claim "is in violation of an agreement between Telenor and LLC "Storm" that is the subject of an ongoing arbitration proceeding in New York." (*Id.* at 1.) As with the same argument advanced in Telenor's petition to participate in the First E & Y Action, this assertion is unsupported by any arguments or evidence and directly contradicts the Ukrainian rules of procedure. Likewise, Telenor Mobile did not move to permanently stay the litigation in favor of arbitration, as it logically should have if it believed its assertions were well-founded.

**The Third E & Y Action**

19.     Finally, the Didkovskiy Second Declaration describes the claim filed on February 16, 2007, by Alpren against Kyivstar, E & Y I, and E & Y II, in the Kyiv City Commercial Court (the "Third E & Y Action").

20.     Once again, Mr. Didkovskiy makes a misleading statement when he states that Alpren filed its claim "without notice to Telenor Mobile, or, so far as I am aware, any other party." (Second Didkovskiy Decl. at ¶ 15.) Alpren's statement of claim, dated February 16, 2007, shows that it attached "Evidence of the service of copies on the parties." (Exhibit O to Second Didkovskiy Decl. at 5.) Telenor Mobile was not notified because it was not a party to that action.

21.     Mr. Didkovskiy makes the identical statement that no notice was given to the respondents (or Telenor Mobile) in Alpren's petition for injunctive relief with the Kyiv City Commercial Court. (Second Didkovskiy Decl. at ¶ 16.) However, notice was properly given because Alpren's petition for injunctive relief was filed on the same day, February 16, as an annex to Alpren's statement of claim. Indeed, the petition for injunctive relief was attached to the statement of claim itself, as noted in the list of attachments at the end of the latter document. (See Exhibit O Second Didkovskiy Decl. at 5.) As notice was properly given for the statement of claim (as I

noted above), it follows that the parties were properly notified of Alpren's petition for injunctive relief as well. Therefore, Mr. Didkovskiy's various statements regarding notice in the Third E & Y Action are incorrect and misleading.

Executed on April 5, 2007 at Kyiv, Ukraine.

[signed]

_____

Sergii Vlasenko

ОКРУЖНИЙ СУД США
ПІВДЕННИЙ ОКРУГ НЬЮ-ЙОРКУ

------------------------------------------------------------------X
                                                                  :
ТОВ "СТОРМ",                                                       :
                                                                  :
                            Позивач,                              :
                                                                  :
            -проти -                                              :
                                                                  :
ТЕЛЕНОР МОБАЙЛ КОММЮНІКЕЙШНЗ АС                                    :
                                                                  :
                    Відповідач.                                   :
                                                                  :
------------------------------------------------------------------X 06-CV 13157 (GEL) (DF)
ТЕЛЕНОР МОБАЙЛ КОММЮНІКЕЙШНЗ АС                                    :
                                                                  :
                    Зустрічний позивач,                           :
                                                                  :
            -проти-                                               :
                                                                  :
ТОВ "СТОРМ",                                                       :
                                                                  :
            Відповідач за зустрічним позовом :
                                                                  :
            -та-                                                  :
                                                                  :
АЛТІМО ХОЛДІНГС & ІНВЕСТМЕНТС ЛІМІТЕД :
та АЛЬПРЕН ЛІМІТЕД                                                 :
                                                                  :
            Відповідачі за зустрічним позовом :
------------------------------------------------------------------X

## ЗАЯВА СЕРГІЯ ВЛАСЕНКА

Я, Сергій Власенко, усвідомлюючи відповідальність за неправдиві свідчення відповідно до законів США, заявляю, що нижче наведене є правдивим та вірним:

1.      Я є партнером юридичної фірми "Магістр & Партнери", яка знаходиться в Києві, Україна. Мій досвід участі у судових процесах в Україні налічує понад 14 років, і я

регулярно представляю інтереси клієнтів в українських судах усіх рівнів – від місцевих судів першої інстанції до Верховного суду України та в усіх юрисдикціях, включаючи загальні (цивільні) суди, господарські та адміністративні суди.

2.      Моя діяльність включає наступні сфери: вирішення спорів, цивільне право, господарське право, податкове та виборче право. Я маю великий досвід участі в судових процесах. Показовими прикладами моєї професійної діяльності є: представлення інтересів Президента Віктора Ющенка (на той час одного з кандидатів у Президенти України) в спорі про визнання результатів президентських виборів 2004 року недійсними, що розглядався Верховним Судом України; представлення інтересів приватних інвесторів в спорах щодо приватизації Акціонерного товариства "Криворіжсталь" та "Нікопольського заводу феросплавів"; представлення інтересів компанії "Інтер-медіа" (українська компанія в медіа секторі) в судовій справі про визнання прав власності на частку в капіталі великої української телевізійної компанії "Студія 1+1". Моя фірма також надавала юридичні консультації ТОВ "Сторм" ("Сторм") у низці судових справ, що розглядалися в Україні у 2005-2006 роках.

