UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STORM LLC, | |
| Plaintiff, | |
| vs. | |
| TELENOR MOBILE COMMUNICATIONS AS, | |
| Defendant, | |
| | 06-CV13157 (GEL) (DF) |
| TELENOR MOBILE COMMUNICATIONS AS, | ECF ACTION |
| Counterclaimant, | |
| vs. | |
| STORM LLC, | |
| Counterclaimant-Defendant, | |
| and | |
| ALTIMO HOLDINGS & INVESTMENTS LIMITED and ALPREN LIMITED | |
| Relief Defendants. | |

**MEMORANDUM OF ALTIMO HOLDINGS & INVESTMENTS LIMITED AND ALPREN LIMITED IN OPPOSITION TO TELENOR MOBILE'S MOTION FOR AN ORDER OF CONTEMPT**

# Table of Contents

Page

Table of Authorities ........................................................................................................ ii

Preliminary Statement ...................................................................................................... 1

Argument ......................................................................................................................... 2

I.    Altimo and Alpren Did Not Violate the December 18 Order. ............................... 2

    A.    Alpren Sought Enforcement of the December 1 Injunction on December 4, Fourteen Days Before the December 18 Order. ................... 4

    B.    The December 18 Order Did Not Require Altimo or Alpren to Withdraw the Lawsuit or Stop the Ukraine Legal System from Carrying Out Enforcement Proceedings Already in Progress. ................ 5

    C.    The Claims at Issue in the Ernst & Young Litigations Were Not and Are Not at Issue in the New York Arbitration. ................................. 8

        1.    Storm's December 21, 2006 Suit ............................................ 8

        2.    Alpren's Suits Against Ernst & Young ................................. 9

II.    The Court Has No Subject Matter Jurisdiction. ................................................. 11

Conclusion ...................................................................................................................... 18

i

# Table of Authorities

## Cases

*A.V. by Versace, Inc. v. Gianni Versace, S.p.A.*,
  87 F. Supp. 2d 281 (S.D.N.Y. 2000)...........................................................................3, 8

*Acquaire v. Can. Dry Bottling*,
  906 F. Supp. 819 (E.D.N.Y. 1995) .................................................................................4

*Air France v. Saks*,
  470 U.S. 392 (1985).......................................................................................................14

*Banco De Santander Central Hispano, S.A. v. Consalvi International Inc.*,
  425 F. Supp. 2d 421 (S.D.N.Y. 2006)............................................................................15

*Benjamins v. British European Airways*,
  572 F.2d 913 (2d Cir. 1978)...........................................................................................14

*Bergesen v. Joseph Muller Corp.*,
  710 F.2d 928 (2d Cir. 1983)...........................................................................................13

*Borden, Inc. v. Meiji Milk Prods. Co.*,
  919 F.2d 822 (2d Cir. 1990).....................................................................................13, 17

*Celulosa Del Pacifico S.A. v. A. Ahlstrom Corp.*,
  No. 95 Civ. 9586 (RPP), 1996 WL 103826 (S.D.N.Y. Mar. 11, 1996)..........................15

*Czarina, L.L.C. v. W.F. Poe Syndicate*,
  358 F.3d 1286 (11th Cir. 2004) ......................................................................................13

*D.D. ex rel. V.D. v. N.Y. City Bd. of Educ.*,
  465 F.3d 503 (2d Cir. 2006).............................................................................................7

*Downing v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  725 F.2d 192 (2d Cir. 1984)...........................................................................................17

*Ehrlich v. American Airlines, Inc.*,
  360 F.3d 366 (2d Cir. 2004)...........................................................................................14

*Emery Air Freight Corp. v. Local Union 295*,
  356 F. Supp. 974 (E.D.N.Y. 1972) .................................................................................11

*Fair Hous. in Huntington Comm. v. Town of Huntington*,
  316 F.3d 357 (2d Cir. 2003).............................................................................................7

*Fletcher v. Atex, Inc.*,
  68 F.3d 1451 (2d Cir. 1995).............................................................................................1

*Gerling Global Reinsurance Corp. v. Sompo Japan Ins. Co.*,
348 F. Supp. 2d 102 (S.D.N.Y. 2004) ................................................................................ 15

*Gerling-Konzern Gen. Ins. Co.-U.K. Branch v. Noble Assurance Co.*,
No. 2:06-CV-76, 2006 WL 3251491 (D. Vt. Nov. 1, 2006) ................................................. 16

*Gilman v. BHC Sec., Inc.*,
104 F.3d 1418 (2d Cir. 1997) ............................................................................................ 12

*Haskell v. Kan. Natural Gas Co.*,
224 U.S. 217 (1912) .............................................................................................................. 4

*Heyman v. Kline*,
456 F.2d 123 (2d Cir. 1972) ................................................................................................. 2

*HSMV Corp. v. ADI Ltd.*,
72 F. Supp. 2d 1122 (C.D. Cal. 1999) ................................................................................ 15

*In re Joint Eastern & Southern Dist. Asbestos Litig.*,
14 F.3d 726 (2d Cir. 1993) ................................................................................................. 12

*Indus. Risk Insurers v. M.A.N. Gutehoffnungshütte GmbH*,
141 F.3d 1434 (11th Cir. 1998) ......................................................................................... 15

*Int'l Shipping Co. v. Hydra Offshore, Inc.*,
875 F.2d 388 (2d Cir. 1989) ............................................................................................... 14

*Jacada (Eur.) Ltd. v. Int'l Mktg. Strategies, Inc.*,
401 F.3d 701 (6th Cir. 2005) ............................................................................................. 16

*Jacobs v. USA Track & Field*,
374 F.3d 85 (2d Cir. 2004) ................................................................................................. 17

*Jolly v. Coughlin*,
76 F.3d 468 (2d Cir. 1996) ................................................................................................... 7

*JSC Surgutneftegaz v. President & Fellows of Harvard Coll.*,
No. 04 Civ. 6069 (RCC), 2005 WL 1863676 (S.D.N.Y. Aug. 3, 2005) ............................... 16

