UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

STORM LLC,

                        Plaintiff,

          -against-

TELENOR MOBILE COMMUNICATIONS AS,

                      Defendant.
-----------------------------------------------------------------X    06-CV 13157 (GEL) (DF)

TELENOR MOBILE COMMUNICATIONS AS,

                      Counterclaimant,

          -against-

STORM LLC,

                      Counterclaim-Defendant,

          -and-

ALTIMO HOLDINGS & INVESTMENTS LIMITED
and ALPREN LIMITED

                      Relief Defendants.
-----------------------------------------------------------------X

### STORM LLC'S MEMORANDUM OF LAW IN OPPOSITION TO TELENOR MOBILE'S MOTION FOR AN ORDER HOLDING COUNTERCLAIM-DEFENDANT AND RELIEF DEFENDANTS IN CIVIL CONTEMPT

LOVELLS

590 Madison Avenue
New York, New York 10022
Telephone: (212) 909-0600
Facsimile: (212) 909-0660

Attorneys for Storm LLC

Part 1 of 2

# Table of Contents

**Page**

PRELIMINARY STATEMENT ...........................................................................................1

FACTUAL BACKGROUND ...........................................................................................3

I.      The December 1 Ruling in the Alpren Action and the December
        18 Injunction .......................................................................................................3

II.     Actions in Ukraine Involving Third Party Agreements for
        Professional Services Between Kyivstar and Ernst & Young Entities...........6

    A.  The December 22, 2005 Order...........................................................................6

    B.  The First E & Y Action......................................................................................8

    C.  The Second and Third E & Y Actions.............................................................9

    D.  Telenor Mobile Argues That the E & Y Actions Violate the
        Shareholders Agreement ................................................................................10

ARGUMENT ...........................................................................................................11

I.      Telenor Mobile Has Utterly Failed to Meet This Circuit's Stringent
        Standard for Civil Contempt Orders..............................................................11

    A.  Telenor Mobile's "Proof" of Defendants' Alleged Non-Compliance
        With the December 18 Injunction Is Based on Several False
        Premises ...........................................................................................................12

        (1)  Defendants Did Not Take *Any* "Affirmative Steps" Following
             the Entry of the December 18 Injunction to Enforce the
             December 1 Ruling Against Telenor Mobile.......................................13

             a.  December 4 Enforcement Ruling.................................................14

             b.  Fine Notice..................................................................................16

             c.  Enforcement Notice ....................................................................16

        (2)  In the Period Since the December 18 Injunction, Defendants
             Have Not Sought or Obtained Relief in any Ukrainian Action on
             a Substantive Issue That Is Before the Arbitration Tribunal ............17

    B.  The December 18 Injunction Does Not Clearly and Unambiguously
        Require the Withdrawal of the December 1 Ruling or Enforcement
        Applications ....................................................................................................18

C.    The Arbitration Has Not Been Disrupted, Delayed or Hindered in
any Manner Due to any Actions Taken by Defendants ................................................. 19

II.    Telenor Mobile Has Not Provided "Clear and Convincing Proof"
That Storm Itself Has Taken any Actions That Could Be Construed
as a Violation of the December 18 Injunction or That Storm Has
Colluded With Altimo and Alpren ................................................................................. 20

CONCLUSION ............................................................................................................................. 21

## Table of Authorities

**Page**

**Cases**

*A.V. by Versace, Inc. v. Gianni Versace S.p.A.*,
   87 F. Supp. 2d 281 (S.D.N.Y. 2000) ........................................................ 12

*Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*,
   973 F.2d 1033 (2d Cir. 1992) ................................................................ 20

*Levin v. Tiber Holding Corp.*,
   277 F.3d 243 (2d Cir. 2002) ............................................................ 12, 16

*RxUSA Wholesale, Inc. v. Dep't of Health and Human Serv.*,
   467 F. Supp. 2d 285 (E.D.N.Y. 2006) .................................................... 20

*United States v. Local 1804-1 Int'l Longshoreman's Ass'n*,
   44 F.3d 1091 (2d Cir. 1995) ................................................................ 12

*University of Texas v. Camenisch*,
   451 U.S. 390 (1981)........................................................................... 20

Storm LLC ("Storm") respectfully submits this memorandum of law, along with the
Declaration of Gonzalo S. Zeballos, dated April 5, 2007, and the Declaration of Sergii Vlasenko,
dated April 5, 2007, in opposition to the motion ("Motion") by Telenor Mobile Communications
AS ("Telenor Mobile") for an order holding Storm, Altimo Holdings & Investments Limited
("Altimo") and Alpren Limited ("Alpren") in civil contempt of this Court's December 18, 2006
preliminary injunction (the "December 18 Injunction").[1]

## PRELIMINARY STATEMENT

The Court should deny the Motion because Telenor Mobile has not come close to
meeting its well-established and substantial burden of proof for a finding of contempt.

It is undisputed that Telenor Mobile must provide "clear and convincing" proof of non-
compliance with the December 18 Injunction.  Instead, Telenor Mobile has offered the Court
nothing more than unsupported speculation about the alleged actions of Defendants in Ukraine
— supposedly taken after the December 18 Injunction was issued — to enforce the December 1,
2006 ruling (the "December 1 Ruling") of the Golosiyiv District Court.  The evidence (including
documents and affidavits submitted by Telenor Mobile) actually proves that any enforcement
applications were made weeks before the December 18 Ruling, which means that they cannot
form the basis of a contempt finding.  Moreover, Telenor Mobile cannot rely on the court actions
that Storm and Alpren have commenced in Ukraine regarding certain third party agreements
between Kyivstar and Ernst & Young entities (the "E & Y Actions") as "clear and convincing"
proof of non-compliance with the December 18 Injunction.  As shown below, the E & Y Actions
do not involve issues that are currently being determined by the arbitrators (the "Arbitrators,"
"Arbitration Tribunal" or "Tribunal") in the arbitration between Telenor Mobile and Storm (the
"Arbitration").  Telenor Mobile requested, several months ago, that the Tribunal include its