3.      Я подаю цю заяву на заперечення проти клопотання щодо неповаги до суду ("Клопотання") Теленор Мобайл Коммюнікейшнз АС ("Теленор Мобайл"). Зокрема, мене просили прокоментувати другу Заяву пана Олексія Дідковського, датовану 12 березня 2007 року ("Друга Заява Дідковського", або "Заява Дідковського ІІ"), на підтримку Клопотання щодо трьох позовів ("Справи Е & Я"), які подали до українських судів Сторм та Альпрен Лімітед, щодо угод між Закритим акціонерним товариством "Київстар Дж.Ес.Ем." ("Київстар") та двома компаніями Ернст & Янг[1].

---

[1] Незважаючи на те, що нижче я коментую всі справи Е & Я, а не лише справи, ініційовані Стормом, хочу наголосити, що я виступаю у цій справі лише на боці Сторму. Мої висновки щодо справ, ініційованих іншими компаніями, основані виключно на публічно доступних матеріалах, що містяться у Другій Заяві Дідковського, і я не дію в інтересах даних компаній. Як мені відомо, Теленор Мобайл стверджував, що Сторм діяв у справах Е & Я у змові з іншими компаніями Дані питання у моїй заяві не розглядаються у

4.      На початку я хочу зазначити, що Пан Дідковський робить декілька дуже оманливих тверджень щодо того, чи повідомляли Сторм або Альпрен належним чином Відповідачів у різних провадженнях, про які йтиметься далі. Те ж саме стосується і заяв пана Дідковського про те, що аргументи Теленор Мобайл у провадженнях мали "процесуальний" характер. У Заяві пана Дідковського також зроблено кілька невірних або помилкових тверджень щодо положень українського права, найбільш суттєві з яких будуть проаналізовані мною нижче. Я зупинюся на кожному з цих невірних тверджень послідовно, у тому ж порядку, в якому вони слідують у його заяві.

## Перша справа Е & Я

5.      Спершу пан Дідковський розглядає позов, поданий Стормом 21 грудня 2006 року до Господарського суду м. Києва проти Київстара, Товариства з обмеженою відповідальністю "Е & Я Аудиторські Послуги" ("Е & Я I") та Товариства з обмеженою відповідальністю "Е & Я" ("Е & Я II"). (У цьому документі цей позов буде далі названо як "Перша справа Е & Я"). Пан Дідковський стверджує, що Сторм подав свій позов проти Відповідачів *"не повідомивши Теленор Мобайл, або, наскільки мені відомо, будь-яку іншу сторону"*. (Заява Дідковського II, ¶ 2). У Позовній заяві Сторму вказано, що таке повідомлення було надіслано відповідачам. (*Див.* Додаток А до Заяви Дідковського II, стор. 5). Про надання такого повідомлення мова йде також і в інших документах, які було додано до Другої Заяви Дідковського. У заяві, поданій Стормом 27 грудня 2006 року у

---

способ інший, ніж для ствердження, що Сторм заперечує такий зв'язок, а я не зустрічав жодних доказів змови у поданнях, які я переглядав.

Першій справі Е & Я вказано, що він надіслав копію позовної заяви відповідачам.[2] (*Див.* Додаток Н до Заяви Дідковського (перший документ)).

6.     Згідно з правилами українського господарського процесу, позивач зобов'язаний направляти копії позовних заяв та додатків до них іншим сторонам справи. (*Див.* статті 56, 57 Господарського процесуального кодексу України, що додаються до цього документу як Додаток А.) Без доказу такого направлення документів господарський суд повертає позовну заяву без розгляду. (*Див.* статтю 63 Господарського процесуального кодексу України, що додається до цього документу як Додаток В.) Хронологія Першої справи Е & Я вказує на те, що суд відкрив провадження у справі 28 грудня 2006 року тільки після того, як пересвідчився, що позовна заява відповідає вимогам чинного законодавства, у тому числі щодо наявності доказів надсилання відповідачеві копії позовної заяви і доданих до неї документів.

7.     Що стосується Теленор Мобайл, то Сторм не був зобов'язаний повідомляти його про провадження відповідно до вимог українського господарського процесу, тому що Теленор Мобайл не був на той момент стороною у справі.