*LAIF X SPRL v. Axtel, S.A. De C.V.*,
390 F.3d 194 (2d Cir. 2004) ............................................................................................... 17

*Lander Co. v. MMP Invs., Inc.*,
107 F.3d 476 (7th Cir. 1997) ............................................................................................. 15

*Lewis v. Casey*,
518 U.S. 343 (1996) ........................................................................................................... 15

*Lupo v. Human Affairs Int'l, Inc.*,
    28 F.3d 269 (2d Cir. 1994)...................................................................................... 12

*Marine Midland Bank, N.A. v. Miller*,
    664 F.2d 899 (2d Cir. 1981)...................................................................................... 1

*PaineWebber, Inc. v. Faragalli*,
    61 F.3d 1063 (3d Cir. 1995)...................................................................................... 17

*Pan Atl. Group, Inc. v. Republic Ins. Co.*,
    878 F. Supp. 630 (S.D.N.Y. 1995) ......................................................................... 12

*Parsons & Whittemore Overseas Co. v. Societe Generale de L'Industrie du Papier*,
    508 F.2d 969 (2d Cir. 1974)...................................................................................... 15

*Perez v. Danbury Hosp.*,
    347 F.3d 419 (2d Cir. 2003)...................................................................................... 3

*Prayze FM v. FCC*,
    214 F.3d 245 (2d Cir. 2000)...................................................................................... 11

*Republic of Ecuador v. ChevronTexaco Corp.*,
    376 F. Supp. 2d 334 (S.D.N.Y. 2005)..................................................................... 16

*Scherk v. Alberto-Culver Co.*,
    417 U.S. 506 (1974).................................................................................................. 13

*Schmitz v. St. Regis Paper Co.*,
    758 F. Supp. 922 (S.D.N.Y. 1991) ......................................................................... 3

*Shamrock Oil & Gas Corp. v. Sheets*,
    313 U.S. 100 (1941).................................................................................................. 12

*Shenzhen Nan Da Indus. & Trade United Co. v. FM Int'l Ltd.*,
    1992 H.K. Law Digest C6 (Sup. Ct. H.K. Mar. 2, 1991) ...................................... 14

*Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*,
    450 F.3d 100 (2d Cir. 2006)...................................................................................... 15

*Tap Publ'ns, Inc. v. Chinese Yellow Pages, Inc.*,
    No. 95 Civ. 5043 (JGK), 1996 WL 509718 (S.D.N.Y. Sept. 9, 1996)............... 3, 4, 11

*Tesoro Petroleum Corp. v. Asamera (S. Sumatra) Ltd.*,
    798 F. Supp. 400 (W.D. Tex. 1992).......................................................................... 15

*United States v. United Mine Workers of America*,
    330 U.S. 258 (1947).................................................................................................. 2

iv

*Vantico Holdings S.A. v. Apollo Mgmt.,*
    247 F. Supp. 2d 437 (S.D.N.Y. 2003)............................................................. 7

*Vasura v. Acands,*
    84 F. Supp. 2d 531 (S.D.N.Y. 2000)............................................................ 17

*Warner Bros., Inc. v. Gay Toys, Inc.,*
    598 F. Supp. 424 (S.D.N.Y. 1984) ............................................................... 1

*Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.,*
    126 F.3d 15 (2d Cir. 1997).................................................................. 13, 14

## Statutes and Rule

9 U.S.C. § 203 ......................................................................................... 12, 13, 15

9 U.S.C. § 205 ......................................................................................... 12, 15, 16

9 U.S.C. § 206 ............................................................................................. 12, 17

9 U.S.C. § 207 ............................................................................................. 12, 17

Fed. R. Civ. P. 60 ............................................................................................... 12

## Other Authorities

Convention on the Recognition and Enforcement of Foreign Arbitral Awards of 1958, 21 U.S.T.
    2517, 330 U.N.T.S. 3 ...................................................................... 12, 13

Alan Scott Rau, *The New York Convention in American Courts*, 7 Am. Rev. Int'l Arb. 213
    (1996).................................................................................................... 14

Albert Jan van den Berg, *The New York Arbitration Convention of 1958: Towards a Uniform
    Judicial Interpretation* (1981)............................................................... 14

Leonard V. Quigley *Accession by the, United States to the United Nations Convention on the
    Recognition and Enforcement of Foreign Arbitral Awards*, 70 Yale L.J. 1049 (1961) ......... 14

W. Laurence Craig, *Some Trends and Developments in the Laws and Practice of International
    Commercial Arbitration*, 30 Tex. Int'l L.J. 1 (1995)............................ 14

"Relief Defendants" Altimo Holdings & Investments Limited ("Altimo") and Alpren Limited ("Alpren") respectfully submit this memorandum of law in opposition to the motion by Counterclaimant Telenor Mobile Communications AS ("Telenor") for an order holding them in contempt, allegedly for violating the Court's December 18 injunction (the "December 18 Order").

### Preliminary Statement

Neither Altimo nor Alpren violated this Court's Order. On their face, Telenor's papers show that there was no violation. Telenor cites four actions: Alpren's application, filed two weeks before the December 18 Order (and three days before the Court's temporary restraining order), for enforcement of the December 1 Ukraine Order, and Storm filing suit in Ukraine on December 21, 2006 and Alpren filing suit in Ukraine on January 31 and February 16, 2007, concerning contracts with Ernst & Young that were not part of the arbitration on December 18 and are still not part of the arbitration.[1] Moreover, though Telenor now contends that its contempt motion is of the greatest urgency, it did not file the motion until nearly six weeks after the January 31 filing and five weeks after the receipt of the notice of fine, four weeks after the receipt by the arbitrators of notice, and more than three weeks after the February 16 filing.