---

[1]    For ease of reference, Storm, Altimo and Alpren will be referred to collectively herein as
"Defendants."

claims arising out of the E & Y Actions in the Arbitration, but the Arbitrators have not yet granted Telenor Mobile's request. Furthermore, even if the Arbitration Tribunal were to hold that it will decide those claims (which is unlikely given that Telenor Mobile cannot establish a nexus with the Arbitration), it would not mean that Storm and Alpren disrupted, delayed or hindered the Arbitration by bringing the E & Y Actions. In the E & Y Actions (which were brought under Ukrainian law and in the Ukrainian courts pursuant to mandatory provisions of the relevant contracts between Kyivstar and the Ernst & Young Entities), Storm and Alpren are seeking an adjudication that the agreements at issue violate Ukrainian law. By contrast, the putative claims in the Arbitration relating to the E & Y Actions are based on Telenor Mobile's unsupported theory that the commencement of such actions violated certain provisions of the Shareholders Agreement dated January 31, 2004 (the "Shareholders Agreement" or "Agreement"). Thus, the two sets of proceedings involve different claims and issues, so the E & Y Actions cannot logically be held to disrupt, delay or hinder the Arbitration in violation of the December 18 Injunction.

Although Telenor Mobile's failure to provide "clear and convincing" proof of non-compliance with the December 18 Injunction is fatal to the Motion, the Court should also deny the relief requested by Telenor Mobile because it has not satisfied the other two required prongs for a contempt order. Telenor Mobile admits that it must establish that (a) the December 18 Injunction clearly and unambiguously prohibits the actions of which Telenor Mobile complains; *and* (b) Defendants have not been reasonably diligent in attempting to comply with the December 18 Injunction. As discussed below, Telenor Mobile argues that the December 18 Injunction requires Defendants to withdraw the action in which the December 1 Ruling was issued (the "Alpren Action") or the pre-December 18, 2006 enforcement applications. The December 18 Injunction intentionally did *not* require Defendants to withdraw the Alpren Action

(which was relief that Telenor Mobile originally sought), and it does not contain "clear and unambiguous" language ordering Defendants to halt the enforcement proceedings that clearly began before December 18, 2006. Indeed, Telenor Mobile cannot legitimately argue that the December 18 Injunction requires a withdrawal of the enforcement proceedings that were initiated several weeks before December 18, 2006 because, as discussed below, Telenor Mobile's own interpretation of the December 18 Injunction is that it only prohibits the commencement of future actions or enforcement proceedings.

In addition, the Motion should be denied because Telenor Mobile cannot point to any action or omission by Defendants that has delayed, disrupted or hindered the Arbitration. The proceedings in the Arbitration have continued unimpeded and Storm has participated within the constraints of the December 1 Ruling. In fact, the Arbitration appears to be nearing completion, which would render the Motion effectively moot.

Accordingly (and for the other reasons set forth below), Storm respectfully requests that the Court deny the Motion.

## FACTUAL BACKGROUND

**I.    The December 1 Ruling in the Alpren Action and the December 18 Injunction**

The December 18 Injunction was the outgrowth of the December 1 Ruling, in which the Ukrainian court in the Alpren Action enjoined Storm and Telenor Mobile, as parties to the Shareholders Agreement, from taking any action to enforce the Agreement. (*See* Ex. A to Zeballos Decl.) Among other things, the Ukrainian court barred Storm and Telenor Mobile from participating in the Arbitration. (*See id.*) In the December 1 Ruling, the Ukrainian court ordered that a copy of the order be mailed to Telenor Mobile in Norway. (*See id.*) Telenor Mobile has not denied that it received such a copy of the December 1 Ruling.

3

On December 4, 2006, counsel for Storm also provided counsel for Telenor Mobile with a copy of the December 1 Ruling, along with papers that had been filed relating to the enforcement of the December 1 Ruling. (*See* Declaration of Robert Sills, dated December 5, 2006, and Exs. B, C and D thereto, attached to Zeballos Decl. as Exs. B, C and D.) Those papers included two rulings, dated December 4, 2006, from the Ukrainian State Enforcement Service (the "Ukrainian SES") stating that enforcement proceedings with respect to the December 1 Ruling had begun. (*See* Exs. C and D to Zeballos Decl.)[2] The orders from the Ukrainian SES refer to applications that were submitted for the enforcement of the December 1 Ruling (*see id.*), and Telenor Mobile has attached such applications by Alpren (both dated December 4, 2006) to its brief in support of the Motion. (*See* Ex. 3 to Telenor Mobile Br.) Telenor Mobile has never denied its knowledge of the enforcement proceedings and their scope; indeed, at the December 11, 2006 hearing before this Court, counsel for Telenor Mobile affirmatively stated "there is … a directive to the State Enforcement Authority … to go and execute this sweeping injunction … against Telenor." (Dec. 11, 2006 Hearing Tr., Ex. E to Zeballos Decl., at 65:18-22.)

On December 5, 2006, Telenor Mobile moved for an anti-suit injunction. It requested, among other things, that this Court order Defendants to withdraw the Alpren Action and request the withdrawal of the December 1 Ruling itself. (*See* Order to Show Cause submitted on Dec. 5, 2006, Ex. F to Zeballos Decl.) In the Opinion and Order dated December 15, 2006 (the "December 15 Order), this Court granted Telenor Mobile's motion for a preliminary injunction and held that Defendants "are enjoined from bringing or attempting to cause the enforcement of any legal action in the Ukraine that would disrupt, delay or hinder in any way the arbitration proceedings between Telenor and Storm in New York." (Ex. 2 to Telenor Mobile Br. at *14.)

---

[2]    Exhibits C and D are alternate translations of the same document, provided by Storm and Telenor, respectively.

However, the Court did *not* order Defendants to withdraw either the December 1 Ruling or the Alpren Action (*see id.*), expressly noting in the December 15 Order that Telenor Mobile was not seeking a preliminary injunction granting such relief. (*See id.* at *14 n. 9.)