8.     Пан Дідковський робить також інше подібне оманливе твердження, за яким Сторм 21 грудня 2006 року подав заяву про забезпечення позову до Господарського суду м. Києва без повідомлення сторін або Теленор Мобайл. (Заява Дідковського II, ¶ 3). Пан Дідковський оминув суттєвий факт про те, що такі заяви про забезпечення позову зазвичай подаються без залучення інших учасників процесу, тому що Господарський процесуальний кодекс України не вимагає їх повідомлення про подання і розгляд таких клопотань. (*Див.* статтю 66 Господарського процесуального кодексу України, що додається

---

[2] Я звертаю увагу на те, що переклад позовної заяви, наданий Теленор Мобайл є невірним. В оригіналі цього документа українською мовою не вказано, що документи було надіслано відповідачам. Однак хочу все ж звернути увагу на те, що в Додатку Н до Заяви Дідковського про це чітко вказано, як в англійській версії так і в оригіналі документу українською мовою.

до цього документу як Додаток C.) Натомість, сторони справи отримують копії ухвали про забезпечення позову після того, як суд прийняв рішення щодо цього питання. (*Див.* статтю 87 Господарського процесуального кодексу України, що додається до цього документу як Додаток D.) Як зазначено вище, заяву Сторму про забезпечення позову було належним чином подано у вигляді додатку до позовної заяви. (Додаток H до Заяви Дідковського II (перший документ)).

9.    Пан Дідковський стверджує, що 19 січня 2007 року Теленор Мобайл подав заяву про його залучення до участі у Першій справі E & Я і того ж дня подав заяву про скасування забезпечення позову, яке було прийнято 29 грудня 2006 року ("Забезпечення позову від 29 грудня"). (Заява Дідковського II, ¶ 7). Пан Дідковський заявляє, що заяву про скасування Забезпечення позову від 29 грудня було зроблено з "процедурних підстав". (*там само*).

10.    Поверхневий аналіз матеріалів справи вказує на те, що Теленор Мобайл також посилався на матеріально-правові підстави на підтвердження того, що Забезпечення позову від 29 грудня не відповідало вимогам щодо забезпечення позову за українським законодавством. У своїй заяві Теленор Мобайл посилається на ряд положень матеріального права України, зокрема на такі Закони України, як "Про бухгалтерський облік та фінансову звітність в Україні", "Про господарські товариства", "Про аудиторську діяльність", які не мають ніякого відношення до процедурних питань. Таким чином, Теленор Мобайл подав матеріально-правові аргументи про те, що Забезпечення позову від 29 грудня призведе до незаконного втручання у господарські відносини і діяльність відповідачів, і посилається на положення матеріального права України. (*Див.* Заява про скасування забезпечення позову Додаток F до Заяви Дідковського, стор. 2-3).

11.    Варто зауважити, що обидві заяви Теленор Мобайл про залучення до участі у справі в якості третьої особи без самостійних вимог і про скасування Забезпечення позову від 29

грудня, наскільки я розумію, також були подані без повідомлення будь-якій іншій стороні справи. Теленор Мобайл не надав жодних доказів того, що він відправив повідомлення про подання цих заяв будь-яким іншим сторонам. Більше того, ухвала Господарського суду м. Києва про задоволення обох заяв виносилася *без залучення осіб, які беруть участь у справі*. (*Див.* Додаток G до Заяви Дідковського II, стор. 1). Я не бачу підстав для скарг з боку пана Дідковського та Теленор Мобайл щодо неповідомлення Стормом про подання інших заяв під час Першої судової справи E & Я, коли сам Теленор Мобайл з приводу тієї ж справи подавав до суду заяву та отримав щодо неї ухвалу, не повідомляючи інших сторін.

12.    Нарешті, хочу зауважити, що у тій самій заяві від 19 січня 2007 року пан Дідковський стверджував від імені Теленор Мобайл, що заява Сторму подана "з порушенням угоди між Теленор та [Сторм], що є предметом розгляду арбітражного трибуналу м. Нью-Йорк". (Додаток F до Заяви Дідковського, стор. 2). При цьому з матеріалів справи видно, що Сторм подавав заяву не до Теленора, а до сторін оскаржуваної аудиторської угоди - Київстара, E & Я I та E & Я II. Тобто сторони провадження за цим позовом ніяк не збігаються зі сторонами Угоди між акціонерами 2004 року, на яку посилається Теленор Мобайл. По-друге, позов Сторма стосується недійсності аудиторської угоди, яка не має жодного стосунку до угоди між Стормом та Київстаром. Іншими словами, предмет аудиторської угоди – надання конкретних аудиторських послуг Київстару - ніяк не збігається з предметом Угоди між акціонерами. Виходячи з вищенаведеного, за українським процесуальним правом позов Сторма  розглядається лише в українському господарському суді. Відмова суду від його розгляду буде серйозним порушенням процесуального права України.