---

[1] Telenor does not assert that any act by Altimo was contumacious. The Court could hold Altimo liable for Alpren's alleged violations only if it could pierce Alpren's corporate veil. *See Warner Bros., Inc. v. Gay Toys, Inc.*, 598 F. Supp. 424, 429-30 (S.D.N.Y. 1984). The law of the place of incorporation, here Cyprus, governs veil-piercing for liability. *See Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995). As the Court noted in its December 15 Opinion and Order (Opinion and Order, dated December 15, 2006 ("12/15 Op.") at 25 n.8), the standard for demonstrating alter-ego status for liability under New York law is higher than that for demonstrating alter-ego status for personal jurisdiction. *See Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981).

In addition, because the Court did not have subject matter jurisdiction when it entered the December 18 Order, the injunction cannot stand and no contempt proceeding lies.[2]

### Argument

### I.    Altimo and Alpren Did Not Violate the December 18 Order.

On December 15, 2006, the Court granted Telenor's motion for a preliminary anti-suit injunction against Storm, Altimo and Alpren, enjoining them from "bringing or attempting to cause the enforcement of any legal action in the Ukraine that would disrupt, delay or hinder in any way the arbitration proceedings between Telenor and Storm in New York". (12/15 Op. at 27.) Telenor does not allege that Altimo or Alpren violated the December 15 Order. (*See* Memorandum in Support of Counterclaimant's Motion to Hold Counterclaim-Defendant and Relief Defendants in Contempt ("Tel Mem.") 1.)

On December 18, 2006, over Altimo and Alpren's objections, the Court signed Telenor's proposed order, granting an injunction against Altimo, Alpren and Storm beyond the scope of what Telenor originally sought and beyond the scope of the Court's December 15 Opinion and Order. (Order, dated December 18, 2006 ("12/18 Order") at 1-2.) The December 18 Order enjoined Altimo, Alpren and Storm from

> "(a) commencing, prosecuting, enforcing, causing the enforcement, attempting to enforce or cause the enforcement; or (b) allowing, or failing to take steps to prevent, any other person, official or entity from enforcing or attempting to enforce" any Ukraine order "that would disrupt, delay or hinder, in any manner whatsoever, the

---

[2] Moreover, a finding of civil contempt will not stand if the injunction on which it depends is found to have been erroneously entered. *See United States v. United Mine Workers of America*, 330 U.S. 258, 294-95 (1947); *Heyman v. Kline*, 456 F.2d 123, 131 (2d Cir. 1972). As the Court knows, Altimo and Alpren believe the December 18 Order was erroneously entered and have appealed it to the Second Circuit. We reassert that proposition here as an alternative reason that the contempt motion should be rejected or stayed until the Second Circuit will have ruled.

arbitration proceedings between Telenor Mobile and Storm". (*Id.* at 2.)

Telenor claims that Altimo and Alpren have "taken affirmative steps to cause a Ukrainian order to be enforced against Telenor" and "have failed to take any steps to prevent the enforcement of the Ukrainian order that seeks to disrupt the New York arbitration proceeding". (Tel. Mem. 1.) Altimo and Alpren did not violate the December 18 Order.

The party seeking contempt bears the burden of demonstrating a violation by clear and convincing evidence. *A.V. by Versace, Inc. v. Gianni Versace, S.p.A.*, 87 F. Supp. 2d 281, 289 (S.D.N.Y. 2000); *Schmitz v. St. Regis Paper Co.*, 758 F. Supp. 922, 925-27 (S.D.N.Y. 1991). Mere assertions and assumptions do not meet this standard. *See Tap Publ'ns, Inc. v. Chinese Yellow Pages, Inc.*, No. 95 Civ. 5043 (JGK), 1996 WL 509718, at *2 (S.D.N.Y. Sept. 9, 1996). "[W]here there is a fair ground of doubt" that the alleged contemnor violated the court's order, the court cannot find contempt. *Perez v. Danbury Hosp.*, 347 F.3d 419, 425 (2d Cir. 2003) (internal quotation marks and citation omitted).

To support a finding of contempt, an order must "leave[] no uncertainty in the minds of those to whom it is addressed, who must be able to ascertain from the four corners of the order precisely what acts are forbidden". *A.V. by Versace*, 87 F. Supp. 2d at 290 (internal quotation marks and citation omitted). The court considering a motion for contempt cannot consider the language of the underlying order in a vacuum, but must instead consider whether the order clearly and unambiguously prohibits or requires the conduct giving rise to the motion. *See Perez*, 347 F.3d at 424. Ambiguity must be read in favor of the party charged with contempt and against the party that drafted the order. *See A.V. by Versace*, 87 F. Supp. 2d at 291.

In construing an order, a court should consider the context in which the order was sought and issued. *See id.* at 291 & n.15; *Acquaire v. Can. Dry Bottling*, 906 F. Supp. 819, 840

3

(E.D.N.Y. 1995) (citing *Haskell v. Kan. Natural Gas Co.*, 224 U.S. 217, 223 (1912) ("the decree must be read in view of the issues made and the relief sought and granted")).  Finally, even when a court finds a violation, it should not hold a party in contempt if the violation is not material. *See Tap Publ'ns*, 1996 WL 509718, at *3.

> **A.    Alpren Sought Enforcement of the December 1 Injunction on December 4, Fourteen Days Before the December 18 Order.**

As Telenor's papers make clear, Alpren applied on December 4 for enforcement of the December 1 injunction barring Storm from participating in the New York arbitration. (Tel. Mem. Ex. 3; *see* Affidavit of Mikhail I. Ilyashev, dated April 4, 2007 ("Ilyashev Aff."), ¶ 11.)