In the December 18 Injunction, the Court memorialized the December 15 Order by enjoining Defendants from commencing actions or enforcement proceedings "that would disrupt, delay or hinder, in any manner whatsoever, the arbitration proceedings between Telenor Mobile and Storm." (Ex. 1 to Telenor Mobile Br.)[3] As discussed more fully below, Defendants have not commenced any such actions or enforcement proceedings since December 18, 2006. To the contrary, Storm has participated in the various Arbitration proceedings, which have continued without any disruption, delay or hindrance caused by Defendants.

Storm attended the first portion of the hearing on the merits in the Arbitration, which took place on December 18, 2006, *before* the December 18 Injunction was issued. Storm took the position that it could not participate in the December 18 hearing — except to challenge the Tribunal's jurisdiction — because of the December 1 Injunction. Storm, however, did nothing to prevent Telenor Mobile from putting on its case at the December 18 hearing, which Telenor Mobile did. In mid-January 2007, Telenor Mobile also filed its proposed findings of fact and conclusions of law without any interference from Storm. When the Tribunal issued an interim order on February 12, 2007 requesting further briefing from the parties on choice of law issues, Storm made an application to the Ukrainian court so that it could provide a response. (See Mar. 14, 2007 letter to Tribunal, Ex. G to Zeballos Decl.) It appears that the Arbitration Tribunal is now ready to issue a final ruling on the merits of the issues properly before it.

---

[3]   Telenor Mobile itself has noted that the December 18 Injunction prohibits the commencement of actions or enforcement proceedings after December 18, 2006. (*See* Telenor Mobile Br. at 11 and *infra* at 20-21.)

Any delay in the Arbitration proceedings following the issuance of the December 18 Injunction has been caused by Telenor Mobile, which has repeatedly (and thus far unsuccessfully) attempted to inject new and irrelevant issues into the Arbitration, even though the hearing on the merits took place almost four months ago. Those efforts by Telenor Mobile are described in Section II below.

## II.    Actions in Ukraine Involving Third Party Agreements for Professional Services Between Kyivstar and Ernst & Young Entities

Some of the issues that Telenor Mobile belatedly seeks to add to the Arbitration arise out of the E & Y Actions pending in the Ukrainian courts, which involve two agreements (dated January 6, 2006 and May 3, 2006) between Kyivstar and two Ernst & Young entities[4] for the provision of auditing services.[5]  (*See* Exs. H and I to Zeballos Decl.)  (These agreements will be referred to collectively herein as the "E & Y Agreements.")  Although Telenor Mobile purports to describe the E & Y Actions in the Declaration of Oleksiy Didkovskiy dated March 12, 2007 ("Didkovskiy Decl. II" or "Second Didkovskiy Declaration"), that declaration is misleading, incomplete and inaccurate in many respects.[6]  Therefore, the E & Y Actions and their background are summarized below.

### A.    The December 22, 2005 Order

The E & Y Actions have their genesis in the December 22, 2005 Order (the "December 2005 Order") by the Highest Commercial Court of Ukraine in which the court invalidated the procedures set forth in the Kyivstar Charter regarding the election of members to the Kyivstar

---

[4]    The January 6, 2006 Agreement was signed between Limited Liability Company Ernst & Young Audit Services, and Limited Liability Company Ernst & Young (collectively referred to herein as the "Ernst & Young Entities") and Kyivstar. The May 3, 2006 Agreement was signed between Limited Liability Company Ernst & Young and Kyivstar.

[5]    Telenor Mobile is not a party to *any* of the three E & Y Actions. Its participation in those proceedings is as a third party without independent claims.

[6]    To assist the Court, we have submitted the Declaration of Sergii Vlasenko dated April 5, 2007 (the "Vlasenko Decl."), which corrects the numerous errors in the Second Didkovskiy Declaration.

Board.  (See Ex. J to Zeballos Decl.)[7]  Accordingly, the Board elections as of the date of the December 2005 Order were null and void under Ukrainian law, and Board the Kyivstar (as it was constituted at the time) ceased to exist.  The Kyivstar Board has not been reconstituted since then.

Telenor Mobile fully participated in the action in which the December 2005 Order was issued and it filed an appeal with the Ukrainian Supreme Court.  That appeal was denied in February 2006.  (See February 16, 2006 Decree of the Ukrainian Supreme Court, Ex. K to Zeballos Decl.)  In June 2006, Telenor Mobile obtained a temporary reversal of the December 2005 Order from the Highest Commercial Court.  (See June 27 Order of the Highest Commercial Court of Ukraine, Ex. L to Zeballos Decl.)  However, as Storm pointed out in its letter to the Arbitration Tribunal regarding the E & Y Actions, the June 2006 reversal was obtained under highly suspicious circumstances and it is the subject of a Ukrainian investigation into possible wrongdoing by Telenor Mobile.  (See Mar. 23, 2007 letter from Storm to Tribunal (the "March 23 Letter"), Ex. M to Zeballos Decl., and Exhibits B and C to the March 23 Letter.)  The December 2005 Order was reinstated in October 2006 by the Ukrainian Supreme Court.  (See October 3, 2006 Ruling of the Ukrainian Supreme Court, Ex. N to Zeballos Decl.)  The Highest Commercial Court issued another Order on December 28, 2006, further clarifying that the election of Board members under the Kyivstar Charter procedures was null and void under Ukrainian law.  (See December 28, 2006 Order of the Highest Commercial Court of Ukraine, Ex. O to Zeballos Decl. at 3-4.)

---

[7]  In the various translated documents submitted by the parties, the court that rendered the December 2005 Order and subsequent orders is alternately referred to as the "*Highest* Commercial Court of Ukraine" and the "*Higher Commercial* Court of Ukraine."  Both terms refer to the same court.  For consistency, Storm uses the term "Highest Commercial Court of Ukraine" when referring to this particular court.