13. Напевно усвідомлюючи вищенаведені обставини, Теленор Мобайл не подав клопотання про припинення провадження у зв'язку з наявністю арбітражної угоди між ним та Стормом. Якщо б твердження Теленор Мобайл щодо того, що Сторм порушує арбітражну угоду були обґрунтованими, для Теленор було б логічно подати заяву про припинення провадження, що було б належним захистом. (*Див.* статтю 80 Господарського процесуального кодексу України, статтю 8 Закону України «Про міжнародний комерційний арбітраж», що додаються до цього документу як Додаток E та Додаток F відповідно). Однак, Теленор Мобайл не подав таку заяву, вирішивши залишитися "третьою особою без самостійних вимог" під час Першої судової справи E & Я.

## Друга справа E & Я

14. У своїй Другій Заяві Дідковський далі розглядає позов, поданий Альпрен 31 січня 2007 р. проти Вадима Клименка (Генеральний директор Сторму), Київстара, пана Тронда Мо, E & Я I та E & Я II (Друга справа E &Я). Як і у випадку з Першою справою E & Я, пан Дідковський заявляє, що Альпрен звернувся з позовом проти відповідачів "не повідомивши Теленор Мобайл, або, наскільки мені відомо, будь-яку іншу сторону". (Заява Дідковського, II, ¶ 9). Ця заява, знову ж таки, є оманливою.

15. Як вже зазначалося вище щодо Першої справи E & Я, жодного повідомлення спочатку не було надано Теленор Мобайл під час Другої справи E & Я тому, що він не був стороною цієї справи на момент відкриття провадження. Крім цього, Друга справа E & Я була розпочата у Краснолуцькому міському суді Луганської області, який є цивільним судом (на відміну від господарського суду, як у випадку з іншими справами E & Я). Відповідно до статті 127 Цивільного процесуального кодексу України (що є Додатком G до цієї заяви), повідомлення відповідачів про подання позову та його розгляд – це обов'язок суду, а не позивача.

16.    Пан Дідковський зауважує, що заяву Альпрен про забезпечення позову у Другій справі E & Я від 31 січня 2007 року було подано "не повідомивши Теленор Мобайл, або, наскільки мені відомо, будь-яку іншу сторону". (Заява Дідковського II, ¶ 10). Це твердження є неточним та оманливим з тих самих підстав, що наводилися вище. Не менш важливим є те, що, як зазначено ухвалою про відкриття провадження у справі від 6 лютого 2007 року, копія заяви Альпрен про забезпечення позову була подана належним чином як додаток до позовної заяви. (Додаток N до Заяви Дідковського II, 23 (за нумерацією системи публічного доступу до судових електронних документів PACER)).

17.    Пан Дідковський зазначає, що Теленор Мобайл подав апеляційну скаргу на ухвалу про забезпечення позову, прийняту 31 січня 2007 року ("Забезпечення позову від 31 січня"). Втім, пан Дідковський помилково стверджує, що в апеляційній скарзі йде мова про скасування забезпечення позову від 31 січня "з процедурних підстав" (Заява Дідковського II, ¶ 13). Як і заява Теленор Мобайл про скасування Першого забезпечення позову E & Я, ця апеляційна скарга також містить посилання на матеріальні підстави з приводу забезпечення позову. В своїй заяві Теленор Мобайл посилається на норми українського матеріального права, а саме Закон "Про бухгалтерський облік та фінансову звітність в Україні", Закон "Про господарські товариства", Закон "Про аудиторську діяльність", які не мають нічого спільного з процесуальним законодавством. Дійсно, в апеляційній скарзі Теленор Мобайл недвозначно сказано (з виділенням автентичного тексту жирним шрифтом): "Вважаємо, що ухвала Краснолуцького міського суду Луганської області від 31 січня 2007 року … про забезпечення позову винесена з порушенням норм <u>матеріального</u> та процесуального права, <u>при неповному з'ясуванні судом обставин справи</u>, а, отже, підлягає скасуванню". (Додаток M до Заяви Дідковського, стор. 2-3 (виділення додане). Таким чином, з боку Дідковського дуже оманливим є твердження про те, що заява Теленор Мобайл зроблена лише "на процедурних підставах".

18.    Нарешті, як останній аргумент хочу зазначити, що в апеляційній скарзі Теленор Мобайл мова йде про те, що заява Альпрен від 31 січня 2007 року "порушує угоду між Теленор та ТОВ "Сторм", що є предметом арбітражного процесу в Нью-Йорку». (там само, ст. 1). Як і аргументи, що їх використовував Теленор в своїй Заяві про участь в Першій справі Е & Я, це твердження також не підкріплене жодними доказами чи свідченнями, і прямо суперечить нормам процесуального права України. Подібним чином, Теленор Мобайл не подав клопотання про припинення провадження на підставі наявності арбітражної угоди, що було б логічним кроком з боку Теленор, якщо він вважає власні твердження належним чином обгрунтованими.

### Третя справа Е & Я

19.    Зрештою, Друга Заява Дідковського розглядає позов, поданий Альпрен 16 лютого 2007 року проти Київстара, Е & Я I та Е & Я II до Господарського суду м. Києва (Третя справа Е & Я).