Telenor attempts to escape this dispositive fact with innuendo, suggesting without any basis that Alpren must have taken unspecified action after December 18 to obtain enforcement.  (Tel. Mem. 3-5, 12.)  As the affidavits of Oleg Malis, Senior Vice President of Altimo, and Mikhail I. Ilyashev, counsel to Alpren in Ukraine, state unequivocally:  (1) after entry of the December 7 temporary restraining order, Altimo and Alpren instructed Alpren's lawyers not to contact the Ukraine authorities concerning the lawsuit that led to the December 1 injunction, and (2) no one from Alpren or its representatives had any contact with the Ukraine legal system after December 4 concerning the lawsuit. (Affidavit of Oleg Malis, dated April 4, 2007 ("Malis Aff.") ¶ 5-6; Ilyashev Aff. ¶ 26-27.)  Compare this to Telenor's unsupported assertions:  "It also *appears* that Alpren petitioned the State Enforcement Service to fine Telenor Mobile, and that Alpren caused the State Enforcement Service to take the highly unusual step of notifying the Panel members in the New York arbitration proceeding that the State Enforcement Service was commencing enforcement proceedings."  (Tel. Mem. 12 (emphasis added).)  None of that happened, at all, after December 4.  Moreover, the State Enforcement Agency is entitled

to notify non-parties that will be affected by enforcement proceedings, such as the arbitrators notified here, that those proceedings are pending. (*See* Ilyashev Aff. ¶ 18.) The State Enforcement Agency imposes a penalty on entities that violate court orders, as Telenor did here, even if those entities did not participate in the litigation that led to the orders' issuance. (*See id.* ¶ 21.) The State Enforcement Agency can take both of these actions on its own initiative, without being asked to do so by parties to litigation (*see id.* ¶¶ 19, 22); *see also* Declaration of Oleksiy Didkovskiy concerning Telenor fine, dated March 12, 2007 ¶ 11 ("While carrying out enforcement proceedings, a State Enforcement officer has the right to impose fines and petition law enforcement authorities to initiate criminal proceedings in respect of the persons guilty of failing to comply with an injunction.")), and it did so in this case.

Thus, Altimo and Alpren took no "affirmative steps" in violation of the December 18 Order and diligently complied with it.

**B.    The December 18 Order Did Not Require Altimo or Alpren to Withdraw the Lawsuit or Stop the Ukraine Legal System from Carrying Out Enforcement Proceedings Already in Progress.**

Contrary to Telenor's assertions (Tel. Mem. 11-12), the December 18 Order did not require Altimo or Alpren to withdraw or direct the withdrawal of pre-existing actions in Ukraine related to the December 1 injunction; nor did it require them to intervene actively to stop the enforcement of the December 1 injunction. Telenor made it clear that it did not request such relief, and the Court's December 15 Opinion and Order demonstrates that the Court did not contemplate such relief.

All evidence points to the same conclusion: the December 18 Order did not require Altimo or Alpren to take any affirmative action. Telenor did not seek a preliminary injunction requiring the acts it now attacks Altimo and Alpren for failing to take. Telenor originally requested that Altimo, Alpren and Storm be enjoined from "bringing litigation against

Defendant in Ukraine", to "cause [the Ukraine actions] to be withdrawn in their entirety" and to "take no steps to cause" their enforcement.  (Telenor's December 5 Proposed Temporary Restraining Order at 2.)  Telenor abandoned its request for withdrawal and specifically told the Court that it sought only a "*limited* temporary restraining order" to "prevent any *further* efforts in the Ukraine by the defendants to "perfect or enforce" the injunction that had been issued there. (12/7 Tr. 2 (emphasis added).)  At the hearing on December 11, 2006, Telenor reaffirmed that it was not seeking a preliminary injunction that would require Altimo and Alpren to reverse actions already taken in Ukraine.  (12/11 Tr. 24-25, 69, 70 ("So we would ask at a minimum that they be directed not to seek the issuance of [enforcement] orders, that they not proceed further in the case, that they take no steps to enforce it"), 71 ("a preliminary injunction directing them to commence no further litigations in the Ukraine intended to interfere with the arbitration.  But as to the ultimate relief we seek [in a permanent injunction], your Honor, that is final relief [withdrawing pending actions], and the time will come for that, but I don't think that's today").)

In its December 15 Opinion and Order, the Court explicitly stated that Telenor did not request a preliminary injunction "directing Storm and its corporate parents to take steps to withdraw the Ukraine litigation", and it expressed no view as to whether such an order would be appropriate.  (12/15 Op. at 27 n.9.)

Consistent with Telenor's position, the December 15 Opinion and Order applied the standard governing prohibitory injunctions, not the higher standard governing mandatory injunctions.  The opinion stated that Telenor was required to demonstrate "(1) that it will suffer irreparable harm absent injunctive relief, and (2) either (a) that it is likely to succeed on the merits, or (b) that there are sufficiently serious questions going to the merits to make them a fair ground for litigation, and that the balance of hardships tips decidedly in favor of the moving

party". (12/15 Op. at 7-8 (internal quotation marks omitted).) The Court relied on this standard when it concluded that "it is a fair inference, and one that on this limited record the Court finds *more likely true than not*, that Storm colluded in the bringing of this litigation against itself". (12/15 Op. at 22 (emphasis added).) This standard governs motions for prohibitory injunctions. *See, e.g., Fair Hous. in Huntington Comm. v. Town of Huntington*, 316 F.3d 357, 365 & n.3 (2d Cir. 2003); *Vantico Holdings S.A. v. Apollo Mgmt.*, 247 F. Supp. 2d 437, 451 (S.D.N.Y. 2003).

A motion for a mandatory injunction "must meet a higher standard". *D.D. ex rel. V.D. v. N.Y. City Bd. of Educ.*, 465 F.3d 503, 510 (2d Cir. 2006). A party seeking a mandatory injunction must make "'a clear or substantial showing'" of a likelihood of success. *Id.* (quoting *Jolly v. Coughlin*, 76 F.3d 468, 473 (2d Cir. 1996)). An injunction requiring Altimo and Alpren to withdraw or alter the course of ongoing litigation would plainly be mandatory and thus could not be issued without a clear or substantial showing of a likelihood of success. *See Fair Hous. in Huntington Comm.*, 316 F.3d at 365 (holding that injunction requiring developer to halt ongoing construction would be mandatory and cannot issue absent showing of substantial likelihood of success).