### B.    The First E & Y Action

The E & Y Agreements relate to the provision of auditing services.  The Kyivstar Charter states that the Board must give its approval for the appointment of such auditors.  (*See* Ex. P to Zeballos Decl. at Article 9.10(j).)  Even though the Board had not been reconstituted as of January 2006 or May 2006 and there was no approval for the appointment of Ernst & Young as auditors, Trond Moe nevertheless signed the E & Y Agreements on behalf of Kyivstar.[8]  As a result of this impropriety, Storm commenced an action in Ukraine on December 21, 2006 (the "First E & Y Action") and sought to invalidate the E & Y Agreements on the grounds that, as a matter of Ukrainian law, Mr. Moe lacked the requisite authority to enter into those agreements. (*See* Storm's Statement of Claim, Ex. A to Didkovskiy Decl. II, at 3-4.)

Ukraine is the proper forum for the First E & Y Action (and all of the E & Y Actions) because the E & Y Agreements provide that any disputes or disagreements regarding those agreements *shall* be heard by the Ukrainian courts.  (*See* Exs. H and I to Zeballos Decl. at ¶ 11.2.)  Each of the E & Y Agreements further states that Ukrainian law "*shall* govern the validity, interpretation and performance of this Agreement."  (*See id.* at ¶ 11.1; emphasis added.) Thus, the issue of whether Mr. Moe had the authority to enter into the E & Y Agreements must be determined by Ukrainian courts applying Ukrainian law.  It is noteworthy that Telenor Mobile, which has intervened as a third party and is substantively participating in the First E & Y Action, has not moved to dismiss Storm's claim on the grounds that it should be determined by the Arbitration Tribunal.  (*See* Ex. M to Zeballos Decl. at 4; Vlasenko Decl. at ¶¶ 12-13.)

The Ukrainian court issued an injunction in the First E & Y Action on December 29, 2006 (the "December 29 Injunction") in which it barred the Ernst & Young entities from providing services under the unauthorized E & Y Agreements until the resolution of the case on

---

[8]    Mr. Moe is the head of Telenor Mobile's representative office in Ukraine and was the CFO of Kyivstar in January and May 2006.  (*See* Ex. Q to Zeballos Decl.)

8

its merits.  (*See* Ex. D to Didkovskiy Decl. II.)  Telenor Mobile seeks to downplay its

participation in the First E & Y Action by claiming that the judge vacated the December 29

Injunction "on her own motion" on January 19, 2007.  (Telenor Mobile Br. at 6.)  That is

completely false.  Telenor Mobile intervened on January 18, 2007 and filed a petition for

cancellation of the December 29 Injunction, which the court granted.  (*See* Exs. F and G to

Didkovskiy Decl. II.)  In its petition, Telenor Mobile raised issues of substantive Ukrainian law.

(*See* Ex. F to Didkovskiy Decl. II at 2-3; Vlasenko Decl. at ¶¶ 9-10.)[9]  The December 29

Injunction has not been reinstated and the First E & Y Action is ongoing, with Telenor Mobile as

a third party participant in those actions.

### C.     The Second and Third E & Y Actions[10]

Alpren also filed two actions regarding the E & Y Agreements in January and February

2007.  (*See* Exs. I and O to Didkovskiy Decl. II.)  (These actions will be referred below to as the

"Second and Third E & Y Actions," respectively.)  The Second and Third E & Y Actions

involve different parties, but they seek similar relief.  (*See* Ex. M to Zeballos Decl. at 4.)  The

courts have issued injunctions in the Second and Third E & Y Actions that (like the December

29 Injunction in the First E & Y Action) effectively restrain the Ernst & Young Entities from

acting as Kyivstar's auditors.  (See Exs. K and R to Didkovskiy Decl. II.)

On February 5, 2007, Telenor Mobile filed an appeal from the injunction in the Second E

& Y Action.  (See Ex. M to Didkovskiy Decl. II.)  Telenor Mobile's appeal raises several issues

---

[9]   In the petition, Telenor Mobile also claimed that the First E & Y Action is a violation of the
Shareholders Agreement and noted that it had brought the alleged violation to the attention of the
Arbitration Tribunal – yet Telenor Mobile did not move to dismiss the E & Y Actions in favor of
arbitration.  (*See* Ex. F to Didkovskiy Decl. II at 2; Vlasenko Decl. at ¶¶ 12-13.)  (Telenor Mobile's
theory on how the E & Y Actions purportedly violate the Shareholders Agreement is discussed below and
in Exhibit M to the Zeballos Declaration.)

[10]   A discussion of the Second and Third E & Y Actions is included here (and in the Vlasenko
Declaration) even though Storm is not a party to these actions because Telenor alleges that Storm has
acted in concert with Alpren in bringing those suits and because the Court should be made aware of all of
the deficiencies in Mr. Didkovskiy's description of the Second and Third E & Y Actions.  Storm strongly
denies that it has acted in concert with Alpren in bringing the Second and Third E & Y Actions.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

**STORM LLC,**

                  Plaintiff,

        -against-

**TELENOR MOBILE COMMUNICATIONS AS,**

                  Defendant.

-----------------------------------------------------------------X     06-CV 13157 (GEL) (DF)

**TELENOR MOBILE COMMUNICATIONS AS,**

                  Counterclaimant,

        -against-

**STORM LLC,**

                  Counterclaim-Defendant,

        -and-

**ALTIMO HOLDINGS & INVESTMENTS LIMITED
and ALPREN LIMITED**

                  Relief Defendants.

-----------------------------------------------------------------X

**STORM LLC'S MEMORANDUM OF LAW IN OPPOSITION TO TELENOR
MOBILE'S MOTION FOR AN ORDER HOLDING COUNTERCLAIM-DEFENDANT
AND RELIEF DEFENDANTS IN CIVIL CONTEMPT**

LOVELLS

590 Madison Avenue
New York, New York 10022
Telephone: (212) 909-0600
Facsimile: (212) 909-0660

Attorneys for Storm LLC

Part 2 of 2

of substantive Ukrainian law.  (*See id.* at 2-4; Vlasenko Decl. at ¶ 17.)  Also, as in the petition to

cancel the December 29 Injunction in the First E & Y Action, Telenor Mobile's appeal in the

Second E & Y Action refers to its allegation that the action violates the Shareholders Agreement.