20.    Пан Дідковський ще раз робить оманливе твердження, коли говорить, що Альпрен подав свій позов *"не повідомивши Теленор Мобайл, або, наскільки мені відомо, будь-яку іншу сторону"*. (Друга Заява Дідковського, ¶15). У позовній заяві Альпрен, поданій 16 лютого 2007 року, вказано, що до неї додаються „докази направлення копій сторонам". (Додаток О до Другої Заяви Дідковського, стор. 5). Теленор Мобайл не отримав повідомлення, тому що не був стороною справи.

21.    Пан Дідковський робить аналогічне твердження про ненаправлення повідомлення відповідачам (чи Теленор Мобайл) щодо заяви Альпрен про забезпечення позову, поданої до Господарського суду м. Києва. (Друга Заява Дідковського, ¶ 16). Однак, повідомлення були направлені належним чином, оскільки заява Альпрен про забезпечення позову була

подана того самого дня, 16 лютого, як додаток до позовної заяви. Дійсно, як вказано у переліку додатків у кінці вказаного документу, заява про забезпечення позову була додана до позовної заяви. (Див. Додаток О до Другої Заяви Дідковського, стор. 5). Оскільки (як вказано вище) повідомлення щодо позовної заяви було надане належним чином, то з цього випливає, що сторони були також належним чином повідомлені про заяву Альпрен щодо забезпечення позову. Таким чином численні заяви пана Дідковського відносно повідомлення у Третій справі Е & Я є неправдивими та такими, що вводять в оману.

Вчинено 5 квітня 2007 року у м. Києві, Україна.

Сергій Власенко

**AFFIDAVIT**

I, Viktoriya Podvorchanska, declare herewith that I am certified translator of English language acting according to diploma KB № 28396118 issued on January 31, 2006 by Kyiv National Taras Shevchenko University, Institute of International Relations, fluent in both English and Ukrainian. I declare further that the translations of the attached documents from Ukrainian into English were prepared by me personally, that they are correct and correspond to the originals in Ukrainian.

On this fifth day of April,
two thousand and seven, city of Kyiv

Signature                                     Viktoriya Podvorchanska

**Table of Exhibits**

**Перелік додатків**

**Exhibit A.**    Articles 56, 57 of the Code of Commercial Procedure of Ukraine
**Додаток A.**    Статті 56, 57 Господарського процесуального кодексу України

**Exhibit B.**    Article 63 of the Code of Commercial Procedure of Ukraine
**Додаток B.**    Стаття 63 Господарського процесуального кодексу України

**Exhibit C.**    Article 66 of the Code of Commercial Procedure of Ukraine
**Додаток C.**    Стаття 66 Господарського процесуального кодексу України

**Exhibit D.**    Article 87 of the Code of Commercial Procedure of Ukraine
**Додаток D.**    Стаття 87 Господарського процесуального кодексу України

**Exhibit E.**    Article 80 of the Code of Commercial Procedure of Ukraine
**Додаток E.**    Стаття 80 Господарського процесуального кодексу України,

**Exhibit F.**    Article 8 of the Law of Ukraine on International Commercial Arbitration
**Додаток F.**    Стаття 8 Закону України «Про міжнародний комерційний арбітраж»

**Exhibit G.**    Article 127 of the Code of Civil Procedure of Ukraine
**Додаток G.**    Стаття 127 Цивільного процесуального кодексу України

# EXHIBIT A

# ДОДАТОК А



### CODE OF COMMERCIAL PROCEDURE OF UKRAINE
Dated November 6, 1991
N 1798-XII

[extract]

**Article 56. Service of a copy of the statement of claim with documents attached**

Claimant, prosecutor or his deputy shall be obliged, when submitting the statement of claim, to serve the parties with a copy of the statement of claim with documents attached, if the parties do not possess these documents.

Claimant shall be under the same obligation if the commercial court includes another respondent into the proceeding or substitutes the improper respondent.

(As amended by the Law of Ukraine
of 13 May 1997 N 251/97-BP)

**Article 57. Documents to be attached to the statement of claim**

Statement of claim shall be accompanied with the documents confirming:

1) that the measures for pretrial settlement have been taken as provided for by Article 5 of this Code as regards each respondent (in disputes arising out of conclusion, amendment or termination of agreement, - accordingly the agreement, draft agreement, letter that contains request to conclude, amend or terminate the agreement, information about offers of one party and about their due consideration, reply of the other party if received, as well as other documents; in disputes arising out of execution of agreements and other grounds, - a copy of request, proof of its sending to respondent, a copy of reply to the request if such reply is received);

2) that a copy of the statement of claim and documents attached has been sent to respondent;

3) that the court duty has been duly paid;

$3^1$) that a fee for informational and technical support of the court proceedings have been paid;

4) grounds in support of claim.