Far from clearly and unambiguously requiring the withdrawal of pending actions or intervention to stop the State Enforcement Service from enforcing the Ukraine injunctions, Telenor's own request for relief and the December 15 Opinion and Order make clear that the December 18 Order did not require Altimo or Alpren to take any affirmative step. As a result, their failure to take such a step cannot support a finding of contempt.

Indeed, even if the December 18 Order could be read to require Altimo and Alpren to withdraw pending actions in Ukraine or intervene to stop enforcement efforts already underway, Telenor's own papers make clear that it does not read it that way, and, at the very

7

least, the December 18 Order is not clear and unambiguous, as required to support a finding of

contempt. *See, e.g., A.V. by Versace*, 87 F. Supp. 2d at 290. Telenor's memorandum in support

of its motion for contempt quotes the December 18 Order's text and then characterizes it as

follows:

> "[The Order] preliminarily enjoins the Altimo Entities from
> *commencing* enforcement of any Ukrainian court order that could
> disrupt, delay or hinder the New York arbitration proceeding. It
> also preliminarily enjoins the Altimo Entities from taking steps to
> *commence* enforcement of any Ukrainian order, or failing to take
> steps to prevent others from *commencing* enforcement of any
> Ukrainian order." (Tel. Mem. 11 (emphasis added).)

According to Telenor's own description, the December 18 Order does not require Altimo or

Alpren to withdraw *pending* actions, or to take any step to halt the State's ongoing enforcement.

An order that does not clearly and unambiguously inform even its drafter of what it requires

cannot support a finding of contempt.

### C. The Claims at Issue in the Ernst & Young Litigations Were Not and Are Not at Issue in the New York Arbitration.

Telenor also seeks to hold Altimo and Alpren in contempt because of three suits

brought in Ukraine to void Ernst & Young's contracts with Kyivstar. These suits are not related

to the New York arbitration in any way, and bringing them did not violate the December 18

Order.

#### 1. Storm's December 21, 2006 Suit

Storm filed the first lawsuit on December 21, 2006. (Exhibit A to the Declaration

of Oleksiy Didkovskiy concerning Ernst & Young litigation, dated March 12, 2007 ("Didkovskiy

E&Y Decl."), at 1.) As of that date, Ernst & Young's contracts with Kyivstar had not been

raised in the New York arbitration. Telenor intervened in the Ukraine action and sought

cancellation of an order the Ukraine court had issued on December 29, 2006. Thereafter, on

8

January 16, 2007, Telenor asked the arbitrators to address the suit in any award that they render. (Exhibit C to the Declaration of Robert L. Sills, dated March 12, 2007 ("Sills Decl."), at 4.) Three days later, the Ukraine court cancelled the December 29 order, as Telenor had requested. (Didkovskiy E&Y Decl. Ex. G, at 3.)  At no time did Telenor allege that the Ukraine action was improper because its subject was exclusively arbitrable.  (Ex. M to the Declaration of Gonzalo Zeballos, dated April 5, 2007 ("Zeballos Decl."), at 4.)  The New York Arbitral Tribunal ("Tribunal") still has not determined whether Storm's Ernst & Young suit is a proper subject of its proceedings.

          2.  <u>Alpren's Suits Against Ernst & Young</u>

Alpren filed suit against Kyivstar and two Ernst & Young entities on January 31, 2007, seeking to invalidate the Ernst & Young contracts. (Didkovskiy E&Y Decl. Ex. I, at 1, 4-5.) On February 5, Telenor appealed an injunction issued in the suit. (Didkovskiy E&Y Decl. Ex. M, at 4.)

On February 16, Alpren filed a second suit against the same defendants in a different Ukraine court. (Didkovskiy E&Y Decl. Ex. O, at 1.)  Telenor notified the arbitrators of both of Alpren's suits—and brought the present motion for an order of contempt—on March 12. (Sills Decl. Ex. G, at 1-2.)  The Tribunal still has not determined whether Alpren's suits are a proper subject of its proceedings.

There can be no assertion that Storm or Alpren should have brought their claims against Ernst & Young (not a party to any arbitration agreement) in the arbitration, because both agreements provide that disputes should be resolved under Ukraine law in Ukraine courts. (Zeballos Decl. Ex. H ¶¶ 11.1, 11.2; Zeballos Decl. Ex. I ¶¶ 11.1, 11.2.)

The Ernst & Young suits are clearly not related to the arbitration. Thus, bringing them could not "disrupt, delay or hinder, in any manner whatsoever, the arbitration proceedings between Telenor Mobile and Storm" in violation of the December 18 Order. (12/18 Order 1-2.)[3]

The Ernst & Young suits derive from the December 22, 2005 ruling of the Highest Commercial Court of Ukraine, which held that the procedure for electing Kyivstar's board members set out in the Kyivstar Charter violated Ukraine law. (Exhibit D to the Declaration of Alexey Khudyakov, dated November 22, 2006, filed as Exhibit J to the Declaration of Robert L. Sills, dated December 11, 2006.) On January 6, 2006 and May 3, 2006, Kyivstar's vice president, Trond Moe, executed agreements with two Ernst & Young entities to serve as the company's auditors. (Zeballos Decl. Exs. H & I.) Pursuant to the Kyivstar Charter, appointment of auditors requires board approval (Zeballos Decl. Ex. P ¶ 9.10(j)), but the board had not been reconstituted since the December 22 ruling. In June 2006 Telenor obtained a reversal of that ruling (Zeballos Decl. Ex. L), but the reversal was itself reversed by the Ukraine Supreme Court in October 2006 (Zeballos Decl. Ex. N). On December 28, 2006, the court that issued the December 22 ruling issued a clarification of it, stating that the provisions of the Kyivstar Charter governing the election of board members were invalidated. (Zeballos Decl. Ex. O.) The issue presented by the Ernst & Young litigation, whether the Ernst & Young contracts are valid, was not and is not part of the arbitration.