(*See* Ex. M. to Didkovskiy Decl. II at 2; Vlasenko Decl. at ¶ 18.)  Once again, however, Telenor

Mobile has not moved to dismiss the Second E & Y Action (or, the Third E & Y Action) on the

grounds that the issues in those cases are arbitrable.  (*See* Vlasenko Decl. at ¶ 18.)  Absent

further developments, the Second and Third E & Y Actions will continue and the courts will

determine the merits of Alpren's claim that the E & Y Agreements are invalid under Ukrainian

law.  Telenor Mobile continues to have the right to participate in those actions.

### D.    Telenor Mobile Argues That the E & Y Actions Violate the Shareholders Agreement

Nearly a month after the Arbitration Tribunal conducted a hearing on the merits, Telenor

Mobile began its effort to expand the scope of the Arbitration to include its claims arising out of

the E & Y Actions.  In a letter dated January 16, 2007, Telenor Mobile argued that the First E &

Y Action constitutes a breach of two provisions in the Shareholders Agreement and it asked the

Tribunal to consider its allegations as part of the Arbitration.  (*See* Ex. C to Declaration of

Robert Sills dated March 12, 2007.)  Storm submitted a letter in opposition on January 26, 2007.

(*See* Ex. D to Sills Mar. 12 Decl.)  The Arbitration Tribunal has not yet ruled on Telenor

Mobile's request with regard to the First E & Y Action.

On March 12, 2007 (the same day that it filed this Motion with the Court), Telenor

Mobile again wrote to the Tribunal and requested that it include evidence from the Second and

Third E & Y Actions in support of Telenor Mobile's post-hearing claims.  (*See* Ex. G to Sills

Mar. 12 Decl.)  Telenor Mobile contends that the Second and Third E & Y Actions violate the

same two provisions of the Shareholders Agreement that were cited in its January 16 letter.  On

March 23, 2007, Storm submitted a letter in opposition to Telenor Mobile's March 12 letter.

(*See* Ex. M to Zeballos Decl.)  The Tribunal is still considering the request made in Telenor

Mobile's March 12 letter regarding the Second and Third E & Y Actions.

Storm will not repeat the arguments in opposition to Telenor Mobile's allegation that the

E & Y Actions violate the Shareholders Agreement and instead respectfully refers the Court to

its March 23 letter.  (*See id.*)  The Court will note that Telenor Mobile's arguments are utterly

lacking in merit; it is apparent that Telenor Mobile, out of desperation, is attempting to

circumvent the Ukrainian courts (which have mandatory jurisdiction) by inventing claims under

the Shareholders Agreement.[11]  Even more importantly (at least for purposes of this Motion), the

record shows that (a) Telenor Mobile's claims are not yet a part of the Arbitration because the

Tribunal is still considering whether they are arbitrable; and (b) even if the claims are arbitrable,

they are distinct from claims at issue in the E & Y Actions.  In the latter, the Ukrainian courts

will decide whether or not the E & Y Agreements are valid as a matter of Ukrainian law.  If,

however, the Arbitration Tribunal were to hold that Telenor Mobile's claims are arbitrable, it

would decide the wholly separate issue of whether or not the bringing of the E & Y Actions

violates the two provisions of the Shareholders Agreement cited by Telenor Mobile, and not the

merits of Storm's claims in those actions.

## ARGUMENT

### I.     Telenor Mobile Has Utterly Failed to Meet This Circuit's Stringent Standard for Civil Contempt Orders

In this Circuit, a district court's inherent power to hold a party in civil contempt is

"significantly circumscribed."  *E.g., United States v. Local 1804-1 Int'l Longshoreman's Ass'n,*

---

[11]   Telenor Mobile is so desperate that it has submitted forged documents to the Tribunal in support of its assertion that other actions by Storm in Ukraine violate the "good faith" requirement in the Shareholders Agreement.  As set forth in Storm's March 23 letter, it appears that Telenor Mobile obtained those documents from IPOC International Growth Fund ("IPOC"), company domiciled in Bermuda.  An arbitration tribunal in Zurich found in May 2006 that IPOC is a money-laundering operation run by a corrupt Russian minister (with whom Telenor Mobile had done business in the past).  (*See* Ex. M to Zeballos Decl. at 8-9.)  Indeed, the allegations against IPOC are so serious that the Bermuda authorities have asked the court there to dissolve the corporation for violations of the law.  (*See id.*)

44 F.3d 1091, 1096 (2d Cir. 1995); *A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, 87 F. Supp.

2d 281, 288 (S.D.N.Y. 2000). As Telenor Mobile concedes (Telenor Mobile Br. at 10.), a

motion for contempt will fail unless the following three elements are satisfied: (1) the order

allegedly violated by the contemnor must be "clear and unambiguous"; (2) the proof of non-

compliance by the contemnor must be "clear and convincing"; *and* (3) the contemnor must not

have been reasonably diligent in attempting to comply with the relevant order. *Versace*, 87 F.

Supp. at 288. A court may impose contempt sanctions upon a party only if all three elements are

satisfied. *Id.* Moreover, in the context of civil contempt, the "clear and convincing standard

requires a quantum of proof adequate to demonstrate a 'reasonable certainty' that a violation

occurred." *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002). The party moving

for civil contempt bears the burden of establishing the foregoing elements. *Id.* Telenor Mobile,

however, falls well short of satisfying this Circuit's exacting standards for civil contempt.[12]

### A.    Telenor Mobile's "Proof" of Defendants' Alleged Non-Compliance With the December 18 Injunction Is Based on Several False Premises

Telenor Mobile claims that Defendants have failed to comply with the December 18

Injunction because they have purportedly (1) "taken affirmative steps" to cause the December 1

Ruling to be enforced against Telenor Mobile; and (2) commenced actions in Ukraine in which

they "sought and obtained, relief on a substantive issue pending before the arbitrators in the New

York arbitration proceeding." (Telenor Mobile Br. at 1.). These allegations are demonstrably

wrong.