Statement of claim for invalidation of an act shall also be accompanied with a copy of the act in dispute or a certified excerpt from it.

Statement of claim, signed by claimant's representative, shall be accompanied with a power of attorney or another document certifying the authority of the claimant's representative.

(As amended and supplemented by the Laws
of Ukraine of 17 May 2001 N 2413-III,
of 21 June 2001 N 2539-III)

[…]



# ГОСПОДАРСЬКИЙ ПРОЦЕСУАЛЬНИЙ КОДЕКС УКРАЇНИ
6 листопада 1991 року
N 1798-XII

[витяг]

### Стаття 56. Надсилання копії позовної заяви і доданих до неї документів

Позивач, прокурор чи його заступник зобов'язані при поданні позову надіслати сторонам копії позовної заяви та доданих до неї документів, якщо цих документів у сторін немає.

Такий самий обов'язок покладається на позивача у разі залучення господарським судом до участі у справі іншого відповідача, заміни господарським судом неналежного відповідача.

(Із змінами, внесеними згідно із
Законом України від 13.05.97 р. N 251/97-ВР)

### Стаття 57. Документи, що додаються до позовної заяви

До позовної заяви додаються документи, які підтверджують:

1) вжиття заходів досудового врегулювання господарського спору у випадках, передбачених статтею 5 цього Кодексу, з кожним із відповідачів (у спорах, що виникають при укладанні, зміні та розірванні договорів, - відповідно договір, проект договору, лист, який містить вимогу про укладання, зміну чи розірвання договору, відомості про пропозиції однієї сторони і розгляд їх у встановленому порядку, відповідь другої сторони, якщо її одержано, та інші документи; у спорах, що виникають при виконанні договорів та з інших підстав, - копія претензії, докази її надсилання відповідачу, копія відповіді на претензію, якщо відповідь одержано);

2) відправлення відповідачеві копії позовної заяви і доданих до неї документів;

3) сплату державного мита у встановлених порядку і розмірі;

31) сплату витрат на інформаційно-технічне забезпечення судового процесу;

4) обставини, на яких ґрунтуються позовні вимоги.

До заяви про визнання акта недійсним додається також копія оспорюваного акта або засвідчений витяг з нього.

До позовної заяви, підписаної представником позивача, додається довіреність чи інший документ, що підтверджує повноваження представника позивача.

(Із змінами і доповненнями, внесеними згідно із
законами України від 17.05.2001 р. N 2413-III,
від 21.06.2001 р. N 2539-III)

[...]

# EXHIBIT B

# ДОДАТОК B



## CODE OF COMMERCIAL PROCEDURE OF UKRAINE
Dated November 6, 1991
N 1798-XII

[extract]

### Article 63. Return of the statement of claim

Judge returns the statement of claim and the attached documents without consideration if:

1) the statement of claim is signed by the person that has no right to sign it, or by the person whose position is not indicated;

2) the statement of claim does not indicate complete names of the parties, their mailing address;

3) the statement of claim does not provide the circumstances upon which the claim is based, evidence, that proves circumstances described in the claim, legitimate calculation of the claimed or disputed amount;

4) no evidence is submitted that the court duty is paid in the amount and according to procedure as stipulated;

5) there is a violation of rules on claims consolidation or if several claims against one or several respondents are consolidated in one statement of claim and their joined consideration prevents the determination of parties' rights and relations or will sufficiently complicate resolution of the dispute;

6) no evidence submitted that the copy of the statement of claim and attached documents have been served to the respondent;

7) excluded

8) excluded

9) the claimant filed a petition on the settlement of the dispute before the ruling on initiation of the proceedings in a case is rendered;

10) no evidence submitted that the fee for informational and technical support of the court proceedings are paid.

Judge returns the statement of claim no later than in five days from the day of its receipt, rendering a correspondent ruling. The ruling on the return of the statement of claim may be appealed.

Return of the statement of claim does not prevent its repetitive submission to the commercial court on general bases upon the elimination of made violations.

(As amended and supplemented by the Laws of Ukraine
of 13.05.97 N 251/97-BP, of 17.05.2001 N 2413-III,
of 21.06.2001 N 2539-III, of 23.06.2005 N 2705-IV)

[…]



## ГОСПОДАРСЬКИЙ ПРОЦЕСУАЛЬНИЙ КОДЕКС УКРАЇНИ
6 листопада 1991 року
N 1798-XII

[витяг]

**Стаття 63. Повернення позовної заяви**

Суддя повертає позовну заяву і додані до неї документи без розгляду, якщо:

1) позовну заяву підписано особою, яка не має права її підписувати, або особою, посадове становище якої не вказано;

2) у позовній заяві не вказано повного найменування сторін, їх поштових адрес;