Telenor attempts to connect the Ernst & Young litigation to the arbitration by stating that the basis for Alpren's claim that the Ernst & Young contracts are invalid was the Kyivstar board's failure to approve them, and then implying, falsely, that the impediment to

---

[3] Notably, the December 18 Order that Telenor drafted requires that the action enjoined "*would* disrupt, delay or hinder"—an objective test—not "*seeks* to disrupt"—a subjective test—as Telenor suggests. (Tel. Mem. 1 (emphasis added).)

approval was Storm's board nominees' absence from board meetings. (Tel. Mem. 6 n.2.) But Alpren's argument in the Ernst & Young litigations is that the Ernst & Young contracts are invalid because the Kyivstar board was unlawfully elected and therefore incapable of approving them. Even if the board had met and voted to approve the contracts, the vote would have had no effect, and the contracts would still be invalid. The absence of Storm's nominees from Kyivstar's board meetings is not relevant to the Ernst & Young litigations.

Indeed, Telenor's request that the Tribunal incorporate the Ernst & Young lawsuits into its proceedings (after the record was closed)—not anything Alpren has done—may well delay the arbitration. We understand that despite Telenor's overtime additions the arbitration is proceeding, with both parties submitting arguments and the Tribunal deliberating. Thus, neither of Alpren's lawsuits relating to the Ernst & Young contracts has in fact disrupted, delayed or hindered the New York arbitration, and, even if the suits could have violated the December 18 Order—and they could not—they cannot support a finding of contempt. *See Tap Publ'ns*, 1996 WL 509718, at *3 (declining to find contempt despite violation of unambiguous order because violation was not material).

## II.    The Court Has No Subject Matter Jurisdiction.

The Court should deny Telenor's motion because it did not have jurisdiction to enter the order on which the motion depends. A party cannot be held in contempt for violating an injunction if the enjoining court did not have jurisdiction to enter it. *Prayze FM v. FCC*, 214 F.3d 245, 253 (2d Cir. 2000). If the Court finds that it did not have jurisdiction to enter the December 15 Opinion and Order or the December 18 Order, it must dismiss Telenor's application for contempt sanctions brought pursuant to the latter, *see Emery Air Freight Corp. v. Local Union 295*, 356 F. Supp. 974, 974-75 (E.D.N.Y. 1972), and vacate both orders as void, *see*

Fed. R. Civ. P. 60(b)(4); *In re Joint Eastern & Southern Dist. Asbestos Litig.*, 14 F.3d 726, 733 (2d Cir. 1993).

This action began when Storm petitioned the New York Supreme Court to vacate the Tribunal's October 22, 2006 Partial Award.  (Telenor's Notice of Removal ¶¶ 1, 3.)  Telenor removed the action to this Court, citing 9 U.S.C. §§ 203 and 205 and contending this Court had original jurisdiction under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of 1958 (the "Convention" or "New York Convention"), 21 U.S.T. 2517, 330 U.N.T.S. 3.  (Telenor's Notice of Removal ¶¶ 4-5.)  The removal was improper because the Convention does not vest either original or removal subject matter jurisdiction in federal courts over petitions to vacate arbitral awards.

The Supreme Court concluded in a unanimous opinion more than sixty years ago that Congress's close regulation of the jurisdiction of federal courts required "strict construction" of removal provisions.  *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-109 (1941).  The Second Circuit has long followed this practice.  *See Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994) ("federal courts construe the removal statute narrowly, resolving any doubts against removability"); *see also Gilman v. BHC Sec., Inc.*, 104 F.3d 1418, 1428 (2d Cir. 1997); *Pan Atl. Group, Inc. v. Republic Ins. Co.*, 878 F. Supp. 630, 637, 641-42 (S.D.N.Y. 1995) (narrow construction rule applies to 9 U.S.C. § 205).  The burden is on the defendant seeking removal to demonstrate that removal is proper.  *See Gilman*, 104 F.3d at 1421.

The Convention creates two causes of action:  actions to compel arbitration (9 U.S.C. § 206) and actions to confirm arbitral awards (9 U.S.C. § 207).  Article I of the Convention provides: "This Convention shall apply to the *recognition and enforcement* of arbitral awards made in the territory of a State other than the State where the *recognition and*

12

*enforcement* of such awards are sought . . . . It shall also apply to arbitral awards not considered

as domestic awards in the State where their *recognition and enforcement* are sought."

Convention, Art. I(1) (emphasis added).[4]  Article IV, which governs the causes of action under

the Convention, provides that, "[t]o obtain the *recognition and enforcement* mentioned in

[Article III], *the party applying for recognition and enforcement*" shall provide to the petitioned

court authentic copies of either the arbitration agreement or the arbitral award.  *Id.* at Art. IV(1)

(emphasis added).  As the Supreme Court explained,

> "The goal of the Convention, and the principal purpose underlying
> American adoption and implementation of it, was to encourage the
> recognition and enforcement of commercial arbitration agreements
> in international contracts and to unify the standards by which
> agreements to arbitrate are observed and arbitral awards are
> enforced in the signatory countries." *Scherk v. Alberto-Culver Co.*,
> 417 U.S. 506, 520 n.15 (1974); *see also Bergesen v. Joseph Muller
> Corp.*, 710 F.2d 928, 933 (2d Cir. 1983).

Consistent with the Convention's purpose, courts have held that the two causes of

action created by the Convention—to compel arbitration and to enforce an arbitral award—are

the actions or proceedings that "fall[] under" the Convention pursuant to Section 203 and thus

are subject to federal jurisdiction.  *See, e.g., Czarina, L.L.C. v. W.F. Poe Syndicate*, 358 F.3d

1286, 1290-91 (11th Cir. 2004); *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*,

126 F.3d 15, 22-23 (2d Cir. 1997).[5]

---

[4] The terms "recognize" and "enforce" are used repeatedly and exclusively throughout the
Convention to describe the actions authorized by the Convention. *Id.* at Art. I(3); *id.* at Art.
II(1); *id.* at Art. III; *id.* at Art. IV(1), (2); *id.* at Art. V(1).