---

[12]    In this section, Storm discusses Telenor Mobile's allegations against Defendants generally and does not distinguish among them. However, as noted below in Section II, Telenor Mobile has also failed to meet the requirements for a contempt order against Storm individually.

**(1)    Defendants Did Not Take *Any* "Affirmative Steps" Following the Entry of the December 18 Injunction to Enforce the December 1 Ruling Against Telenor Mobile**

Telenor Mobile's assertion that Defendants have "taken affirmative steps" to enforce the December 1 Ruling is based on its mischaracterization of three events: (1) Telenor Mobile's receipt, on February 7, 2007, of a notice regarding the imposition of a fine for violating the December 1 Ruling (the "Fine Notice"); (2) the Arbitration Tribunal's receipt, on February 12, 2007, of an enforcement notice regarding the December 1 Ruling (the "Enforcement Notice"); and (3) Telenor Mobile's receipt, on February 19, 2007, of an enforcement ruling dated December 4, 2006 (the "December 4 Enforcement Ruling") from the Ukrainian SES. (*See* Telenor Mobile Br. at 3-5, 12.) Telenor Mobile speculates — without any documentary evidence whatsoever — that these three events were precipitated by an enforcement application submitted *after* the December 18 Injunction was issued. (*See id.* at 3 ("[T]he events of the past several weeks show that the Altimo Entities have taken steps to cause enforcement proceedings to be commenced and prosecuted in Ukraine in an attempt to disrupt, delay and hinder the New York arbitration proceeding.").) In fact, as discussed below, Telenor Mobile's own submissions demonstrate that the various enforcement procedures cited by Telenor Mobile as an alleged violation of the December 18 Injunction were put into motion by applications filed on *December 4, 2006* — two weeks *before* the December 18 Injunction.

The procedure for enforcement of Ukrainian injunctions is set forth in the other Declaration of Oleksiy Didkovskiy dated March 12, 2007 ("First Didkovskiy Declaration" or "Didkovskiy Declaration I"):

> Under Ukrainian law, following the issuance of an injunction, unless the party seeking to enforce the injunction[,] or its duly authorized representative[,] specifically requests in writing commencement by the [Ukrainian SES] of an enforcement proceeding to enforce the injunction, the [Ukrainian SES] will take no action to enforce the injunction. Following submission of a request to enforce an injunction by the party to whom the injunction has been granted, the

[Ukrainian SES] will examine the request and commence enforcement proceedings. While carrying out enforcement proceedings, a State Enforcement Officer has the right to impose fines and petition enforcement authorities to initiate criminal proceedings in respect of the persons guilty of failing to comply with an injunction.

(Didkovskiy Decl. I at ¶ 11.) The record, however, shows that there was in fact an application with respect to the December 1 Ruling, that it pre-dated the December 18 Injunction, and that the Ukrainian SES's actions — such as the imposition of a fine for violations of order —were in keeping with the procedures outlined by Mr. Didkovskiy.[13]

### a.     December 4 Enforcement Ruling

As noted above, Alpren filed two applications on December 4, 2006 with the Ukrainian SES for the enforcement of the December 1 Ruling against Storm and V.V. Klymenko, who are identified as the "Debtors." (*See* Ex. 3 to Telenor Mobile Br.) In addition to requesting the commencement of enforcement proceedings, the applications ask the Ukrainian SES to "take all actions necessary for the execution of the [December 1 Ruling]." (*Id.*) Telenor Mobile — which does business in Ukraine and is indisputably subject to jurisdiction there — is also bound by the December 1 Ruling even though it is not one of the "Debtors" or a party to the action. (*See* Ex. A to Zeballos Decl. at 2.) Thus, Alpren's applications for enforcement included a request that Ukrainian SES "take all actions necessary" (such as the imposition of a fine) to insure *Telenor Mobile's* compliance with the December 1 Ruling. (*See* Ex. 3 to Telenor Mobile Br.) The applications were not limited to a request for enforcement proceedings against Storm and Mr. Klymenko.

---

[13] Storm does not endorse Mr. Didkovskiy's description of the Ukrainian procedures and notes, for example, that he is incorrect in stating that the Ukrainian SES will not take any action absent an application for enforcement. In this matter, the Ukrainian SES issued a Demand for compliance with the December 1 Ruling after the court in the Alpren Action forwarded the order to it. (*See* Ex. D to Didkovskiy Decl. I; Exs. C and D to Zeballos Decl.) The point is that even the procedures set forth by Mr. Didkovskiy for the enforcement of an injunction were followed in the Alpren Action.

In response to Alpren's applications, the Ukrainian SES issued two rulings for the enforcement of the December 1 Ruling against Storm and Mr. Klymenko.  (*See* Exs. C and D to Zeballos Decl.)  On the same day, the Ukrainian SES issued the December 4 Enforcement Ruling against Telenor Mobile.  (*See* Ex. D to Didkovskiy Decl. I.)  The three enforcement rulings issued on December 4 are clearly related and they all bear the same file number (815/10).  There is no evidence that a separate application was filed for enforcement proceedings against Telenor Mobile (*see* Didkovskiy Decl. I at ¶ 6.), but that fact is not surprising.  Such enforcement is contemplated by the two other applications filed on December 4, which, as noted above, ask the Ukrainian SES to take all necessary steps (including action against Telenor Mobile) to insure compliance with the December 1 Ruling.

Telenor Mobile focuses on the mailing of the December 4 Enforcement Ruling in February 2007.  But there is no evidence that the Ukrainian SES's mailing of the December 4 Enforcement Ruling was caused by any action that Defendants took after this Court issued the December 18 Injunction.  Indeed, such a step would have been completely unnecessary, given that the Ukrainian SES had already commenced enforcement proceedings and was required to give notice to Telenor Mobile under the terms of the December 4 Enforcement Ruling.[14]  Under the circumstances, Telenor Mobile cannot credibly point to the mailing of the December 4 Enforcement Ruling to Telenor Mobile in February 2007 as evidence an "affirmative step" by Defendants.