3) у позовній заяві не вказано обставин, на яких ґрунтується позовна вимога, доказів, що підтверджують викладені в заяві обставини, обгрунтований розрахунок стягуваної чи оспорюваної суми;

4) не подано доказів сплати державного мита у встановлених порядку та розмірі;

5) порушено правила поєднання вимог або об'єднано в одній позовній заяві кілька вимог до одного чи кількох відповідачів і сумісний розгляд цих вимог перешкоджатиме з'ясуванню прав і взаємовідносин сторін чи суттєво утруднить вирішення спору;

6) не подано доказів надсилання відповідачеві копії позовної заяви і доданих до неї документів;

7) виключено

8) виключено

9) до винесення ухвали про порушення провадження у справі від позивача надійшла заява про врегулювання спору;

10) не подано доказів сплати витрат на інформаційно-технічне забезпечення судового процесу.

Суддя повертає позовну заяву не пізніше п'яти днів з дня її надходження, про що виносить ухвалу. Ухвалу про повернення позовної заяви може бути оскаржено.

Повернення позовної заяви не перешкоджає повторному зверненню з нею до господарського суду в загальному порядку після усунення допущеного порушення.

(Із змінами і доповненнями, внесеними згідно із законами України
від 13.05.97 р. N 251/97-ВР, від 17.05.2001 р. N 2413-III,
від 21.06.2001 р. N 2539-III, від 23.06.2005 р. N 2705-IV)

[...]

# EXHIBIT C

# ДОДАТОК C



**CODE OF COMMERCIAL PROCEDURE OF UKRAINE**
Dated November 6, 1991
N 1798-XII

[extract]

**Article 66. Grounds for temporary injunctions**

Commercial court may apply temporary injunction upon an application of the party, prosecutor or deputy prosecutor that filed the claim, or on its own discretion. Temporary injunction may be applied at any stage of the proceedings of a case if non-application of the temporary injunction measures may complicate enforcement of judgment of commercial court or make it impossible.

[…]



**ГОСПОДАРСЬКИЙ ПРОЦЕСУАЛЬНИЙ КОДЕКС УКРАЇНИ**
6 листопада 1991 року
N 1798-XII

[витяг]

**Стаття 66. Підстави забезпечення позову**

Господарський суд за заявою сторони, прокурора чи його заступника, який подав позов, або з своєї ініціативи має право вжити заходів до забезпечення позову. Забезпечення позову допускається в будь-якій стадії провадження у справі, якщо невжиття таких заходів може утруднити чи зробити неможливим виконання рішення господарського суду.

[...]

# EXHIBIT D

# ДОДАТОК D



**CODE OF COMMERCIAL PROCEDURE OF UKRAINE**
Dated November 6, 1991
N 1798-XII

[extract]

**Article 87. Service of decision and ruling**

Decision and ruling shall be served upon the parties, prosecutor that participated in the court proceedings, third parties not later than five days after their adoption or handed to them against receipt, unless otherwise stipulated by this Code.

[…]



**ГОСПОДАРСЬКИЙ ПРОЦЕСУАЛЬНИЙ КОДЕКС УКРАЇНИ**
6 листопада 1991 року
N 1798-XII
[витяг]

**Стаття 87. Розсилання рішень та ухвал**

Рішення та ухвали розсилаються сторонам, прокурору, який брав участь в судовому процесі, третім особам не пізніше п'яти днів після їх прийняття або вручаються їм під розписку, якщо інше не передбачено цим Кодексом.

[...]

# EXHIBIT E

# ДОДАТОК Е



**CODE OF COMMERCIAL PROCEDURE OF UKRAINE**
Dated November 6, 1991
N 1798-XII

[extract]

**Article 80. Termination of the proceedings in a case**

Commercial court shall terminate proceedings in a case if:

1) dispute is not subject to consideration by the commercial courts of Ukraine;

1-1) there is no subject matter of the dispute;

2) there is a decision of commercial court or other body which ruled upon the dispute between the same parties, regarding the same subject matter and on same grounds within its jurisdiction;

3) excluded

4) plaintiff has waived a claim and the waiver is accepted by the commercial court;

5) parties have concluded an agreement on submission of the dispute to arbitration;

6) enterprise or organization that is the party to the case is liquidated;

7) parties have concluded the amicable settlement agreement and it is approved by the commercial court.

If the proceedings in a case are terminated the dispute between the same parties on the same subject and on the same grounds shall not be submitted to the commercial court again.

The proceedings in a case shall be terminated by a ruling that shall address the issues of costs distribution between the parties, repayment of the court fee from the budget; it may as well address the issues of payment of fines, provided for by clauses 4 and 5 of paragraph 2 of Article 83 of this Code.

The ruling on the suspension of the proceedings in a case may be appealed.

[...]