[5] The Second Circuit has held that the Convention also creates jurisdiction over an application for
a preliminary injunction in aid of arbitration, because such an action is "consistent with [the
Convention's] provisions and its spirit" of supporting international arbitration. *Borden, Inc. v.
Meiji Milk Prods. Co.*, 919 F.2d 822, 825-26 (2d Cir. 1990).

But the Convention does not create rules, procedures or grounds for courts to apply in adjudicating petitions to vacate or suspend arbitral awards.  This critical limitation prevents subversion of the power of domestic courts to adjudicate such actions under their own law.[6]

Thus, the Convention does not confer original subject matter jurisdiction on federal courts over petitions to vacate.  *See Yusuf*, 126 F.3d at 22 ("many commentators and foreign courts have concluded that an action to set aside an award can be brought *only* under the domestic law of the arbitral forum, and can never be made under the Convention" (emphasis in original)[7]); *Int'l Shipping Co. v. Hydra Offshore, Inc.*, 875 F.2d 388, 391 n.5 (2d Cir. 1989) (the

---

[6] *See* Alan Scott Rau, *The New York Convention in American Courts*, 7 Am. Rev. Int'l Arb. 213, 234-36 (1996) ("Neither the Convention nor the American implementing legislation makes any provision for a motion to vacate a Convention award"); W. Laurence Craig, *Some Trends and Developments in the Laws and Practice of International Commercial Arbitration*, 30 Tex. Int'l L.J. 1, 11 (1995) ("The New York Convention was designed to give international currency to arbitral awards.  Any award rendered and binding in a New York Convention country can, under the Convention, be enforced in any other New York Convention signatory.  What the Convention did not do, however, was provide any international mechanism to insure the validity of the award where rendered.  This was left to the provisions of local law.  The Convention provides no restraint whatsoever on the control functions of local courts at the seat of arbitration."  (footnotes omitted)); Leonard V. Quigley, *Accession by the United States to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards*, 70 Yale L.J. 1049, 1070 (1961) ("While it would have provided greater reliability to the enforcement of awards under the Convention had the available grounds [for setting aside or suspending an award] been defined in some way, such action would have constituted meddling with national procedure for handling domestic awards, a subject beyond the competence of the Conference.").

[7] *Citing Shenzhen Nan Da Indus. & Trade United Co. v. FM Int'l Ltd.*, 1992 H.K. Law Digest C6 (Sup. Ct. H.K. Mar. 2, 1991), *excerpted in* 18 Y.B. Com. Arb. 377, 382 (1993) ("Various decisions have made clear that the Convention is not applicable for setting aside awards.  The court of the country of origin of the award is the only court competent to rule."); Albert Jan van den Berg, *The New York Arbitration Convention of 1958: Towards a Uniform Judicial Interpretation* 20 (1981) ("[T]he Convention is not applicable in the action for setting aside the award.").  When interpreting treaties, "[t]he opinions of sister signatories, as reflected in their judicial decisions, are '"entitled to considerable weight"'".  *Ehrlich v. American Airlines, Inc.*, 360 F.3d 366, 389 (2d Cir. 2004) (quoting *Air France v. Saks*, 470 U.S. 392, 404 (1985) (quoting *Benjamins v. British European Airways*, 572 F.2d 913, 919 (2d Cir. 1978))).

14

Convention confers federal subject matter jurisdiction only over petitions to compel arbitration or enforce an arbitral award); *Gerling Global Reinsurance Corp. v. Sompo Japan Ins. Co.*, 348 F. Supp. 2d 102, 105 (S.D.N.Y. 2004) (collecting cases consistent with the principle that "the Convention conveys federal jurisdiction only to compel arbitration or confirm an arbitral award"); *see also Lander Co. v. MMP Invs., Inc.*, 107 F.3d 476, 478 (7th Cir. 1997) (Posner, J.) ("the New York Convention contains no provision for seeking to vacate an award"); *Tesoro Petroleum Corp. v. Asamera (S. Sumatra) Ltd.*, 798 F. Supp. 400, 405 (W.D. Tex. 1992) (holding that the New York Convention does not "authorize[] a suit[] to vacate" an arbitral award).[8]

Removal under the Convention, pursuant to Section 205, is proper only if Section 203 would have provided this Court with original jurisdiction over Storm's petition to vacate. *See Parsons & Whittemore Overseas Co. v. Societe Generale de L'Industrie du Papier*, 508 F.2d 969, 971 (2d Cir. 1974) ("Jurisdiction is based on 9 U.S.C. § 203, which empowers federal district courts to hear cases to recognize and enforce foreign arbitral awards, and 9 U.S.C. § 205, which authorizes the removal of *such cases* from state courts . . . ." (emphasis added)). Because the Court would not have had original jurisdiction over Storm's petition to vacate, it does not have removal jurisdiction over it either. *HSMV Corp. v. ADI Ltd.*, 72 F. Supp. 2d 1122, 1127 n.8 (C.D. Cal. 1999) (holding that the Convention does not confer removal subject matter jurisdiction on federal courts over petitions to vacate).[9]

---

[8] There are cases in which federal courts have assumed they had jurisdiction over a petition to vacate without objection by either party or discussion of the issue. *See Sole Resort, S.A. De C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 102 (2d Cir. 2006); *Indus. Risk Insurers v. M.A.N. Gutehoffnungshütte GmbH*, 141 F.3d 1434, 1439 (11th Cir. 1998); *Celulosa Del Pacifico S.A. v. A. Ahlstrom Corp.*, No. 95 Civ. 9586 (RPP), 1996 WL 103826, at *1 (S.D.N.Y. Mar. 11, 1996). But "the existence of unaddressed jurisdictional defects has no precedential effect". *Lewis v. Casey*, 518 U.S. 343, 352 n.2 (1996).