---

[14]   In any event, the mailing of the December 4 Enforcement Ruling to Telenor Mobile's Ukrainian office is of little consequence because Telenor Mobile was well aware of the enforcement proceedings against it prior to the December 18 Injunction.  (*See supra* at 4-5.)  Also, Telenor Mobile has not stated whether (or when) it received a copy of the December 4 Enforcement Ruling at its home office in Norway as opposed to the representative office in Ukraine.

**b.    Fine Notice**

Telenor Mobile's reliance on the Fine Notice is equally unavailing.  Citing to the First

Didkovskiy Declaration, Telenor Mobile asserts that "[t]he imposition of a fine under such

circumstances generally is made only upon the petition of the party seeking enforcement of the

relevant injunction, in this case, Alpren."  (Telenor Mobile Br. at 3.)  Telenor Mobile thus

implies that a fine will not be imposed in the course of an enforcement proceeding until the party

seeking enforcement requests one.  However, Mr. Didkovskiy makes no such assertion.  To the

contrary, Mr. Didkovskiy notes that "[w]hile carrying out enforcement proceedings, a State

Enforcement Officer has the right to impose fines . . . ."  (Didkovskiy Decl. I at ¶ 11.)  Thus, the

fine imposed by the Ukrainian SES was the natural consequence of Telenor Mobile's failure to

comply with the December 1 Ruling (and Alpren's applications for enforcement filed on

December 4, 2006).  It was not the result of any post-December 18 "petition" by Defendants and

Telenor Mobile has not provided any evidence of such a filing.

**c.    Enforcement Notice**

The final basis for Telenor Mobile's statement that Defendants took "affirmative steps"

to enforce the December 1 Ruling is the Arbitration Tribunal's receipt of the Enforcement Notice

on February 12, 2007.  Telenor Mobile claims that the Enforcement Notice is unprecedented and

serves no purpose other than "to disrupt the New York arbitration proceeding."  (Telenor Mobile

Br. at 4.)  On that basis, Telenor Mobile concludes that "such notification most likely would not

have been delivered" other than at "Alpren's express request."  (*Id.*)

As an initial matter, Telenor Mobile's mere conjecture on what "most likely" occurred in

connection with the Enforcement Notice, without any evidence that the Ukrainian SES was in

fact acting at the behest of Alpren (or the other Defendants), is wholly insufficient for purposes

of a contempt motion.  *See Levin*, 277 F.3d at 250 ("[T]he clear and convincing standard requires

16

a quantum of proof adequate to demonstrate a 'reasonable certainty' that a violation occurred.").

Moreover, the Enforcement Notice simply informs the Arbitration Tribunal that enforcement

proceedings are ongoing and it in no way seeks to halt or impede the arbitration.[15]  At the time,

the Enforcement Notice was the subject of only a brief exchange among the parties and the

Arbitration Tribunal.  As discussed below, the Arbitration has continued on without hindrance.

Finally, it is of little moment that Mr. Didkovskiy, in his 12 years of practicing law, has never

seen the Ukrainian SES issue a similar notice to an arbitration tribunal.  (*See* Didkovskiy Decl. I

at ¶ 9.)  One of the few things that the parties agree on is that this case is very unusual; therefore,

it is hardly surprising that Mr. Didkovskiy has not seen such a notice before.[16]

> ### (2)    In the Period Since the December 18 Injunction, Defendants Have Not Sought or Obtained Relief in any Ukrainian Action on a Substantive Issue That Is Before the Arbitration Tribunal

Telenor Mobile contends that the E & Y Actions were brought "in order to further

interfere with the New York arbitration proceeding."  (Telenor Mobile Br. at 12.)  Telenor

Mobile argues that the E & Y Actions have interfered with the Arbitration because the former

involve "substantive" issues that are currently "before" the Tribunal.  (*See id.* at 1.)  Telenor

Mobile's argument fails for several reasons.

*First*, the substance of the E & Y issues that Telenor Mobile wishes to include in the

Arbitration is not yet "before" the Tribunal because the arbitrators have not decided whether

Telenor Mobile's claims are even arbitrable.  There can be no "interference" with the Tribunal's

determination of Telenor Mobile's claims arising out of the E & Y Actions if the Tribunal has

---

[15]  Telenor Mobile itself sent an email to the Tribunal — which was uncontested by Storm—noting that "the text of the document sent to the Panel does not … purport to enjoin or restrain the Panel in any way." (*See* e-mail from Robert Sills to Arbitration Tribunal, dated February 13, 2007, Ex. R to Zeballos Decl.)

[16]  Telenor Mobile takes Mr. Didkovskiy's statement about his personal experience and then cites it as support for Telenor Mobile's sweeping contention that "[t]his may be the first time that the State Enforcement Service" has notified arbitrators of an enforcement proceeding. (Telenor Mobile Br. at 4.) Of course, Mr. Didkovskiy's statement does not (and cannot) support Telenor Mobile's bold assertion.

not held that those issues should be decided in the Arbitration. *Second*, the E & Y Actions do not involve the same issues that Telenor Mobile has raised with the Tribunal. Telenor Mobile's theory in the Arbitration is that the commencement of the E & Y Actions constitutes a breach of two provisions of the Shareholders Agreement. The E & Y Actions involve a different issue, *i.e.*, whether the E & Y Agreements are valid and enforceable under Ukrainian law in light of Mr. Moe's failure to obtain approval from Kyivstar's Board. Telenor Mobile has not sought an adjudication of that question in the Arbitration and, notably, it has not attempted to argue that the E & Y Actions should be dismissed because they involve arbitrable issues.