**ГОСПОДАРСЬКИЙ ПРОЦЕСУАЛЬНИЙ КОДЕКС УКРАЇНИ**
6 листопада 1991 року
N 1798-XII

[витяг]

**Стаття 80. Припинення провадження у справі**

Господарський суд припиняє провадження у справі, якщо:

1) спір не підлягає вирішенню в господарських судах України;

1-1) відсутній предмет спору;

2) є рішення господарського суду або іншого органу, який в межах своєї компетенції вирішив господарський спір між тими ж сторонами, про той же предмет і з тих же підстав;

3) виключено

4) позивач відмовився від позову і відмову прийнято господарським судом;

5) сторони уклали угоду про передачу даного спору на вирішення третейського суду;

6) підприємство чи організацію, які є сторонами, ліквідовано;

7) сторони уклали мирову угоду і вона затверджена господарським судом.

У випадках припинення провадження у справі повторне звернення до господарського суду зі спору між тими ж сторонами, про той же предмет і з тих же підстав не допускається.

Про припинення провадження у справі виноситься ухвала, в якій мають бути вирішені питання про розподіл між сторонами господарських витрат, про повернення державного мита з бюджету, а також можуть бути розв'язані питання про стягнення штрафів, передбачених у пунктах 4 і 5 частини другої статті 83 цього Кодексу.

Ухвалу про припинення провадження у справі може бути оскаржено.

[...]

# EXHIBIT F

# ДОДАТОК F



**LAW OF UKRAINE**
**ON INTERNATIONAL COMMERCIAL ARBITRATION**
Dated February 24, 1994
N 4002-XII

[extract]

**Article 8. Arbitration agreement and substantive claim before court**

1. A court before which a claim is brought in a matter which is the subject of an arbitration agreement shall, if a party so requests not later than when submitting his first statement on the substance of the dispute, refer the parties to arbitration unless it finds that the agreement is null and void, inoperative or incapable of being performed.

2. Where a claim referred to in paragraph 1 of this article has been brought, arbitral proceedings may nevertheless be commenced or continued, and an award may be made, while the issue is pending before the court.

[…]



**ЗАКОН УКРАЇНИ**
**ПРО МІЖНАРОДНИЙ КОМЕРЦІЙНИЙ АРБІТРАЖ**
24 лютого 1994 року
N 4002-XII

[витяг]

**Стаття 8. Арбітражна угода та подання позову щодо суті спору в суді**

1. Суд, до якого подано позов у питанні, що є предметом арбітражної угоди, повинен, якщо будь-яка із сторін попросить про це не пізніше подання своєї першої заяви щодо суті спору, припинити провадження у справі і направити сторони до арбітражу, якщо не визнає, що ця арбітражна угода є недійсною, втратила чинність або не може бути виконана.

2. У разі подання позову, зазначеного в пункті 1 цієї статті, арбітражний розгляд проте може бути розпочато або продовжено і арбітражне рішення може бути винесено, поки сперечання про підсудність чекають розв'язання в суді.

[...]

# EXHIBIT G

# ДОДАТОК G



## CODE OF CIVIL PROCEDURE OF UKRAINE
Dated March 18, 2004
N 1618-IV

[extract]

**Article 127. Service of copies of ruling on commencement of proceedings in the case, the statement of claim and documents annexed thereto**

1. Upon commencement of proceedings in the case the court shall immediately serve the copies of ruling on commencement of proceedings in the case to the persons, participating in the case.

2. Along with ruling on commencement of proceedings in the case, copies of the statement of claim and documents annexed thereto shall be sent to respondent, and a copy of the statement of claim shall be sent to the third person.

[...]



## ЦИВІЛЬНИЙ ПРОЦЕСУАЛЬНИЙ КОДЕКС УКРАЇНИ

18 березня 2004 року
N 1618-IV

[витяг]

**Стаття 127. Надіслання копії ухвали про відкриття провадження у справі, копії позовної заяви та доданих до неї документів**

1. Після відкриття провадження у справі суд невідкладно надсилає особам, які беруть участь у справі, копії ухвали про відкриття провадження у справі.

2. Одночасно з копією ухвали про відкриття провадження у справі відповідачу надсилається копія позовної заяви з копіями доданих до неї документів, а третій особі - копія позовної заяви.

[…]

**AFFIDAVIT**

I, Viktoriya Podvorchanska, declare herewith that I am certified translator of English language acting according to diploma KB № 28396118 issued on January 31, 2006 by Kyiv National Taras Shevchenko University, Institute of International Relations, fluent in both English and Ukrainian. I declare further that the translations of the attached documents from Ukrainian into English were prepared by me personally, that they are correct and correspond to the originals in Ukrainian.

On this fifth day of April,
two thousand and seven, city of Kyiv

**Signature**                                            **Viktoriya Podvorchanska**