[9] *Banco De Santander Central Hispano, S.A. v. Consalvi International Inc.*, 425 F. Supp. 2d 421 (S.D.N.Y. 2006), found no original jurisdiction but upheld jurisdiction of a removal petition to

The fact that Telenor opposed Storm's petition to vacate does not change the result. In the absence of an actual petition for action in support of arbitration, the Convention does not provide jurisdiction. *See Gerling-Konzern Gen. Ins. Co.-U.K. Branch v. Noble Assurance Co.*, No. 2:06-CV-76, 2006 WL 3251491, at * 4 n.5 (D. Vt. Nov. 1, 2006) ("The New York Convention does not confer jurisdiction upon this Court to decline to enforce or recognize an award in the absence of a proceeding either to compel arbitration or to enforce an arbitral award . . . . No such proceeding has been commenced; that Noble seeks to fend off Gerling's challenge to the validity of the arbitral award by invoking the New York Convention's provisions does not transform this proceeding into one to enforce an arbitral award." (citations omitted)).[10]

---

vacate where the defendant submitted a cross-motion to confirm the award within a week after removal. *See id.* at 422. The *Santander* court ignored the narrow design of the Convention and instead based its decision on interpretations of different statutes with entirely different legislative purposes. *See id.* at 431-32 (relying on Foreign Sovereign Immunities Act of 1976 and Financial Institutions Reform, Recovery, and Environmental Act of 1989). The court in *JSC Surgutneftegaz v. President & Fellows of Harvard College*, No. 04 Civ. 6069 (RCC), 2005 WL 1863676, at *2 n.3 (S.D.N.Y. Aug. 3, 2005), concluded that it had removal jurisdiction under the Convention over a petition to stay arbitration, but the conclusion was dictum, because the parties were diverse, and the removing party cited diversity jurisdiction as a basis for removal. *See* Respondent's Notice of Removal, *JSC Surgutneftegaz v. President & Fellows of Harvard Coll.*, No. 04 Civ. 6069 (RCC), at 2-3 (S.D.N.Y. Aug. 5, 2004), *available at* https://pacer.login.uscourts.gov. The court in *Jacada (Europe) Ltd. v. International Marketing Strategies, Inc.*, 401 F.3d 701 (6th Cir. 2005), found removal jurisdiction under the Convention, but there, unlike in this case, a petition to enforce the arbitral award under the Convention had been filed in federal court before the action was removed, *see id.* at 704, and the notice of removal specifically referenced the petition to enforce, pursuant to the provision of 9 U.S.C. § 205 that the ground for removal "may be shown in the petition for removal". *See* Defendant's Notice of Removal, *Jacada (Eur.) Ltd. v. Int'l Mktg. Strategies Inc.*, Case No. 1:02-CV-00078-RHB, at 2 (W.D. Mich. Feb. 4, 2002), *available at* https://pacer.login.uscourts.gov.

[10] *Republic of Ecuador v. ChevronTexaco Corp.*, 376 F. Supp. 2d 334, 348-50 (S.D.N.Y. 2005), found jurisdiction, but it did not hold that removal jurisdiction is broader than original jurisdiction, and it considered only original jurisdiction cases in its analysis.

The distinction is not mere formalism. Permitting a defendant in a vacatur action to remove to federal court would broaden removal jurisdiction beyond the scope of original jurisdiction; the act of filing a case in state court would create federal jurisdiction where none otherwise existed. That interpretation of the Convention would permit *defendants* to choose a forum that had never been available to *plaintiffs*. It would also assume that Congress, while creating jurisdiction to implement a treaty dedicated to the enforcement of arbitration agreements and awards, also expanded federal jurisdiction to encompass causes of action not provided under that treaty and in fact directly contrary to its purposes. Congress did not do so. The Convention creates federal jurisdiction *only* over actions brought pursuant to Sections 206 and 207, and, pursuant to *Borden*, 919 F.2d at 825-26, over certain actions similarly in support of arbitration.

Because this Court did not have subject matter jurisdiction over this action at the time it was removed, it did not have jurisdiction to adjudicate any part of the case, including Telenor's motion for a preliminary anti-suit injunction.[11]

---

[11] Telenor's motion to compel, filed nearly a month after the case was removed, could not remedy the fact that the Court lacked subject matter jurisdiction at the time of removal. *See Vasura v. Acands*, 84 F. Supp. 2d 531, 536 (S.D.N.Y. 2000) ("If the removal was not proper in the first instance, the state court was never divested of jurisdiction and the federal court consequently has no jurisdiction to exercise."). Moreover, Telenor's motion could not serve as a basis for subject matter jurisdiction, because Telenor withdrew its motion to compel as moot on the day it was filed, and the motion was invalid because a court cannot compel an arbitration when the parties have submitted to arbitration. *See LAIF X SPRL v. Axtel, S.A. De C.V.*, 390 F.3d 194, 199 (2d Cir. 2004); *PaineWebber, Inc. v. Faragalli*, 61 F.3d 1063, 1066-67 (3d Cir. 1995); *Downing v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 725 F.2d 192, 195 (2d Cir. 1984); *Jacobs v. USA Track & Field*, 374 F.3d 85, 88-89 (2d Cir. 2004).

## Conclusion

For the foregoing reasons, Altimo and Alpren respectfully request that this Court

deny Telenor Mobile's motion for an order of contempt against them or remand the case to New

York Supreme Court for lack of subject matter jurisdiction.

April 5, 2007

Respectfully submitted,

CRAVATH, SWAINE & MOORE LLP

by *Ronald S Rolfe*

Ronald S. Rolfe (RR-0846)
A member of the Firm

Attorneys for Relief Defendants Altimo
Holdings & Investments Limited and
Alpren Limited
    Worldwide Plaza
    825 Eighth Avenue
        New York, NY 10019-7475
        (212) 474-1000

18