**B.    The December 18 Injunction Does Not Clearly and Unambiguously Require the Withdrawal of the December 1 Ruling or Enforcement Applications**

Recognizing that it cannot prove non-compliance with the December 18 Injunction, Telenor Mobile argues that Defendants should be held in contempt for (1) failing to withdraw the Alpren Action in which the December 1 Ruling was issued; (2) filing the enforcement applications in the first place; or (3) failing to withdraw the enforcement applications. (*See* Telenor Mobile Br. at 11-12.) Telenor Mobile's contention regarding the withdrawal of the Alpren Action ignores the undisputed fact that this Court intentionally did not order Defendants to withdraw the December 1 Ruling or the Alpren Action. (*See supra* at 5.) Defendants cannot be in contempt of a non-existent order. With respect to the argument that Alpren should not have filed the enforcement applications or should have withdrawn them, Telenor Mobile once again disregards the chronology of events. As demonstrated above, the enforcement applications were filed and the enforcement rulings were issued on December 4, 2006, which was a full two weeks before the December 18 Injunction. Defendants cannot be in contempt of an order that had not been issued at the time of the alleged violation.

Telenor Mobile further suggests, particularly in the First Didkovskiy Declaration, that Defendants have an obligation to attempt to halt the enforcement proceedings that were

commenced well before December 18. (*See* Didkovskiy Decl. I at ¶ 11.) The Court, however, did not order such action (even though it was well aware as of December 18 that enforcement proceedings in Ukraine had begun) and it certainly did not do so in the "clear and unambiguous" language required for a finding a contempt. Indeed, Telenor Mobile's own interpretation of the December 18 Injunction directly undercuts any suggestion that Defendants were required to apply for a cessation of the enforcement proceedings commenced on December 4. Telenor Mobile states that the December 18 Injunction provides for the following:

> It preliminary enjoins the Altimo Entities from *commencing enforcement* of any Ukrainian court order that could disrupt, delay or hinder the New York arbitration proceeding. It also preliminarily enjoins the Altimo Entities from *taking steps to commence enforcement* of any Ukrainian order, or *failing to take steps to prevent others from commencing enforcement* of any Ukrainian order.

(Telenor Mobile Br. at 11; emphasis added.) Thus, according to Telenor Mobile, the December 18 Injunction only relates to the commencement of actions or enforcement proceedings *after* December 18, 2006.[17] In the period since the December 18 Injunction was issued, Defendants have not commenced the enforcement of any such order, taken steps to commence the enforcement of any such order or failed to take steps to prevent others from commencing the enforcement of any such order.

### C.    The Arbitration Has Not Been Disrupted, Delayed or Hindered in any Manner Due to any Actions Taken by Defendants

Telenor Mobile cannot show that Defendants have disrupted, delayed or hindered the Arbitration in any way. As discussed above, the Arbitration has gone forward as scheduled and Storm has participated in the proceedings (to the extent permitted by the December 1 Ruling). The Tribunal has not indicated that it requires any further briefing or information from the

---

[17]    Indeed, the preamble to the December 18 Injunction only contemplates an injunction preventing Defendants "from *further* initiating or pursuing any legal action or proceeding in Ukraine intended to interfere with the ongoing arbitration . . . ." (*See* December 18 Injunction, Ex. S to Zeballos Decl. (emphasis added).)

parties, so it appears that a final ruling on the merits could soon be forthcoming. The only potential delay would be the result of Telenor Mobile's recent attempt to submit patently non-arbitrable issues to the Tribunal, but Storm has moved expeditiously in briefing that question and it is optimistic that the Arbitrators will summarily reject Telenor Mobile's unfounded request.

## II.    Telenor Mobile Has Not Provided "Clear and Convincing Proof" That Storm Itself Has Taken any Actions That Could Be Construed as a Violation of the December 18 Injunction or That Storm Has Colluded With Altimo and Alpren

In addition to the reasons set forth above, the Court should deny the Motion as to Storm individually because Telenor Mobile fails to show that Storm has done anything that could be construed as a violation of the December 18 Injunction.

Storm was effectively a defendant in the Alpren Action, so it could not (and in fact, did not) take any steps to enforce the December 1 Ruling. Moreover, Telenor Mobile has not made any kind of factual showing, let alone provided "clear and convincing" proof, that Storm colluded with its corporate affiliates to enforce the December 1 Ruling. Telenor Mobile instead relies solely on the Court's findings from the preliminary injunction context, arguing that "despite the formal status of Alpren and Storm in the various Ukrainian lawsuits at issue here, all three Defendants are acting together, as part of a common plan[,] to defeat the [Arbitration]." (Telenor Mobile Br. at 13.) However, as the Court recognized (*see* Ex. E to Zeballos Decl. at 35:1-13.), such findings on a motion for preliminary injunction have limited applicability in the later stages of a proceeding and are not binding. *See RxUSA Wholesale, Inc. v. Dep't of Health and Human Serv.*, 467 F. Supp. 2d 285, 291 (E.D.N.Y. 2006) (findings of fact made by a court granting a preliminary injunction are not binding in later proceedings because "a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits"), citing *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981); *Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1049 (2d

Cir. 1992) (findings of fact at the preliminary injunction stage are not binding at trial on the merits). In the context of its motion for contempt, Telenor Mobile has a separate and independent obligation to provide "clear and convincing" proof of collusion, which it clearly has not done (or even attempted). (See Ex. E to Zeballos Decl. at 29:3-7 ("[The Court]: [I]f Telenor could later prove that some action that was taken in Ukraine was taken by a party acting in concert with Storm in violation of the order we're hypothesizing this court entering, then that party acting in concert could be held in contempt. But that would be up to [Telenor Mobile] to prove at some later date in a contempt proceeding . . . .").) Finally, given that Storm has participated in the Arbitration and has not in any way disrupted, delayed or hindered those proceedings, the Court cannot find that Storm — either individually or in purported collusion with Altimo and Alpren — violated the December 18 Injunction.

## CONCLUSION

The Motion is ill-conceived and wholly unsupported. Accordingly, Storm respectfully requests that the Court deny the relief requested by Telenor Mobile in its entirety.

Dated:   April 5, 2007

Respectfully submitted,

LOVELLS

By:   /s/ Pieter Van Tol

Pieter Van Tol (PVT-2455)
Gonzalo S. Zeballos (GZ-5994)
Eric Z. Chang (EC-9755)

590 Madison Avenue
New York, New York 10022
Telephone: (212) 909-0600
Facsimile: (212) 909-0660

Attorneys for Storm LLC
